# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| LIVE WELL FINANCIAL, INC., | Case No. 19-[11317] (___) |
| Alleged Debtor. | |

## AFFIDAVIT OF ROBERT L. MARSH ON BEHALF OF FLAGSTAR BANK FSB, A FEDERALLY CHARTERED SAVINGS BANK, IN SUPPORT OF THE INVOLUNTARY CHAPTER 7 PETITION FILED AGAINST LIVE WELL FINANCIAL, INC.

STATE OF MICHIGAN    )
                     ) ss:
COUNTY OF OAKLAND    )

Robert L. Marsh being duly sworn, deposes and states:

1. I make this affidavit on behalf of Flagstar Bank, FSB, a Federally Chartered Savings Bank ("Flagstar"), a petitioning creditor in the above-captioned involuntary chapter 7 case (the "Bankruptcy Case") filed by Flagstar and certain other petitioning creditors against Live Well Financial, Inc., ("Live Well" or the "Debtor"). I am fully familiar with the facts set forth herein either through my own personal knowledge or through a review of documents related to Flagstar's claims against the Debtor. If called to testify in connection with the Bankruptcy Case, I would testify as follows:

2. I am Vice President of Flagstar. Flagstar is a federally chartered savings bank organized under the laws of the United States, with its principal place of business at 5151 Corporate Drive, Troy, Michigan 48098. Flagstar is a creditor of the Debtor based upon its status as a lender under the Loan Agreements (as defined below).

### The Loan Agreements

3. On or around November 2, 2016, Live Well executed and delivered to Flagstar a

Mortgage Warehousing Loan and Security Agreement (as subsequently amended and restated) (the "Mortgage Warehouse Loan Agreement") and a Revolving Credit Note (as subsequently amended and restated) (the "Mortgage Warehouse Note") pursuant to which Live Well promised to repay Flagstar the principal amount of $30,000,000.

4. Pursuant to the Mortgage Warehouse Loan Agreement, the Debtor granted Flagstar a security interest in personal property including the following: all Pledged Mortgage Loans (as defined in the Mortgages Warehouse Loan Agreement), including all related Mortgage Notes (as defined in the Mortgage Warehouse Loan Agreement, Mortgages (as defined in the Mortgage Warehouse Loan Agreement), promissory notes, mortgages, deeds of trust, deeds to secure real estate, assignments of leases and rents, other security agreements given to secure such Mortgage Loans, and all other documents, agreements, or instruments related to any such Mortgage Loans or the property given as security for any such Mortgage Loans, all rights to payment thereunder, all insurance contracts or guaranty rights with respect to any such Mortgage Loans or the real property securing any such Mortgage Loans including, without limitation, mortgage and title insurance policies, binders and commitments and fire and extended coverage insurance policies (including the right to any return premiums) (collectively, as set forth in the Mortgage Warehouse Loan Agreement, the "MWLA Collateral"). Flagstar properly perfected its security interest in the MWLA Collateral by filing a UCC financing statement and possession of the Mortgage Notes and holds a valid, first priority security interest in the MWLA Collateral.

5. As of June 7, 2019, the principal amount owed on the Mortgage Warehouse Note was $568,606.00 and the interest was $2,895.90 (exclusive of interest accruing after June 7, 2019 and costs and expenses which are also immediately due to Flagstar) (the "Mortgage Warehouse Obligations").

6. On or about March 29, 2017, Live Well executed and delivered to Flagstar a Loan

and Security Agreement (as subsequently amended) (the "Bond-Secured Credit Loan Agreement") and a Revolving Credit Note (as subsequently amended) (the "Bond-Secured Credit Note," and together with the Mortgage Warehouse Note, the "Notes") under which Live Well promised to pay Flagstar the sum of $50,000,000.00 (subsequently amended to $70,000,000).

7. Under the Bond-Secured Credit Loan Agreement, the Debtor granted Flagstar a security interest in a securities account at U.S. Bank National Association and all financial assets and other property held in the account (the "Bond-Secured Loan Collateral" and, together with the MWLA Collateral, the "Collateral"). Flagstar properly perfected its security interest in the Bond-Secured Loan Collateral by a Securities Account Control Agreement and holds a valid, first priority security interest in the Bond-Secured Loan Collateral.

8. As of June 7, 2019 the principal amount owed on the Bond-Secured Credit Note was $68,370,067.73 and the interest was $58,855.87 (exclusive of interest accruing after June 7, 2019 and costs and expenses which are also immediately due to Flagstar) (the "Bond-Secured Credit Obligations," and together with the Mortgage Warehouse Obligations, the "Obligations").

9. Live Well is in default under the terms of the Bond-Secured Loan Agreement, the Mortgage Warehouse Agreement and the related documents, instruments and agreements executed in connection therewith (collectively, the "Loan Documents").

10. The defaults under the Loan Documents include, but are not limited to, Debtor's commencement of a liquidation of its business, which is likely to have a Material Adverse Effect.

11. On May 10, 2019 Flagstar accelerated and demanded payment in full of the Obligations. Flagstar also informed Live Well that interest would now accrue at the default rates under the Loan Documents. The current amount of outstanding Obligations is no less than $69

million.

12. On May 22, 2019, Flagstar commenced a collection action against Michael C. Hild, the Debtor's CEO, as guarantor under the Loan Documents, by filing suit in the United States District Court for the Eastern District of Michigan (as amended, the "Michigan Suit").[1] On May 31, 2019, Flagstar amended the Michigan Suit by adding Live Well as a defendant.[2]

**The Debtor**

13. Live Well is a provider of reverse and forward mortgages that also trades in mortgage backed securities. Until it abruptly begin a wind down of its operations on or about May 3, 2019, it was one of the top ten reverse mortgage originators and top ten issuers of reverse mortgage securities in the country.

14. Live Well's unexpected and abrupt wind down of its operations was based, according to Live Well, on unspecified "unexpected circumstances."[3] In connection therewith, it also appears that Live Well laid off substantially all of its employees.[4]

15. Flagstar has attempted numerous times to engage the Debtor in connection with its abrupt wind down and failure to pay its outstanding obligations under the Loan Documents. These efforts have been to no avail.

16. Based on the foregoing and other information publicly available to Flagstar, the other petitioning creditors and Live Well's stakeholders, it appears beyond any conceivable or serious dispute that Live Well is insolvent and is not paying its debts as they become due. This is evidenced by, among other things, Live Well's failure to pay its debts to the Flagstar and the other petitioning creditors, its wind down of operations and the layoff of substantially all of its

---

[1] Complaint, *Flagstar Bank, FSB v. Live Well Financial, Inc.*, (E.D. Mich. 2019) (No. 19-11512).
[2] First Amended and Restated Complaint, *Flagstar Bank, FSB v. Live Well Financial, Inc.*, (E.D. Mich. 2019) (No. 19-11512).
[3] www.livewell.com
[4] Complaint at 3, *Williams v. Live Well Financial, Inc.*, (D. Del. 2019) (C.A. No. 19-00868) ("Although the precise number of persons is unknown, it is estimated at about 125 individuals.").

employees. Flagstar submits that there is better alternative for the Debtor's creditors and estate than the coordinated, controlled, court-supervised liquidation that can be accomplished only through a bankruptcy proceeding.

17. Furthermore, given the Debtor's recent mass layoff, there are serious questions regarding the management and control of the Debtor, its ability to protect and preserve assets (including any potential causes of action that may exist as a result of Live Well's activities), and liquidate in a manner that will maximize value for its creditors and other stakeholders.

18. Consequently, Flagstar and the petitioning creditors have filed the Involuntary Petitions in order to initiate a court-supervised, orderly liquidation process that will preserve the Debtor's assets, protect value and, ultimately, provide for the distribution of such assets and value to parties entitled to them.

Date: June 7, 2019

_____
Robert L. Marsh

SWORN AND SUBSCRIBED before me
This 7th day of June, 2019.

_____
Notary

Kelly Charow
Notary Public, State of Michigan
County of Macomb
My Commission Expires 04/18/2025
Acting in the County of OAKLAND