## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| LIVE WELL FINANCIAL, INC., | Case No. 19-11317 (LSS) |
| Alleged Debtor. | **Hearing Date: TBD**<br>**Objection Deadline: TBD** |

### EXPEDITED MOTION OF THE PETITIONING CREDITORS FOR ENTRY OF (I) AN INTERIM ORDER UNDER BANKRUPTCY CODE SECTION 303(f) AND (II) A FINAL ORDER DIRECTING THE APPOINTMENT OF AN INTERIM CHAPTER 7 TRUSTEE AND RELATED RELIEF

Flagstar Bank, FSB, a Federally Chartered Savings Bank ("Flagstar"), Mirae Asset Securities (USA) Inc. ("MAS"), and Industrial and Commercial Bank of China Financial Services, LLC ("ICBCFS," and together with Flagstar and MAS, the "Petitioning Creditors") hereby move the Court on an expedited basis for the entry (a) of an interim order pursuant to sections 105, 363 and 303(f) of chapter 11 of title 11 of the United States Code (as amended, modified, or supplemented, the "Bankruptcy Code") requiring Live Well Financial Inc. ("Live Well") to comply in all respects with Bankruptcy Code section 363, and (b) of a final order pursuant to Bankruptcy Code sections 105, 303(f), 303(g), and 363: (i) appointing an interim chapter 7 trustee, (ii) requiring Live Well to adhere to the requirements set forth in Bankruptcy Code section 363 and (iii) granting certain related relief (the "Motion").  In support of the Motion, the Petitioning Creditors respectfully state as follows:

### INTRODUCTION

The Petitioning Creditors filed the Involuntary Petition not only because of Live Well's precipitous cessation of business and failure to satisfy Live Well's obligations to them, but also because of Live Well's deceit and concealment when dealing with the Petitioning Creditors

(including in respect of the unexpected shutdown of Live Wells' business and unsupervised liquidation of assets). The Petitioning Creditors' concerns are magnified in light of the recent revelation that Live Well is under investigation by the Securities and Exchange Commission and the bank fraud division of the Federal Bureau of Investigation – investigations with which certain of the Petitioning Creditors are cooperating. Moreover, the Petitioning Creditors also have learned that Live Well's founder and CEO, Michael C. Hild, has engaged in (and may presently be engaged in) mismanagement of the company and self-dealing to the detriment of Live Well's legitimate creditors.

There is no question that Live Well is liquidating. The question is why would Live Well be opposed to having that liquidation conducted under court supervision by an independent fiduciary who will preserve and maximize the value of Live Well's estate, ensure that any liquidation proceeds are distributed in accordance with the Bankruptcy Code, and investigate (and if appropriate prosecute) what the Petitioning Creditors believe are valuable claims against Mr. Hild and Live Well's other officers and directors. To be sure, those claims will neither be investigated nor prosecuted if Mr. Hild remains in unfettered, unsupervised control of Live Well.[1]

For these reasons, the Petitioning Creditors are seeking immediate entry of an interim (and ultimately final) order requiring Live Well to comply in all respects with Bankruptcy Code section 363 and a final order appointing an interim trustee, and related relief.

---

[1] Due to Live Well and Mr. Hild's lack of candor and cooperation over the past several weeks since the announcement of Live Well's wind down and its default on its obligations, the Petitioning Creditors have a serious concern regarding the potential destruction of documents and other actions that could be taken to hinder the prosecution of valuable the prosecution of valuable claims of Live Well and the Petitioning Creditors if Mr. Hild remains in control.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 303(f) and (g), and 363, and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule") 2001.

## BACKGROUND

3.      On June 10, 2019 (the "Filing Date"), the Petitioning Creditors commenced an involuntary chapter 7 bankruptcy case against Live Well (the "Involuntary Bankruptcy Case"). On the Filing Date, the Petitioning Creditors each filed an affidavit in support of the Involuntary Bankruptcy Case, which are herein incorporated by reference. [D.I.s 6-8]  Also on the Filing Date, each of the Petitioning Creditors filed a *Partial Waiver of Claim*, noting that while it is likely that the outstanding obligations are vastly undersecured, each of the Petitioning Creditors has agreed to a conditional partial waiver so that the aggregate amount of their unsecured claims is at least $16,750.00.  [D.I.s 3-5]

4.      Live Well was a financial services company based in Richmond, Virginia.  Until the recent events detailed below, Live Well provided reverse mortgages and forward mortgages to customers, serviced mortgages and also issued and traded mortgage backed securities.

### A.  Live Well's Cessation of Business and Mass Termination of Employees

5.      On or around May 3, 2019, with no advance notice to creditors, Live Well

abruptly shut down its operations citing "unexpected circumstances."[2]

6.    On or about that same time, Live Well also notified the Virginia Employment Commission that it was immediately conducting a "mass layoff" as part of its "closure."[3] In connection therewith, Live Well terminated virtually all of its employees.

**B. Live Well's Failure to Pay Debts**

7.    _Live Well's Outstanding Obligations to Flagstar_. As further set forth in the _Affidavit of Robert L. Marsh on Behalf of Flagstar Bank, FSB, A Federally Chartered Savings Bank, in Support of the Involuntary Chapter 7 Petition Filed Against Live Well Financial, Inc._ (the "Flagstar Affidavit")[4] [D.I. 6], as amended by the _Declaration of Joseph M. Redoutey on Behalf of Flagstar Bank, FSB, A Federally Chartered Savings Bank, Amending Prior Affidavit of Robert L. Marsh in Support of the Involuntary Chapter 7 Petition Filed against Live Well Financial, Inc._, filed contemporaneously herewith, (collectively, the "Flagstar Affidavit")[5], Live Well owes Flagstar in excess of $68 million (the "Flagstar Debt").[6] The Flagstar Debt arises under Bond-Secured Credit Loan Agreement and Bond-Secured Credit Note (together with the related documents, instruments and agreements executed in connection therewith, collectively, the "Flagstar Loan Documents").[7] To secure the Flagstar Debt, Live Well granted Flagstar a security interest in the Bond-Secured Loan Collateral, which, among other things, includes the

---

[2] LIVE WELL FINANCIAL, https://livewell.com (last visited June 12, 2019).
[3] WARN NOTICE FOR LIVE WELL FINANCIAL, INC.| VIRGINIA EMPLOYMENT COMMISSION, www.vec.virginia.gov/warn-notice-detail/10563 (last visited June 12, 2019).
[4] Capitalized terms not defined in this subsection shall have the same meaning ascribed to them in the Flagstar Affidavit.
[5] Capitalized terms not defined in this subsection shall have the same meaning ascribed to them in the Flagstar Affidavit.
[6] Flagstar Affidavit, ¶8.
[7] _Id.,_ ¶¶ 3,6.

securities account at U.S. Bank National Association and all other assets held in the account.[8]

Flagstar properly perfected its security interests in the Bond-Secured Loan Collateral.[9]  Live

Well has not paid the Flagstar Debt.  Live Well has refused to discuss repayment of the Flagstar

Debt, its financial status, or the preservation of the Bond-Secured Loan Collateral with Flagstar

despite its repeated attempts.[10]

8.    Live Well's Outstanding Obligations to MAS.  As further set forth in the *Affidavit*

*of Richard J. Misiano on Behalf of Mirae Asset Securities (USA), Inc. in Support of the*

*Involuntary Chapter 7 Petition Filed Against Live Well Financial, Inc.* [D.I. 7] (the "MAS

Affidavit"),[11]  Live Well owes MAS not less than $22 million (the "MAS Debt").  The MAS

Debt arises under that certain Master Repurchase Agreement (the "MAS MRA").   Under the

MAS MRA, Live Well, the Seller, agreed to transfer, from time to time, "securities or other

assets against the transfer of funds by [MAS], with a simultaneous agreement by [MAS] to

transfer to [Live Well] such Securities at a date certain or on demand, against the transfer of

funds by Seller."[12]  On May 22, 2019, MAS delivered a notice of default to Live Well and Live

Well's obligations to repurchase all the Purchased Securities became immediately due and

payable.[13]  To no avail, MAS has attempted numerous times to obtain information from and

engage Live Well in connection with its abrupt shutdown and obligations to MAS.[14]

9.    Live Well's Outstanding Obligations to ICBCFS.  As further set forth in the

*Affidavit of Paul V. May on Behalf of Industrial and Commercial Bank of China Financial*

---

[8] *Id.*, ¶¶ 4, 7.
[9] *Id.*
[10] *Id.*, ¶15.
[11] Capitalized terms not defined in this subsection shall have the same meaning ascribed to them in the MAS Affidavit.
[12] MAS Affidavit, ¶3.
[13] *Id.*, ¶4.
[14] *Id.*, ¶9.

*Services LLC, in Support of the Involuntary Chapter 7 Petition Filed Against Live Well Financial, Inc.* [D.I. 8] (the "ICBCFS Affidavit"),[15] Live Well owes ICBCFS an amount not less than $40 million (the "ICBCFS Debt").[16]  The ICBCFS Debt arises under that certain Master Repurchase Agreement (the "ICBCFS MRA").  Under the ICBCFS MRA, Live Well agreed to transfer, from time to time, "securities or other assets against the transfer of funds by [ICBCFS], with a simultaneous agreement by [Live Well] to transfer to [ICBCFS] such Securities at a date certain or on demand, against the transfer of funds by [ICBCFS]."[17]  On May 16, 2019, ICBCFS delivered a notice of default to Live Well and Live Well's obligations to repurchase all the Purchased Securities became immediately due and payable.[18]  To no avail, ICBCFS has attempted numerous times to obtain information about its abrupt shutdown and obligations and has been provided only generic statements that Live Well intends to wind down its business and dispose of its assets outside of any court proceeding.[19]

10.   Accordingly, Live Well's bona fide obligations to the Petitioning Creditors total in excess of $130 million (the "Obligations").

### C. Live Well's Lack of Communication and Mismanagement

11.   Live Well has stonewalled the Petitioning Creditors' every attempt to obtain information regarding the repayment of the Obligations, the circumstances surrounding the abrupt shut down of Live Well's business and Live Well's intentions regarding the preservation of its assets.[20]  This is not merely the failure to return a phone call; this is active concealment of

---

[15] Capitalized terms not defined in this subsection shall have the same meaning ascribed to them in the ICBCFS Affidavit.
[16] ICBCFS Affidavit, ¶7.
[17] *Id.*, ¶3.
[18] *Id.*, ¶5.
[19] *Id.*, ¶10.
[20] Flagstar Affidavit, ¶15, MAS Affidavit, ¶ 9, ICBCFS Affidavit, 10.

Live Well's financial information, the reasons for its abrupt shutdown and cessation of business operations, and information regarding the liquidation Live Well has embarked upon without any supervision whatsoever.  For example, representatives of Flagstar have made repeated requests for information, only to be ignored despite Live Well's contractual obligations to provide such information.[21]  In frustration, Flagstar even sent its officers to Richmond to speak directly with Mr. Hild, who refused to meet with Flagstar and blocked Flagstar from access beyond the Lobby.[22]

12.     This, of course, leads to the question of why Live Well is refusing to provide ***any*** information whatsoever to the Petitioning Creditors.  As the Petitioning Creditors continue to conduct their independent investigation, and based on their knowledge to date, the one inescapable and reasonable conclusion is concealment.  Concealment of the reasons Live Well failed, concealment of Live Well's financial information, concealment of the acts of Live Well's officers and directors, concealment of the liquidation of Live Well's assets, and concealment of Live Well's plans for the disbursement of proceeds.

13.     The Petitioning Creditors concerns about the proper wind down of Live Well are not merely theoretical.  For example, Flagstar learned in April of 2019, that the fair market value of certain bonds serving as collateral for its $70 million line of credit and for which valuations had been consistently provided on a monthly basis since the origination of the loan in March 2017 had sustained a significant and material drop in value.  Indeed, the surprise drop in reported value suggested the bond collateral may be worth only approximately one-half of the previously

---

[21] *See, Declaration of Joseph M. Redoutey on Behalf of Flagstar Bank FSB, A Federally Charted Savings Bank, In Support of Motion to Appoint Interim Trustee and Compliance with Bankruptcy Code Section 363* ("<u>Redoutey Declaration</u>"), filed contemporaneously herewith, ¶¶ 9-11, 13-14, 17-18, 21.
[22] Redoutey Declaration, ¶¶14-15.

reported value, leaving Flagstar substantially undersecured on an obligation it was led to believe was fully secured over the term of the loan.[23]

14.    By way of further example, on April 25, 2019, Live Well demanded that MAS wire to it the remaining $6,188,193.15 in the brokerage account maintained pursuant to their agreements.[24]    At that time, Live Well affirmatively misrepresented to MAS that without this cash Live Well would be unable to continue to operate.[25]    The next day, prior to releasing the wire, Live Well's representative, Mr. Haddock, represented to MAS that Live Well was neither insolvent nor in default.[26]    On April 29, 2019, Live Well's counsel, in a conversation with MAS' in-house counsel, demanded that the funds be immediately released and suggested that the failure to release such funds would result in Live Well defaulting and having to liquidate.[27]    Live Well also promised to enter into good faith negotiations with MAS.[28]    Based on these representations, MAS released the funds to Live Well.[29]    Following the receipt of funds, Live Well informed MAS that Live Well had already begun an orderly wind down of its operations, and would not be seeking the involvement of an independent third party or a court.[30]    To this day, MAS does not know how Live Well used these funds.[31]

15.    The Petitioning Creditors are not the only entities concerned about Live Well's past and current practices.    Each of the Petitioning Creditors has been contacted by one or both

---

[23] *Id.*, ¶8.
[24] *Declaration of Richard Misiano on Behalf of Mirae Asset Securities (USA), Inc. in Support of Expedited Motion of the Petitioning Creditors for Entry of (I) an Interim Order Under Bankruptcy Code Section 303(f) and (II) a Final Order Directing the Appointment of an Interim Chapter 7 Trustee and Related Relief,* filed contemporaneously herewith, (the "Misiano Declaration"), ¶3.
[25] *Misiano Declaration,* ¶ 4.
[26] *Id.*, ¶5.
[27] *Id,* ¶6.
[28] *Id.*
[29] *Id.,* ¶7.
[30] Misiano Declaration, ¶7.
[31] *Id.*

of the SEC and the FBI regarding Live Well and Mr. Hild, and each is cooperating in those entities' investigations, including by producing requested documents.[32]

16.    In addition, upon information and belief, Live Well, at Mr. Hild's direction, has taken numerous actions that have served to protect and promote Mr. Hild's personal interests to the detriment of Live Well and its creditors.  Mr. Hild can be expected to continue to do so absent this Court's immediate intervention.

17.    Live Well also is facing lawsuits regarding its abrupt shutdown and fraudulent practices.  These litigations would be stayed upon the entry of an order of relief and relieve Live Well of the obligations to expend limited and valuable estate resources to defend against them. For example, Live Well has been sued in the United States District Court for the Eastern District of New York in *Shakespeare v. Live Well Financial, Inc.*, (E.D.N.Y. 2019) (No. 18-7299) (the "New York Litigation").  The Plaintiffs in the New York Litigation have alleged that Live Well fraudulently prepaid various property taxes then demanded homeowners repay such improper tax advances in violation of the applicable agreements and in some instances commenced foreclosure proceedings.[33]

18.    WARN Act Litigation.  On May 8, 2019, a lawsuit under the Worker Adjustment and Retraining Notification Act (the "WARN Lawsuit"), was filed by a former employee as a putative class action seeking recovery of wages and benefits for the approximately 125 employees laid off on May 3, 2019.  The WARN Lawsuit seeks damages equal to sixty (60) days

---

[32] Redoutey Declaration, ¶¶ 16, 20; Misiano Declaration, ¶¶9-10.
[33] *Declaration of Nicolas J. Jenner in Support of Expedited Motion of the Petitioning Creditors for entry of (I) an Interim Order Under Bankruptcy Code section 303(f), and (II) A Final Order Directing the Appointment of an Interim Chapter 7 Trustee and Related Relief* ("Jenner Declaration") filed contemporaneously herewith, Exhibit A.

or salary for each employee and any additional damages the court may award.[34] Live Well has engaged and paid counsel to file a motion to dismiss relying on the "faltering company exception"– a use of funds that would be unnecessary if the automatic stay were in place.

19.    It is possible, if not likely, that there are other actions pending against Live Well that the Petitioning Creditors are unaware of that may have a significant impact on Live Well and its stakeholders.  The Petitioning Creditors are not likely to be the only creditors that Live Well has stonewalled or whose obligations have not been paid either before or after Live Well abruptly and unexpectedly shut down.

20.    There is an immediate need for oversight of Live Well and the protection and preservation of Live Well's assets for the benefit of its creditors.  Live Well actively has concealed its activities and financial information from the Petitioning Creditors despite its contractual obligations; it is the subject of ongoing SEC and FBI investigations; it has shut down and is liquidating with no supervision; Live Well and Mr. Hild allegedly have facilitated payments for the benefit of Mr. Hild to the detriment of Live Well's creditors.  All of this supports the need for immediate compliance with Bankruptcy Code section 363 and, ultimately, the appointment of an interim trustee.  With the passage of time the Petitioning Creditors face ongoing loss of valuable causes of action related to transactions spearheaded by Mr. Hild or for his benefit due to the passage of applicable statutes of limitations.  Likewise, without an independent party conducting the liquidation of Live Well under the supervision of this Court, the Petitioning Creditors are legitimately concerned about the potential for destruction of documents to support valuable claims, the sale of valuable assets for less than fair value, and the irreparable harm to the value of the estate.  The Petitioning Creditors simply seek to halt the

---

[34] Jenner Declaration, Exhibit B.

{1242.001-W0056426.}                                  10

current implosion of Live Well, and ensure an independent fiduciary is in place to protect valuable assets and prevent any further harm to the estate and its creditors.

## RELIEF REQUESTED

21.    By this Motion, the Petitioning Creditors respectfully request entry of (a) an interim order requiring Live Well to comply with Bankruptcy Code section 363, and (b) a final order pursuant to Bankruptcy Code section 303(g) appointing an interim chapter 7 trustee in the Involuntary Bankruptcy Case,  or in the alternative, a final order requiring Live Well to comply with the requirements of Bankruptcy Code section 363, (c) an order limiting any bonding requirements, and (d)  granting such other related relief.

## ARGUMENT

### A. An Immediate Order Requiring Compliance with Bankruptcy Code Section 363 Should be Entered

22.    As set forth in detail above, Live Well has been actively concealing all information regarding its operations, its liquidation and potential sale of assets and distribution of proceeds and its current financial information despite contractual obligations to provide such information to the Petitioning Creditors.  Live Well also is under federal investigation by the SEC and FBI.  Live Well's history includes lack of communication with the Petitioning Creditors, lack of candor in prior communications, and (in the case of MAS) affirmative misrepresentation.  It also includes, upon information and belief, a history of mismanagement and self-dealing by, and for the benefit of, Mr. Hild.  For these reasons, the Petitioning Creditors submit that an immediate order under Bankruptcy Code section 303(f) be entered to ensure the status quo until either an order for relief is entered or the Petitioning Creditors request for an interim trustee is granted.

{1242.001-W0056426.}                              11

23.     Section 303(f) of the Bankruptcy Code provides that "[n]otwithstanding section 363 of this title, ***except to the extent the court orders otherwise***, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced." 11 U.S.C. § 303(f) (emphasis added).   Thus, a putative debtor's ability to operate, use and dispose of property during the "gap period" prior to the entry of an order for relief is not an absolute right; this Court may require application of Bankruptcy Code section 363.   11 U.S.C. § 303(f).   Indeed, Bankruptcy Code sections 303(f) and 363 are intended to limit the debtor's powers when "the debtor is acting in a manner that suggests that the assets of the estate will be disposed of to the detriment of creditors."   2 COLLIER ON BANKRUPTCY ¶ 303.23[1] (16th ed. 2019).

24.     Live Well's sudden shutdown and liquidation, along with a lack of communication and history of questionable transactions – some of which allegedly benefit Mr. Hild over other, legitimate creditors – demonstrates a real concern that the assets may be liquidated for less than fair value and distributed regardless of creditors' rights and interests. There is no dispute that Live Well has shut down and is liquidating.   This liquidation is outside Live Well's ordinary operations.   Given Live Well's adamant refusal to provide information and access to the Petitioning Creditors, the liquidation should not be allowed to continue absent the oversight of the Court.

25.     The imposition of Bankruptcy Code section 363 and its limitations requiring operation within the ordinary course of business is essential to protecting the remaining assets of Live Well for the benefit of all creditors and parties-in-interest.   Conversely, such limitations –

which debtors in possession routinely are able to abide by – will not impose undue burden on Live Well. Rather, it is the only reasonable middle-ground available to protect to all parties in interest.

**B. The Alleged Debtor is a Proper Debtor under Bankruptcy Code section 303(b)**

26.    As a threshold matter, "so as to avoid appointing an interim trustee in a case that will soon be dismissed," the Court must determine whether there is a reasonable likelihood that the alleged debtor will eventually be found to be a proper involuntary debtor under Bankruptcy Code section 303 and that orders for relief will enter. *In re The Ctr. for Mgmt. & Tech., Inc.*, 2007 WL 3197221, at *7 (Bankr. D. Md. Oct. 26, 2007) (citing *In re Prof'l Accountants Referral Svcs., Inc.*, 142 B.R. 424, 429 (Bankr. D. Colo. 1992)). This test is readily satisfied here. Under Bankruptcy Code section 303(b)(1), an involuntary petition may be commenced "by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . . if such noncontingent, undisputed claims aggregate at least $16,750 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims." 11 U.S.C. § 303(b)(1).

27.    As described above, the Petitioning Creditors have valid, undisputed claims against Live Well of at least $16,750 and likely substantially tens of millions more. These obligations are not subject to *bona fide* dispute within the meaning of the Bankruptcy Code: there are no "substantial" legal or factual questions regarding Live Well's liability to the Petitioning Creditors or the amount of their claims. *See, e.g., B.D.W. Assocs. v. Busy Beaver Bldg. Ctrs., Inc.*, 865 F.2d 65, 66-67 (3d Cir. 1989). These obligations are based on valid,

binding legal documents which could not be reasonably disputed.  Thus, the Alleged Debtor is a proper involuntary debtor under Bankruptcy Code section 303(b).

### C. Live Well's Current Status and Past Practices Requires the Appointment of an Interim Chapter 7 Trustee

28.    As set forth above, and for the same reasons supporting immediate relief under Bankruptcy Code section 303(f) to require compliance with section 363, the appointment of an interim trustee is necessary.  Based on Live Well's current liquidation, lack of candor, lack of communication, active civil and criminal investigations and past questionable business practices, there is a likelihood that Live Well will liquidate the assets for less than fair value and pay out proceeds or cash available outside of required priority schemes and to the benefit of insiders, such as Mr. Hild.

29.    Accordingly, the Petitioning Creditors are requesting the Court appoint an interim trustee to provide transparency to Live Well's liquidation and to prevent the disposition of assets to the detriment of creditors.  *See In re DiLorenzo*, 161 B.R. 752, 754 (Bankr. S.D.N.Y. 1993) (holding that if it is shown that a debtor "may attempt to abscond with assets, dispose of them at less than their fair market value, or dismantle his business, all to the detriment of [its] creditors," the appointment of an interim trustee is both necessary and appropriate).

30.    Bankruptcy Code section 303(g) provides:

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor.

11 U.S.C. § 303(g). The Petitioning Creditors are requesting an interim trustee during the "gap" period. *See, e.g., In re James Plaza Joint Venture*, 62 B.R. 959 (Bankr. S.D. Tex. 1986) (appointing an interim trustee in an involuntary chapter 7 petition under the section 303(g) standard); *In re Tradex Swiss AG*, 2007 WL 4374438 (Bankr. D. Mass. Dec. 12, 2007) (same). An interim trustee should be appointed when it is shown that irreparable harm to the estate is likely to result during the gap period without such intervention. *See In re Reed*, 11 B.R. 755, 757 (Bankr. S.D.W. Va. 1981).

31.     Grounds for the appointment of an interim trustee include, among other things, concealment, loss of assets and waste. *In re Levin*, 2011 Bankr. LEXIS 1559, at *5 (Bankr. S.D. Fla. Apr. 15, 2011) (quoting *In re DiLorenzo*, 161 B.R. 752, 754 n.8 (Bankr. S.D.N.Y. 1993). All of these elements are present here. Live Well has shut down its business and advised that it is liquidating – the loss of assets and asset value is apparent.  Live Well actively has concealed information from the Petitioning Creditors, shutting down its operations without warning, refusing information requests, and actively and furtively undertaking its liquidation without supervision.  Coupled with the overlay of the FBI and SEC investigations and alleged prior self-dealing and mismanagement, the only reasonable conclusion is that an interim trustee is required to prevent irreparable harm to creditors.

32.     In addition, the Petitioning Creditors believe there are potentially valuable causes of action against Mr. Hild and Live Well's other current and former officers and directors. Those causes of action need to be protected, including preservation of any documents and timely assertion of such claims under applicable statute of limitations.

33.     For these reasons, an interim chapter 7 trustee should be appointed immediately.

**D. Any Bond Required Should be Minimal**

34.    Bankruptcy Rule 2001(b) imposes a bond requirement on any appointment of an interim trustee under Section 303(g), the purpose of which is to "indemnify the debtor for costs, attorney's fee, expenses, and damages allowable under § 303(i) of the Code." Fed. R. Bankr. P. 2001(b).  While the Petitioning Creditors acknowledge that the "bond requirement is mandatory rather than discretionary," the bond here should be minimal.   In this instance, Live Well is liquidating, having already ceased normal operations and fired most of its employees.  Thus, the filing of the Involuntary Bankruptcy Case is to force the orderly liquidation through Court supervision and by an independent fiduciary, not for any improper purpose for which Live Well would be entitled to indemnification.  Accordingly, any bond should be minimal.

<u>NOTICE</u>

35.    Notice of this Motion shall be provided to: (a) the Office of the United States Trustee, (b) Live Well and counsel to Live Well, (c) the Department of Justice, and (d) any other party requesting notice pursuant to Bankruptcy Rule 2002.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

{1242.001-W0056426.}                              16

WHEREFORE, for the foregoing reasons, the Petitioning Creditors respectfully request that the Court enter an order substantially in the form attached hereto (a) granting the relief sought herein and (b) granting such other and further relief as the Court may deem proper.

June 13, 2019
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Nicolas E. Jenner (No. 6554 )
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
Email: landis@lrclaw.com
        mumford@lrclaw.com
        jenner@lrclaw.com

*Counsel to the Petitioning Creditors*