**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LIVE WELL FINANCIAL, INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-11317 (LSS)<br><br>Hearing Date: 12/19/2019 at 2:30 p.m. (ET)<br>Objections Due: 12/6/2019 at 4:00 p.m. (ET) |

**MOTION PURSUANT TO FED. R. BANKR. P. 9019 FOR ENTRY OF**
**AN ORDER APPROVING THE STIPULATION AND AGREEMENT**
**BETWEEN THE CHAPTER 7 TRUSTEE AND CUSTOMERS BANK**

David W. Carickhoff (the "Trustee"), the Chapter 7 Trustee of Live Well Financial, Inc. (the "Debtor" or "Live Well") in the above-captioned chapter 7 case, files this motion (the "Motion") seeking entry of an Order authorizing and approving the *Stipulation and Agreement Between the Chapter 7 Trustee and Customers Bank* (the "Agreement").[1]  A copy of the Agreement is annexed as Exhibit 1 to the proposed order attached as Exhibit A to this Motion. In support of the Motion, the Trustee respectfully states as follows:

**JURISDICTION**

1.    The Court has jurisdiction over this matter under 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2).[2]  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief requested in this Motion are pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1] Capitalized terms used but not defined in the Motion have the meanings ascribed to such terms in the Agreement.
[2] The Trustee confirms his consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by this Court in connection with this Application to the extent it is later determined this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

156698.01600/122128739v.1

## BACKGROUND

2. On June 10, 2019 (the "Filing Date"), an involuntary bankruptcy petition under chapter 7 of the Bankruptcy Code was filed against the Debtor with the United States Bankruptcy Court for the District of Delaware (the "Court"). Prior to ceasing operations, the Debtor was a financial services company that provided reverse mortgages and forward mortgages to customers, serviced mortgages, and traded in mortgage backed securities.

3. On July 1, 2019, the Court entered the Order for Relief. [D.I. 49] On that same date, the Trustee was appointed as the chapter 7 trustee of Live Well's Estate pursuant to section 701(a) of the Bankruptcy Code.

**Repurchase Agreement**

4. Prior to the Filing Date, Live Well and Customers Bank entered into that certain *Amended and Restated Master Repurchase Agreement*, dated as of September 2, 2014, as amended from time to time (the "Repurchase Agreement").

5. Pursuant to the Repurchase Agreement, Live Well agreed to transfer to Customers Bank certain residential mortgage loans, reverse mortgage draws and related assets (collectively, the "Mortgage Loans") against a transfer of funds by Customers Bank, and Customers Bank simultaneously agreed to transfer to Live Well such Mortgage Loans at a date certain less than one year following each such transfer.

6. Also pursuant to the Repurchase Agreement, Live Well agreed to transfer to Customers Bank certain securities guaranteed by the Government National Mortgage Association and related assets (collectively, the "Ginnie Mae Bonds") against a transfer of funds by Customers Bank, and Customers Bank simultaneously agreed to transfer to Live Well such Ginnie Mae Bonds at a date certain less than one year following each such transfer.

7. In addition, the Repurchase Agreement granted Customers Bank a security interest in, among other things, the Mortgage Loans and the Ginnie Mae Bonds.

8. On May 13, 2019, Customers Bank issued a notice to Live Well declaring that certain events of default had occurred and were continuing under the Repurchase Agreement.

**Surrender Agreement**

9. On June 4, 2019, Live Well and Customers Bank entered into that certain *Acceptance of Collateral Agreement* (the "Surrender Agreement").

10. Among other things, pursuant to the Surrender Agreement, (i) Live Well voluntarily surrendered and transferred to Customers Bank all rights, title and interest in certain designated Mortgage Loans (collectively, the "Surrendered Loans"); (ii) Live Well agreed to pay Customers Bank the sum of $213,446.99 (the "June 4 Payment") in connection with the Surrendered Loans; and (iii) Customers Bank agreed to be solely responsible for the payment of all fees and expenses of servicing, including subservicer fees, from and after June 4.

11. Following the execution of the Surrender Agreement, Mortgage Electronic Registration Systems, Inc. ("MERS"), in whose name the mortgages securing the Surrendered Loans were recorded, as agent for the holder of the relevant notes, must update its records to reflect Customers Bank's ownership of the Surrendered Loans.

**Post-Petition Events**

12. On September 9, 2019, the Debtor filed its Statement of Financial Affairs [D.I. 132] which reflects, among other things, that Live Well made an aggregate of $1,510,074.89 in transfers to Customers Bank during the 90 days prior to the Filing Date (the "90 Day Transfers"). Based upon the Trustee's analysis, it appears the 90 Day Transfers were made in connection with the Repurchase Agreement.

13. On September 30, 2019, Customer Bank filed its *Motion for Relief from the Automatic Stay to Liquidate Master Repurchase Agreement* [D.I. 138] (the "Stay Relief Motion"). By the Stay Relief Motion Customers Bank sought, among other things, relief from the automatic stay to take and apply certain interest payments on the Ginnie Mae Bonds or, alternatively, confirmation that the automatic stay did not apply to such interest payments.

14. On October 18, 2019, the Trustee filed a limited response and reservation of rights to the Stay Relief Motion. *See* D.I. 151.

15. On October 24, 2019, the Bankruptcy Court entered the agreed form of order granting the Stay Relief Motion as set forth in that order. *See* D.I. 156.

16. The Trustee and Customers Bank have engaged in good faith and arm's-length negotiations and have agreed to enter into the Agreement attached as Exhibit 1 to the Proposed Order.

## SUMMARY OF PROPOSED SETTLEMENT

17. The material terms[3] of the Agreement include the following:

   a. Settlement Payment. Customers Bank agrees that, within two (2) business days following the entry of the order approving the Agreement, it will pay to the Trustee, for the benefit of the Estate, the sum of $94,600 in immediately available good funds (the "Settlement Payment") consisting of (i) $85,000, representing the Estate's recovery with respect to the June 4 Payment, and (ii) $9,600 to cover the Estate's costs in connection with the Agreement.

   b. Safe Harbor. The Trustee stipulates and agrees that (i) the Trustee's receipt of the Settlement Payment in accordance with the terms of the Agreement shall be in full and complete satisfaction of all claims and causes of action the Estate may have with respect to the June 4 Payment; (ii) the safe harbor provisions under Bankruptcy Code section 546(f) apply to the 90 Day Transfers, and the 90 Day Transfers are not subject to avoidance under Bankruptcy Code sections 547(b) or 548(a)(1)(B) or any

---

[3] In the event of any inconsistency between the description of the Agreement contained in this Motion and the terms of the Agreement, the terms of the Agreement shall govern and control.

4

        equivalent state law; and (iii) the June 4 Payment and the 90 Day Transfers each were received by Customers Bank for value in an amount equal to such payments, and that as of October 24, 2019, the Trustee is not aware of any facts that would support an argument that either the June 4 Payment or the 90 Day Transfers were not received by Customers Bank in good faith.

   c.   <u>MERS/Stay Relief</u>.  Immediately upon the entry of the order approving the Agreement, the automatic stay will be modified pursuant to 11 U.S.C. § 362(d) to the extent necessary to authorize and permit MERS to update its records to reflect Customers Bank's ownership of the Surrendered Loans in accordance with the terms of the Surrender Agreement.  Neither the Trustee nor the Debtor's Estate will have any obligation, expense or liability, whether administrative, financial or otherwise, with respect to any update or change to the MERS's records with respect to the Surrendered Loans.

   d.   <u>Reimbursement of Subservicer Costs</u>.  Customers Bank agrees to continue to honor its reimbursement obligations under the Surrender Agreement and shall pay all fees and expenses of servicing the Mortgage Loans from and after June 4, 2019, including without limitation all subservicing fees (collectively, the "<u>Servicing Costs</u>").  Neither the Trustee nor the Estate will have any obligation, expense or liability, whether administrative, financial or otherwise, with respect to any such Servicing Costs.

   e.   <u>No Effect on Guaranty.</u>  Nothing contained in the Agreement is intended to, or shall be deemed to, release, modify or impact in any way any obligation of any guarantor either as to Customers Bank or to Live Well under or in connection with any guaranty of Live Well's obligations under the Repurchase Agreement, nor shall anything contained herein modify any right or defense of any such guarantor.

## RELIEF REQUESTED AND
## BASIS FOR RELIEF REQUESTED

18.    By this Motion, the Trustee seeks entry of an order, substantially in the form attached to this Motion as Exhibit A (the "<u>Proposed Order</u>"), authorizing and approving the Agreement and granting related relief.

19.    Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estates, and providing for the efficient resolution of bankruptcy cases.  *See In re Martin*, 91 F.3d 389, 393 (3rd Cir. 1996); *accord Will v. Next*

5

*Proteins, Inc. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006). To achieve these results, Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve a settlement or compromise by the trustee after notice and a hearing. *See* Fed. R. Bankr. P. 9019(a).

20. In applying this rule, a bankruptcy court should approve a settlement if it is "fair and equitable" and "in the best interest of the estates". *In re Capmark Fin. Group Inc.*, 438 B.R. 471, 514 (Bankr. D. Del. 2010); *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Grp., Inc.)*, 336 B.R. 87, 93 (Bankr. D. Del. 2005), *aff'd*, No. 05-828-SRL, 2006 WL 2842462 (D. Del. 2005). To properly make this determination, the court "must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate." *Key3Media*, 336 B.R. at 92 (quoting *Martin*, 91 F.3d at 393).

21. The United States Court of Appeals for the Third Circuit has provided four criteria a bankruptcy court should consider in approving a settlement: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *See Martin*, 91 F.3d at 393. When applying these four criteria to the facts of a particular case, a court "is not supposed to have a mini-trial on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Key3Media Group*, 336 B.R. at 93; *In re Nortel Networks, Inc.*, 522 B.R. 491, 509 (Bankr. D. Del. 2014) (approving settlement under the *Martin* factors); *In re Capmark Fin. Group Inc.*, 438 B.R. 471, 514 (Bankr. D. Del. 2010) (same). The court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is "within the reasonable range of litigation possibilities." *See In re World Health Alt., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (internal citation omitted).

22. The Trustee submits the terms of the Agreement fall well within this range of reasonableness and, accordingly, the Agreement should be approved.

23. Since his appointment, the Trustee has commenced a broad investigation of the Debtor's prepetition transfers and transactions. Upon the filing by Customers Bank of the Stay Relief Motion, the Trustee undertook an analysis of the Debtor's transfers to and transactions with Customers Bank.

24. Based on the Trustee's analysis, the terms of the Repurchase Agreement appear generally to operate as a repurchase agreement, as that term is used in the Bankruptcy Code. *See* 11 U.S.C. § 101(47) (defining "repurchase agreement"). The Trustee understands that, notwithstanding the broad avoidance and recovery powers that the Trustee can exercise under chapter 5 of the Bankruptcy Code, certain payments made pursuant to a true repurchase agreement are protected from avoidance and recovery by virtue of the Bankruptcy Code safe harbor provisions. *See, e.g.*, 11 U.S.C. § 546(f). It appears that the 90 Day Transfers which Live Well paid to Customers Bank during the 90 day period prior to the Filing Date were made in connection with the Repurchase Agreement and therefore likely are protected from avoidance and recovery by the Bankruptcy Code safe harbor provisions.

25. Following the termination date of the Repurchase Agreement, Customers Bank and Live Well entered into the Surrender Agreement, dated as of June 4, 2019. The Trustee believes certain aspects of the Repurchase Agreement, and the terms used therein, appear more in the nature of a secured transaction than a true repurchase agreement. If true, the transfers contemplated and made pursuant to the Surrender Agreement, including the June 4 Payment, would not be shielded by the safe harbor. Customers Bank strongly disputes the Trustee's position and asserted that, at a minimum, the Surrender Agreement and the June 4 Payment were

made "in connection with a repurchase agreement" and therefore are fully protected by the safe harbor.  11 U.S.C. § 546(f).

26. The Trustee has determined that, given the costs, risks and potential delays of any litigation, as well as the views some courts have expressed in the case law to read the safe harbor provisions of the Bankruptcy Code broadly, it is in the best interest of the estate to enter into the settlement set forth in the Agreement.

27. The Trustee believes the $94,600 Settlement Payment and the other consideration the estate would receive under the terms of the Agreement are good and fair consideration for the potential claims and causes of action the estate might assert, particularly given that the Agreement was entered into without the need for costly or time consuming litigation. Accordingly, the Trustee seeks authority and approval to enter into the Agreement.

## **NOTICE**

28. Notice of this Motion has been provided to the following parties or their counsel of record: (i) the Debtor, (ii) the Office of the United States Trustee, (iii) Customers Bank, (iv) Compu-Link Corporation, dba Celink, (v) Mortgage Electronic Registration Systems, Inc., and (vi) all parties that have requested pursuant to Bankruptcy Rule 2002 to receive notice in this case.  The Trustee submits, in light of the nature of the relief requested, no further notice is necessary or required.

29. No prior request for the relief requested in this Motion has been made to this Court or to any other court.

30. The Trustee submits this Motion does not present novel issues of law requiring the citation to any authority, other than the statutes and rules cited above, and, accordingly, submit no separate memorandum of law is necessary.

**CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court enter the Proposed Order annexed as Exhibit A to this Motion (i) authorizing and approving the Agreement annexed as Exhibit 1 to the Proposed Order and (ii) granting such other and further relief as the Court deems appropriate under the circumstances.

Dated: November 22, 2019
Wilmington, Delaware

**BLANK ROME LLP**

*/s/ Bryan J. Hall*
Regina Stango Kelbon (DE No. 5444)
Bryan J. Hall (DE No. 6285)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:    (302) 425-6400
Facsimile:    (302) 425-6464
Email:    Kelbon@BlankRome.com
        BHall@BlankRome.com

Michael B. Schaedle (*pro hac vice* to be filed)
One Logan Square
130 North 18th Street
Philadelphia, Pennsylvania 19103
Telephone:    (215) 569-5500
Facsimile:    (215) 569-5555
Email:    Schaedle@BlankRome.com

*Special Counsel to the Chapter 7 Trustee*