**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LIVE WELL FINANCIAL, INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-11317 (LSS)<br><br>**Re: D.I. 200**<br><br>**Objection Deadline: 6/3/20 at 4:00 p.m. (ET)**<br>**Hearing Date: 6/10/20 at 10:00 a.m. (ET)** |

**OBJECTION OF CHAPTER 7 TRUSTEE TO MOTION OF MICHAEL C. HILD FOR RELIEF FROM THE AUTOMATIC STAY**

David W. Carickhoff, the chapter 7 trustee (the "Trustee") of Live Well Financial, Inc. (the "Debtor"), hereby objects (the "Objection") to the *Motion of Michael C. Hild for Relief from the Automatic Stay* [D.I. 200] (the "Motion").[1] In support of this Objection, the Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. By the Motion, Hild seeks relief from the automatic stay to compel the Debtor's Insurer to pay unspecified litigation defense costs. Initially, the Trustee notes that the Motion should be denied because it fails to set forth even the most basic factual averments necessary to understand what the Motion really seeks. In fact, aside from the Motion's incomplete recitation of the Policy's terms, the only factual assertions made by the Motion in support of Hild's legal conclusions are that:

(a) on or about March 5, 2019, the ***Debtor*** provided notice of a "Claim" to the Insurer detailing the United States Securities and Exchange Commission's ("SEC") determination to recommend filing of an SEC enforcement action against Hild (Motion, ¶13);

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed such terms in the Lift Stay Motion.

(b) "upon information and belief," no other claim was made by the Debtor and noticed under the Policy during the "Policy Period" (Motion, ¶14);

(c) Hild has sought payment of those unspecified defense costs from the Insurer (Motion, ¶16); and

(d) Although the Insurer paid unknown defense costs to Hild previously, the Insurer has now refused to pay Hild's defense costs (Motion, ¶17).

2. The Motion fails to state whether (a) Hild's defense costs arise solely in connection with the SEC action, (b) the Debtor is subject to pending claims in the SEC action, (c) Hild is subject to any pending criminal action, or even, (d) whether the SEC action remains actively prosecuted.

3. The Motion should be denied for several reasons – each of which is sufficient reason by itself to require denial of the relief sought by Hild. First, the Motion does not specify how Hild could be entitled to relief under the Policy when the Insurer has already denied him coverage. Second, the SEC action was stayed as to all parties at the request of the United States Attorney for the Southern District of New York in November 2019 (a fact known to Hild but left unstated in the Motion). Third, the Trustee has made a claim on behalf of the estate for Policy proceeds and certain other claims have been made against the Policy. Fourth, and most importantly, the Policy and its proceeds are property of the estate, which must be conserved for the benefit of all holders of allowed claims against the estate.

4. Nonetheless, the inadequate *pro forma* Motion asserts there is cause to lift the automatic stay because, in Hild's view: (1) there is no prejudice to the estate; (2) the hardship to Hild if the automatic stay is not lifted outweighs the hardship to the Debtor if the automatic stay is lifted; and (3) Hild is likely to succeed on the merits of an action against the Insurer. These

assertions, however, are wrong on the law and the facts and they must be denied. Specifically, Hild's arguments should be rejected for the following reasons:

5. Most importantly, the Policy proceeds would otherwise be available to protect the Debtor's estate because there is direct entity coverage under the policy for the claims pending against the Debtor in the SEC action. Therefore, the Policy and its proceeds are property of the estate and, because the Policy is a "wasting" policy, any proceeds paid on account of Hild's defense costs necessarily deplete the amount of proceeds available to the estate. Moreover, the Insurer has denied coverage to Hild and, if the allegations in the SEC action (and related criminal action) are true, the Policy's exclusions and limitations on indemnification may preclude Hild's recovery of defense costs, all of which render the Motion futile.

6. Further, the Motion fails to establish cause to lift the automatic stay because:

- there would be substantial prejudice to the Debtor's estate if the automatic stay is lifted since depletion of insurance policy proceeds, which are property of the estate, will have an adverse effect on the estate by diminishing "wasting" estate property that would otherwise be available for general creditor recoveries (after a claims reconciliation has been conducted, determining which claims are to be allowed for distribution purposes and there is a significant possibility that any Hild claims against the estate could be disallowed or equitably subordinated);

- the hardship to the Debtor's estate if the relief is granted outweighs any hardship to Hild if the relief is not granted because the SEC action is stayed, Hild has already filed a direct indemnification claim against the estate, and this Court should consider marshalling Policy proceeds for the benefit of the estate rather than preferring the putative, primary wrongdoer identified in the SEC and criminal actions, Hild; and

- Hild fails to make any showing that he is likely to be successful in the underlying SEC action (it should be noted that there is no pending, pre-petition coverage action brought by Hild against GAIC). Rather, the Motion's simple, bald assertion that "Hild is likely to succeed on the merits of any action against GAIC" is insufficient and should not guide this Court's determination of the matter.

7. At bottom, the Motion is a thinly disguised attempt by Hild to "jump the line" and recover early on his unsecured indemnification claim against the Debtor's estate while leaving the Trustee immersed in unravelling the myriad claims flowing from Hild's own widely alleged misconduct. For these reasons, and the additional reasons set forth herein, the Court should not allow the automatic stay to be lifted.

## RELEVANT ADDITIONAL BACKGROUND

*A. Policy.*

8. The Policy allows the Debtor to extend the "Discovery Period" for an elected period of time by paying an "Additional Discovery Premium Amount." *See* Policy, Declarations, Item 3; *also* Policy, General Terms and Conditions, Section I.

9. Insuring Agreement B of the D&O Coverage Section provides for "Insured Persons Reimbursement Coverage" ("Reimbursement Coverage") as follows:

> The **Insurer** shall pay on behalf of the **Company** all **Loss** which any **Insured Person** shall be legally obligated to pay as a result of a **Claim** first made against any **Insured Person** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**, but only to the extent the Company is required or permitted by law to indemnify the **Insured Person**.

Policy, Coverage Part A, Section I.(B). The Reimbursement Coverage applies where an "Insured Person" is currently being indemnified by the Company.

10. Insuring Agreement C of the D&O Coverage Section provides direct "Company Coverage" to the Debtor in the SEC action as follows:

> The **Insurer** shall pay on behalf of the **Company** all **Loss** which the **Company** shall be legally obligated to pay as a result of a **Claim** first made against the **Company** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**.

Policy, Coverage Part A, Section I.(C).

11. The Debtor has a "Claim" under the Policy for, among other things, "(2) a civil proceeding commenced by the service of a complaint or similar pleading" and "(7) a civil, criminal, administrative, or regulatory investigation of the **Company**, but: (a) only after the **Company** is identified in writing by the investigating authority as a party against whom a proceeding described in paragraphs (2) through (5) above may be commenced, or in the case of an investigation by the Securities and Exchange Commission or a similar state or foreign government authority, after the service of a subpoena upon the **Company**; and (b) only while such investigation is also pending against the Insured Person pursuant to paragraph (6) above." Policy, Coverage Part A, Section II.(A).(2,7).

12. The Debtor is an "Insured" under the D&O Coverage Section. *See* Policy, Coverage Part A, Section II.(E).

13. The Debtor is subject to "Loss" under the Policy for, among other things, "(1) compensatory damages, punitive or exemplary damages, or the multiple portion of any multiple damage award; (2) settlements; [and] (3) judgments, including pre-judgment interest, post-judgment interest." Policy, Coverage Part A, Section II.(H).(1-3).

14. The term "Wrongful Act" is defined under the Policy to include "with respect to Insuring Agreement I.C., any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the **Company**." Policy, Coverage Part A, Section II.(N).(2).

15. The Policy allows for "Exclusions" where, among other things, "the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**

made against any **Insured**: (1) brought about or contributed to by: (a) any **Insureds** gaining any personal profit, financial advantage or remuneration to which they were not legally entitled" (the "Ill-Gotten Profits Exclusion"); or (2) the deliberately fraudulent or deliberately criminal acts of any **Insureds**" (the "Fraud Exclusion" and together with the Ill-Gotten Profits Exclusion, the "Exclusions"). Policy, Coverage Part A, Section III.(A).(1).

16. On or about November 7, 2019, the Trustee timely paid the requisite "Additional Discovery Premium Amount" to the Insurer to purchase a one (1) year extension of the "Discovery Period" (the "Extended Discovery Period") and thereafter made claims against the Policy.

*B. Actions Against Hild*

17. On August 26, 2019, the United States commenced a criminal proceeding against Hild when a grand jury in the Southern District of New York ("Southern District") returned an indictment ("Indictment") against Hild. In the proceeding, styled as *U.S. v. Michael Hild*, 19 Cr. 602 (RA) ("Criminal Action"), there are five (5) counts against Hild, for conspiracy to commit securities fraud, conspiracy to commit wire and bank fraud, securities fraud, wire fraud and bank fraud. The United States also brought related criminal proceedings against the Debtor's former Chief Financial Officer, Eric Rohr ("Rohr"), and Executive Vice President, Darren Stumberger ("Stumberger"). Upon information, Rohr and Stumberger have already pleaded guilty in their respective criminal cases and are cooperating with the United States.[2]

---

[2] *See* https://www.justice.gov/usao-sdny/pr/former-ceo-live-well-financial-charged-140-million-bond-fraud-scheme

18. On August 28, 2019, the Southern District issued a post-indictment restraining order prohibiting Hild and his wife, Laura Hild, from selling or otherwise encumbering over two dozen real properties in Richmond, Virginia owned directly or indirectly by Laura Hild. The restraining order was issued after the Southern District found probable cause to believe that those properties were purchased with proceeds of the fraudulent schemes alleged in the Indictment. Those properties are partly the subject of a pending Bankruptcy Rule 2004 motion filed by the Trustee.[3] Based upon a preliminary investigation by the Trustee, Hild appears to have personally profited from an illegal scheme by diverting no less than an estimated $21 million to himself, his wife Laura Hild, and subsequently to and between dozens of entities that they wholly own and control.[4]

19. On August 29, 2019, the SEC filed a Complaint in the Southern District against the Debtor, Hild, Rohr and Stumberger, thereby commencing the action styled as *U.S. Securities Exchange Commission v. Live Well Financial, Inc., et al.*, Case No. 1:19-cv-08086 (AJN) ("SEC Action"). *See* Complaint, attached as **Exhibit A** hereto.

20. In the SEC Action, the defendants are charged with perpetuating a multi-million-dollar bond mismarking scheme against the Debtor's short-term lenders. The SEC alleges that the Debtor, under the direction of Hild, fraudulently inflated the value of its portfolio of complex reverse-mortgage bonds. Through this alleged scheme - which Hild called a "self-generating money machine" – the Debtor was able to borrow tens of millions of dollars more from its lenders through the securities transactions than it could have borrowed had the bonds been priced

[3] *See* [D.I. 206].
[4] *Id.,* paragraph 2.

accurately and was able to fund lavish compensation packages for Hild and others. Further, the SEC's complaint charges the Debtor, and a discrete cabal of its directors and officers (Hild, Rohr, and Stumberger), with violations of the anti-fraud provisions of the federal securities laws and seeks a permanent injunction, disgorgement of ill-gotten gains along with prejudgment interest, financial penalties, and officer and director bars against Hild and Rohr. Upon information, Stumberger and Rohr consented to the entry of a partial judgment against them in the SEC Action.[5]

21. On November 25, 2019, the United States filed a motion to intervene in the SEC Action and to stay proceedings therein until conclusion of the parallel Criminal Action, which the United States asserted arose from the identical set of facts and circumstances that underlie the SEC Action. On November 26, 2019, the United States' motion was granted, and the SEC Action was stayed. Hild, of course, was served with the motion and the resulting order, but **did not disclose this material fact in his Motion**.

C. *Hild's Proofs of Claim*

22. On November 27, 2019, Hild filed proof of claim numbered 51 in the amount of $250,388.75 (the "Indemnification Claim"), asserting a general unsecured claim for the Debtor's "obligation to indemnify Michael Hild for legal fees he as [sic] incurred related to his role as Chief Executive Officer of the Debtor." The Indemnification Claim goes on to state that Hild owes $250,388.75 for legal fees that the Insurer is responsible for paying.

23. On the same day, Hild filed proof of claim numbered 49 ("POC No. 49") in the amount of $39,313,337.03, for prepetition guaranty claims arising under a certain Guaranty and Indemnity Agreement dated November 22, 2016, by and between Hild and the Debtor.

[5] *See* https://www.sec.gov/litigation/litreleases/2019/lr24579.htm

## OBJECTION

26. The Motion should be denied because it seeks to improperly pay claims: (1) with Policy proceeds that are property of the estate and would otherwise be available to protect other assets of the Debtor's estate from diminution; and (2) without establishing cause.

### I. The Motion Should Be Denied Because the Policy and Its Proceeds Are Estate Property and Would Otherwise Be Available to Protect the Debtor's Estate.

27. The Policy is an estate asset and its proceeds are property of the Debtor's bankruptcy estate. Under Bankruptcy Code section 362, an automatic stay is imposed to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . ."[6] Bankruptcy Code section 541(a)(1) provides that property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."[7] As stated by this Court, the "Supreme Court has interpreted § 541(a)(1) broadly,"[8] and "[a] debtor's liability insurance policy is considered property of the estate."[9]

28. "However, the courts are in disagreement over whether the proceeds of a liability insurance policy are property of the estate."[10] Whether proceeds of a liability insurance policy are property of the estate is controlled by the language and the scope of the specific policy at issue.[11] The outcome "usually hinges on who is the named insured under the liability insurance policy because liability policies are held by insureds as protection against claims that may be asserted

---

[6] 11 U.S.C. § 362(a)(3).
[7] 11 U.S.C. § 541(a)(1).
[8] *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004).
[9] *In re Downey Fin. Corp.*, 428 B.R. 595 (Bankr. D. Del. 2010).
[10] *In re Allied Digital*, 306 B.R. at 509.
[11] *See Id.*

against them."[12] When the liability insurance policy provides direct coverage to both the debtor *and* the directors and officers, "the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution."[13]

29. In addition to the Policy's coverage of directors and officers, the Policy here provides to the Debtor both entity coverage, which covers losses arising from claims against the Debtor in the SEC Action, and indemnification coverage. Specifically, the Policy provides the same coverage to the "Company" that it does to the "Insured Person" in connection with pending claims in the SEC Action. Furthermore, the dispositive facts from *Allied Digital* and *Downey* -- determining whether insurance policy proceeds were property of the estate -- are simply not present here: the claims against the Debtor in the SEC Action have **not** yet been adjudicated or otherwise barred. Accordingly, because the claims against the Debtor in the SEC Action continue to have vitality, a depletion of Policy proceeds by this Court's granting of the Motion, would indeed have an adverse effect on the Debtor's estate, which has a direct interest in the Policy proceeds.

30. Furthermore, because the SEC Action is currently stayed (and the Motion references no other litigation for which it seeks payment of defense costs), this Court must conclude that Hild is seeking reimbursement of defense costs in the SEC Action. In considering the Motion's request for reimbursement, together with Hild's request for indemnification by the Debtor's estate, this Court's analysis under the Policy should include consideration of whether the

[12] *Id*. at 509-10.
[13] *In re Downey Fin. Corp.* at 603.

Motion's requested relief is made pursuant to the Reimbursement Coverage.[14] The Reimbursement Coverage, established prepetition, is applicable when an "Insured Person" is being indemnified by the "Company." Hild's Indemnification Claim is undoubtedly a request for the "Company" to indemnify him. Importantly, however, under the Policy, such indemnification is only to be paid when the Insurer is legally obligated to pay "*but only to the extent the **Company** is required or permitted by law to indemnify the **Insured Person**.*"[15] Accordingly, any Hild indemnification or other claim is entirely subject to the requirements of the bankruptcy law relating to the reconciliation of claims.

31. While the SEC Action is stayed (and no defense costs are being incurred), this Court should not allow Hild to diminish Policy proceeds until it is clear whether the Exclusions under the Policy apply.[16] This Court and the Trustee will be in a better position to so determine whether such costs might be allowed as an unsecured, non-priority claim or disallowed at the conclusion of the Criminal Action (before any recommencement of the SEC Action).[17] The nature of the "Wrongful Acts" alleged against Hild – some of which the Trustee has identified to the Insurer as

---

[14] After all, the Indemnification Claim is deemed allowed under Bankruptcy Code section 502 but remains subject to the Trustee's objection.

[15] Policy, Coverage Part A, Section I.(B).

[16] Delaware Courts give effect to exclusionary language in insurance policies where such language is found to be "specific," "clear," "plain," "conspicuous," and "not contrary to public policy." *Pfizer Inc. v. Arch Ins. Co.*, 2019 Del. Super. LEXIS 345 (Del. Super. Ct. July 23, 2019); *also Med Depot, Inc.*, 2016 WL 5539879, at *7 (quoting *AT&T Corp. v. Clarendon Am, Ins. Co.*, 2006 WL 1382268, at *9 (Del. Super Ct. April 25, 2006), *rev'd in part on other grounds, AT&T Corp. v. Fraday Capital Ltd.*, 918 A.2d 1104 (Del. 2007)). Delaware law does not allow corporations to indemnify directors and officers if they are found to have acted in bad faith. Delaware courts have stated that the "boundaries for indemnification" are "'success' and 'bad faith.'" *Hermelin v. K-V Pharm. Co.*, 54 A.3d 1093, 1094 (Del. Ch. 2012).

[17] The disposition of the Criminal Action (prior to any continuing litigation in the SEC Action) is also likely to provide a basis for the Trustee to object to Hild's Indemnification Claim.

claims against the Policy that are timely and appropriate during the Extended Discovery Period – should give this Court pause as it considers whether to allow some other tribunal to determine whether Hild's defense litigation costs should be shifted to the estate, thereby depleting limited estate assets.[18] Moreover, the Trustee believes the Estate has claims against certain former directors and officers of Live Well, some which would be covered by the Policy. Surely, Hild should not be permitted to deplete the very resource available to cover certain of the damages he inflicted on the Debtor.

32. As detailed above, the Policy does not cover a loss by Hild under the Fraud Exclusion and the Ill-Gotten Profits Exclusion. The allegations in the SEC Action clearly arise from, among other things, actions by Hild, from which it is alleged he received personal profit, financial advantage and renumeration. As set forth above, the Trustee's preliminary investigation reflects that Hild appears to have personally profited from his illegal scheme by diverting no less than an estimated $21 million to himself, his wife and entities they control. For this reason alone, the Motion should be denied.

33. Furthermore, by Hild's own admission, the Insurer has denied coverage. Denial of coverage is one more factor militating this Court conclude the requested relief must be denied. In sum, the payment of defense costs in connection with D&O Coverage, will directly reduce the Debtor's coverage for its own "Loss," thereby reducing the amount of Policy proceeds available

[18] The Motion admits the ***Debtor*** gave notice of a Claim to the Insurer on or about March 5, 2019, which contradicts the Motion's conclusion that "no other claims were made against the Policy during the Policy Period." *Compare* Motion at ¶¶ 13, 32. The Motion's further conclusion that "[b]ecause the Policy Period has expired, no other claims can be made" is also inaccurate because any future claims related to the SEC or criminal actions, to the extent there are any, will likely be deemed related back and will also tap into the Policy limits. *See* Motion at ¶ 33.

to protect other assets of the Debtor's estate from diminution. The Debtor has a clear and current interest in the proceeds of the Policy. Those proceeds should be protected as property of the estate to protect the estate's resources from diminution.

34. Finally, as discussed above, to the extent the Policy proceeds are disbursed under what is later found to be an excluded claim, the Debtor's estate could be exposed to irreparable harm. Moreover, in the event that Hild's defense costs are (improperly) paid by the Insurer—per the relief he is seeking—the Debtor's estate and other interested parties will be severely harmed because the proceeds of the Policy will no longer be available to protect the other assets of the Debtor's estate from diminution and to maximize value for the general creditors of the estate, which creditors' losses derive in part from Hild's failures of care in respect of Live Well.

**III. The Motion Should Be Denied Because It Fails to Establish Cause.**

35. Even though the Policy proceeds are property of the estate, this Court must still determine if cause exists to lift the automatic stay to allow Hild to access such proceeds. Pursuant to Bankruptcy Code section 362(d), the court shall grant relief from the stay (1) for "cause" or (2) if the debtor does not have equity in such property and such property is not necessary to an effective reorganization.[19] Taking section 362(d)(2) first, Hild is not entitled to relief from the automatic stay under such section because, as discussed above, the Policy proceeds are property of the estate. Simply, the Motion must fail on section 362(d)(2) grounds because the Debtor has equity in the Policy proceeds.

[19] *See* 11 U.S.C. § 362(d)(1),(2).

36. The inquiry into whether sufficient cause exists to lift the stay is fact intensive and is determined on a case-by-case basis examining the totality of the circumstances.[20] In conducting its inquiry, this Court must consider: "1. Whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay; 2. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and 3. The probability of the creditor prevailing on the merits."[21] The party requesting relief from the stay has the burden of proof on the issue of the debtor's equity in property, while the party opposing stay relief has the burden of proof on all other issues.[22]

37. The first factor this Court must consider is whether lifting the stay will result in any great prejudice to the estate or the Debtor. Granting the Motion would allow Hild to access and deplete Policy proceeds, which as discussed above, are property of the Debtor's estate. Such a race would, of course, be to the detriment of the Debtor, its estate, and its creditors. The Policy is a "wasting" policy, meaning that every dollar paid for any loss, defense costs, or claim covered under the Policy necessarily reduces the amount of proceeds available to cover subsequent loss, defense costs, or claims. If Hild's race to the Policy proceeds is triggered, there is a significant risk that the Policy will be prematurely hollowed to the detriment of the Debtor's estate.

38. The second factor is whether the hardship to Hild from maintaining the automatic stay outweighs the hardship to the Debtor. The result of granting the Motion is that the Debtor's estate and every interested party will be prejudiced by the premature lifting of the automatic stay to allow for the depletion of the Policy in order to pay Hild's defense costs.

---

[20] *Downey Fin. Corp.*, 428 B.R. at 608-09.
[21] *Id.*
[22] *Id.* at 609.

39. Conversely, Hild has not demonstrated that denial of the Motion will inflict any hardship on him that would outweigh the prejudice suffered by the Debtor's estate, its creditors (arguably the victims of his bad acts) and other parties in interest through a race to the proceeds of the Policy. Indeed, because the Policy provides for indemnity coverage and Hild has already filed his Indemnification Claim against the estate, there is no conceivable hardship to Hild in awaiting distribution from the estate on his unsecured indemnification claim (*particularly because the SEC Action is currently stayed*).

40. Moreover, while Hild nominally may be an "Insured Person" under Part A of the Policy, if for argument's sake one ignored his Indictment, his co-defendants' guilty pleas, partial judgments, and the well-pled and supported allegations of malfeasance set forth in the SEC Action and in the Criminal Action, the Motion lacks sufficient details about the defense costs in question to support entitlement thereto under the Policy.[23] For these reasons alone, the Motion does not meet its burden or demonstrate prejudice weighs in Hild's favor.

41. Even further, Hild also does not articulate any persuasive basis of prejudice that would result from maintaining the automatic stay. The Motion errantly concludes, without any factual or legal analysis, that proceeds of the Policy are *not* estate property. The Motion also makes an errant factual conclusion that no other claims have been made against the Policy. Based upon its faulty legal and factual conclusions, the Motion fails to properly analyze prejudice to Hild if the stay is not lifted and certainly does not weigh the cost to Hild against the significant prejudice to the estate and Live Well creditors/Hild victims if the stay is lifted.

---

[23] *See Downey Fin. Corp.*, 428 B.R. at 603 (defining movant's burden regarding the establishment of "cause" for relief from the automatic stay).

42. The final factor is likelihood of success on the merits in the underlying action, the SEC Action. Hild makes no factual or legal showing as to whether he is likely to prevail on the merits of the SEC Action. To the contrary, taking the SEC's allegations as true, Hild appears to have defrauded creditors while committing bank and wire fraud. The fact that his alleged cohorts, Rohr and Stumberger, have already pleaded guilty to related criminal charges should lead the Court to conclude Hild will likely not be successful in the SEC Action (or the Criminal Action).

WHEREFORE, the Trustee respectfully requests that the Court deny the Motion and grant the Trustee such other and further relief as it deems just, necessary and proper.

Dated: June 3, 2020
Wilmington, Delaware

**BLANK ROME LLP**
*/s/ Stanley B. Tarr*
Regina Stango Kelbon (DE No. 5444)
Stanley B. Tarr (DE No. 5535)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
Email: Kelbon@BlankRome.com
Tarr@BlankRome.com

Michael B. Schaedle (admitted *pro hac vice*)
Michael D. Silberfarb (admitted *pro hac vice*)
One Logan Square
130 North 18th Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555
Email: Schaedle@BlankRome.com

*Co-Counsel to Chapter 7 Trustee*