**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LIVE WELL FINANCIAL, INC.,<br><br>                   Debtor. | Chapter 7<br><br>Case No. 19-11317 (LSS)<br><br>**Re: Docket Nos.: 206, 227** |

**REPLY IN SUPPORT OF THE CHAPTER 7 TRUSTEE'S RULE 2004 MOTION DIRECTED TO MICHAEL C. HILD, LAURA D. HILD, AND THE HILD ENTITIES**

      David W. Carickhoff, as the Chapter 7 Trustee ("Trustee") of Live Well Financial, Inc. ("Live Well" or "Debtor"), by and through his co-counsel, Blank Rome LLP, files this Reply in support of the *Motion of Chapter 7 Trustee David W. Carickhoff for an Order, Pursuant to Section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2004, and Local Bankruptcy Rule 2004-1, Authorizing and Directing the Examination of Michael C. Hild, Laura D. Hild, and the Hild Entities* [D.I. 206] (the "Motion") and in response to the objection thereto [D.I. 227] ("Objection") filed by Michael C. Hild, Laura D. Hild and certain affiliated entities (collectively, the "Hilds"). In support of the Motion, the Trustee respectfully states as follows:

**REPLY**

    **I.**    **PRELIMINARY STATEMENT**

    1.    This Motion is a straightforward request under Bankruptcy Rule 2004 for the production of documents from (i) Michael Hild, the founder, majority stockholder, and former chief executive of Live Well, (ii) his wife, Laura Hild, and (iii) certain entities owned or controlled by Mr. and Mrs. Hild.

    2.    The Hilds object to the 2004 Motion primarily based on an argument that the Trustee could not sustain a fraudulent transfer action against the Hilds because there is a pending criminal forfeiture action against Michael Hild. The argument fails as a matter of fact – as detailed

123387516

below, the forfeiture action does not categorically preclude the Trustee from filing such an action against the Hilds. More importantly, however, the argument fails as a matter of law because it defies the plain language and salient purpose of Bankruptcy Rule 2004. Rule 2004 entitles the Trustee to investigate, through pre-complaint discovery, avenues that might allow the Trustee to increase the overall assets of the estate. That is why Rule 2004 only requires a showing of "good cause" to obtain discovery from a third party.

3.  Rule 2004 does not (and cannot) require a showing that the Trustee already *has* a sustainable cause of action against the party from whom discovery is sought. If it did, Rule 2004 would be rendered superfluous because the Trustee could just file an adversary proceeding and obtain discovery in that proceeding.

4.  Here, the Trustee has demonstrated unequivocally there is good cause to obtain the discovery from the Hilds. There is no dispute Mr. Hild diverted millions of dollars from the Debtor prepetition.[1] Nor is there any dispute Mr. Hild transferred this money to, among others, his wife and various entities from which the Trustee seeks documents through this Motion.[2] Mr. Hild also filed two claims against the estate totaling nearly $40 million.[1] Thus, access to the documents sought in the 2004 Motion will allow the Trustee to evaluate potential claims against all of the Hilds and to oppose the claims filed against the estate by Michael Hild. Good cause is plainly not in dispute.

5.  The Hilds' remaining arguments are just throw-aways that must be rejected. For example, the mere fact that Mr. Hild is currently facing criminal charges does not establish that

---

[1] *See Statement of Financial Affairs*, Attachments 4, 30 [D.I. 132].
[2] In addition, Mr. Hild has been indicted in the Southern District of New York on five counts, including allegedly using Live Well to perpetrate a massive bond mis-pricing scheme that damaged Live Well's largest unsecured creditors materially.

123387516

the Trustee's otherwise reasonable requests for documents create an undue burden. The spousal privilege and the Fifth Amendment are not implicated here because the Trustee is not seeking testimony from Mr. or Mrs. Hild. And the Sixth Amendment is not implicated because Mr. Hild can identify no legitimate reason why production of documents in his possession through his civil attorney would in any way impact his criminal attorneys' ability to effectively represent him.

6.      Further, the Hilds' production of documents cannot be substantially delayed. The statute of limitations on several potential causes of action is fast approaching, and the Trustee needs the documents sought from the Hilds to evaluate the strength of such actions. Thus, while the Trustee is willing to work with the Hilds to allow for a production on a rolling basis, a blanket delay of production until after Mr. Hild's trial in October, as the Hilds demand, is not workable.

7.      For these reasons, and the other reasons set forth below, the Trustee respectfully requests that the Court grant the Motion.

## II.    ARGUMENT

### A.    The Trustee Has Established Good Cause for the 2004 Examination.

8.      As the representative of the Live Well estate and its creditors, who are the alleged victims of the fraud asserted by the United States in the criminal case, the Trustee has the duty, among other things, to "investigate the financial affairs of the debtor" and to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1), (4). In furtherance of that duty, Bankruptcy Rule 2004 empowers the Trustee to examine "any entity" relating to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . ." Fed. R. Bankr. P. 2004(a), (b).

9. The Trustee is engaged in a broad investigation of the Debtor's prepetition transfers and transactions. This includes, without limitation, (i) investigating bond pricing and Mr. Hild's role in any mis-pricing and certain other entities, and (ii) investigating the Debtor's prepetition dealings with insiders, including the Hilds. The Hilds sit at the nexus of two major parts of the Trustee's ongoing investigation.

10. By the Motion, the Trustee seeks authority to subpoena documents from the Hilds in furtherance of that investigation. The Trustee has a legitimate, good faith basis to obtain documents and information from the Hilds responsive to each of the "Examination Topics" set forth in paragraph 22 of the Motion.

11. Generally, "good cause" to grant a request under Bankruptcy Rule 2004 "is shown if the examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627 (Bankr. D. Del. 2016) (internal quotation omitted). Here, the 2004 examination of the Hilds is necessary to determine whether the estate may have potential claims against the Hilds and/or third parties, including subsequent transferees, while denial of the Motion would effect an undue hardship on the Trustee's investigation and would be a great injustice to the estate and its creditors.

12. The Trustee's Motion "fits squarely within the purpose of Rule 2004, as he seeks to examine third parties for the purpose of 'discovering assets, examining transactions, and determining whether wrongdoing has occurred' on behalf of the Debtor['s] estate." *Id*.

      **B.    The Criminal Proceedings Provide No Basis to Further Delay the Trustee's Request for Documents from the Hilds.**

13. The Hilds argue the 2004 examination should not proceed at this time because Mr. Hild is subject to a pending criminal Indictment in the Southern District of New York and because

certain assets of the Hilds are subject to a post-Indictment restraining order in favor of the United States government. The Hilds' arguments are factually and legal wrong.

14. Cognizant of Mr. Hild's circumstances, the Trustee targeted his requests to documents that are necessary to satisfy his duty to maximize the overall assets of the estate. When the Hilds' counsel suggested that a production of documents could impact Mr. Hild's criminal defense, the Trustee's counsel engaged with the Hilds' counsel in an effort to determine if any particular requests would, in fact, be so burdensome that they would impact Mr. Hild's defense.[3] The Hilds' counsel did not identify any such request, nor did he offer for the Hilds to produce a subset of the documents sought. Rather, he simply asked for the Trustee to agree that the Hilds could delay the production documents until after Mr. Hild's criminal prosecution.[4]

15. Importantly, the Trustee's investigation occurs against the backdrop of a two-year statute of limitations that applies both to potential claims against the Hilds and against known and unknown third parties. The time has come for the Hilds to produce the documents necessary for the Trustee's investigation without further delay.

16. A request to stay a 2004 examination pending the outcome of a criminal proceeding "rests solely in the court's discretion, is granted in very limited circumstances, and with great reluctance." *In re MMH Auto. Grp., LLC*, 346 B.R. 229, 231 (Bankr. S.D. Fla. 2006) (ordering a corporation to comply with the chapter 7 trustee's 2004 examination even though its principal and designated representative was the subject of pending criminal proceedings); *see In re ICS Cybernetics, Inc.*, 107 B.R. 821, 829 (Bankr. N.D.N.Y. 1989) (directing the debtor's former

---

[3] The Trustee remains willing to engage with the Hilds to ease any burden on Mr. Hild by allowing him to produce documents on a rolling basis.
[4] The Hilds have not explained how Mr. Hild's criminal prosecution would impact the production of Ms. Hild or the affiliated entities.

5

president to respond to a 2004 examination questions and requests for documents regarding the debtor's business and his transactions with the debtor even though there was a pending criminal investigation into the debtor's bankruptcy case); *see also In re Lee*, No. 17-10118-JDL, 2017 WL 1157097, at *1 (Bankr. W.D. Okla. Mar. 27, 2017) (ordering a debtor to produce documents and attend a 2004 examination even though the debtor was subject to a pending criminal proceeding and rejecting a blanket assertion of Fifth Amendment privilege).

17. The Hilds have shown no basis to further delay the production of documents sought by the Trustee. Contrary to the Hilds' assertions, the Trustee's investigation is neither subordinate to the criminal case nor is it limited to the assets subject to the government's restraining order. The Trustee does not merely seek to trace, avoid and recover the "same $21 million" in transfers to Mr. Hild that are at issue in the criminal proceedings. Moreover, in the context of a certain interlocutory sale of assets by the Hilds accomplished in December 2019 with the consent of the United States, certain Hild owned real property was sold to third parties.

18. The Trustee's investigation is both broader and deeper than the criminal case and any potential future forfeiture proceedings.

19. Notably, the Trustee provided a copy of the Motion to the United States Attorney's Office handling Mr. Hild's criminal case and they did not interpose an objection to the Motion nor have they sought to stay this matter.

20. The Hilds also argue that, because a subset of their assets may be part of a forfeiture proceeding, the Trustee cannot pursue those same assets. The Hilds are wrong. It does not follow that, merely because the government has initiated a forfeiture proceeding against certain Hild assets, the estate has no claim to such assets and the Trustee has no right to investigate. On the contrary, federal forfeiture law recognizes a number of exceptions that may be relevant here. For

example, "the large majority of courts" to have considered the issue have held "that a constructive trust can render a forfeiture order invalid" thereby rendering the property not subject to forfeiture. *U.S. v. Shefton*, 548 F.3d 1360, 1365 (11th Cir. 2008) (collecting cases). This is particularly appropriate where, as here, the property potentially subject to forfeiture was allegedly obtained through intentional misconduct. *See id.*; *U.S. v. $4,224,958.57*, 392 F.3d 1002, 1004 (9th Cir. 2004) ("money fraudulently collected by [defendant] was impressed with a constructive trust. The United States, acquiring this property by alleging [defendant's] fraud, acquired it with the same trust imposed."). Thus, by way of example, the government's interest in any forfeited assets would be <u>subordinate</u> to any constructive trust in favor of the estate, not the other way around.

21.     Further, the Trustee may be able to assert claims in connection with property and entities that may not be subject to the government's forfeiture power. Indeed, the civil assertion of claims by a fiduciary like the Trustee often complements the government's efforts to accomplish restitution for victims.

22.     Even if certain assets of Hilds are subject to forfeiture, the very existence of a forfeiture proceeding highlights the Trustee's pressing need for the documents requested in the Motion. There is a substantial, if not complete, alignment of identity between the victims of Mr. Hild's alleged wrongdoing and the largest unsecured creditors of the Live Well estate. As a matter of equity, the proceeds of any forfeited assets should be distributed ratably to these victim/creditors. The criminal forfeiture statue cited in the Objection, 21 U.S.C. § 853, contemplates disposition of seized assets by the "Attorney General" "by sale or other commercially feasible means." *See* 21 U.S.C. §853(h). However, the forfeiture statute does not provide for disposition in accordance with absolute priority or the effectuation of other bankruptcy policy goals. The collective remedy

7

of a chapter 7 case will ameliorate what otherwise could be a race to the courthouse for the proceeds of forfeited assets.

23. The Trustee, as the representative for the estate and all creditors, is uniquely positioned to assert, in any forfeiture proceeding or in negotiations with the government, a collective claim on behalf of the estate and creditors. The Trustee is cooperating with the United States government and has had discussions with them regarding the potential for a collaborative process to gather assets, liquidate them in an orderly manner, and distribute the proceeds pro rata to victim/creditors. Similar agreements have been entered into between bankruptcy trustees and the United States government in other cases. *See*, *e.g.*, *U.S. v. Thomas Joseph Petters*, Civ. No. 08-cv-5348 (ADM/JSM) (D. Minn. Aug. 18, 2010, D.I. 1351); *U.S. v. Marc Dreier*, 09-cr-85 (JSR) (S.D.N.Y. Dec. 23, 2009, D.I. 98).

24. The Hilds argue compliance with a 2004 examination would distract from Mr. Hild's criminal case. But any potential burden on the Hilds is greatly outweighed by the Trustee's need for the requested documents to further his investigation.

25. If Mr. Hild is successful in his criminal trial, the assets currently subject to the restraining order will not be forfeited. But the Hilds' potential civil liability to the estate will remain and the Trustee's investigation will need to continue. Granting the Motion now will further that investigation.

26. On the other hand, if Mr. Hild is convicted, it will be much more difficult to identify and locate documents the Trustee needs, both for his investigation and to assert a claim on behalf of the estate, in any forfeiture proceeding. In their Objection, the Hilds assert that Mr. Hild "would very likely be the holder of most, and possibly all, of the information the Trustee would want . . . ." Objection ¶ 37. Setting aside for now the question of why Mr. Hild would have most or all of the

documents belonging to Mrs. Hild or the Hild Entities, the fact remains that waiting for the conclusion of the criminal proceeding will materially prejudice the Trustee's investigation and any potential estate claims, not just against the Hilds but against third parties as well.

27. The benefits of a 2004 examination of the Hilds are readily apparent. The Trustee's investigation already has revealed the existence of numerous potential targets and avenues for investigation beyond either the criminal case or the restrained assets. Among other things, as noted above, the Trustee has identified more than 10 entities related to Mr. Hild and Mrs. Hild that are <u>not</u> part of the criminal case. The Trustee has identified numerous properties related to the Hilds that are <u>not</u> currently subject to the government's restraining order. Notwithstanding the restraining order, some of those properties have already been sold, with no opportunity for the Trustee to investigate. Certain of these properties were sold on very short notice. The purported justification was that a secured creditor with a lien on the properties had threatened to foreclose. The Trustee quickly determined that many of the properties proposed to be sold were <u>not</u> subject to any lien of record of such creditor, thereby discrediting the basis for the rushed sale process put forward by the Hilds.

28. While there inevitably will be some overlap between the Trustee's investigation and the government's criminal proceedings, the Trustee's investigation will not be hamstrung by the separate criminal case involving Mr. Hild. This is hardly the first time the Trustee and fiduciaries like him have had to balance resources and interests in light of a pending criminal case against certain stakeholders germane to a chapter 7 liquidation.

29. Further, neither Mrs. Hild nor any of the Hild Entities are defendants in the criminal case so there can be no basis to delay a fulsome examination of them. Moreover, the Trustee's requests for documents are far broader than the criminal case and touch on issues beyond the assets

that may be subject to forfeiture. Among other things, the Trustee seeks from the Hilds documents and information relating to (i) any money or property transferred by Live Well to the Hilds; (ii) all businesses and business activities of the Hilds; (iii) all properties sold by the Hilds; (iv) transfers made by Live Well to professionals employed by the Hilds, as well as information relating to Live Well and its activities.

30. All of this demonstrates why the Trustee needs the documents sought from the Hilds and why the Motion should be granted now.

### C.     The Hilds' Other Objections Should Be Overruled.

31. The Hilds' remaining objections to the Motion have little, if any, real merit. The Hilds argue a 2004 examination implicates Fifth Amendment rights, Sixth Amendment rights, and spousal privilege. That is false. The Trustee seeks documents, not sworn testimony, which makes the Fifth Amendment and spousal privilege irrelevant.[5] And, Mr. Hild has identified no facts to support his absurd claim that the production of documents here will unduly burden his criminal defense, so much that it will render his criminal defense ineffective. Many of the documents have almost certainly been collected for production in other proceedings. And the Hilds have separate counsel for the civil matters who can assist them with responding to the 2004 examination, while Hild's criminal counsel continues to represent Mr. Hild in the criminal matters. Thus, the Hilds have failed to show any basis for this Court to stay this matter under the Sixth Amendment.

32. Moreover, there is simply no basis for the Court to exercise its discretion to stay this matter pending the criminal prosecution. The Trustee has not commenced an adversary proceeding or other adversary litigation that might burden the Hilds with substantial motion

---

[5] In the Motion the Trustee seeks documents not only from Mr. and Mrs. Hild individually but also from the so-called "Hild Entities." Corporate entities like the Hild Entities do not have a Fifth Amendment right against self-incrimination. *See, e.g., Brawell v. U.S.*, 487 U.S. 99, 105 (1988).

123387516

practice and Court hearings. Rather, the Trustee has merely asked the Hilds to produce documents so it can satisfy its fiduciary duty to maximize assets for the estates. The "pending proceeding" rule is thus not applicable. *See In re Washington Mut., Inc.*, 408 B.R. 45, 54 (Bankr. D. Del. 2009) (observing that "[o]ne of the primary purposes of a Rule 2004 examination is as a pre-litigation device.").

33. Further, even though the Trustee has access to certain documents and information of the Debtor, the Trustee is entitled to examine additional documents to determine the scope of potentially viable claims. *See Millennium Lab*, 562 B.R. at 627–28.

34. Finally, the Hilds' unsubstantiated allegations about an improper motive behind the Motion are patently false and are unworthy of consideration by the Court. This is just a desperate attempt to avoid complying with their obligations under the Bankruptcy Code and Bankruptcy Rules. Far from a "fool's errand," the 2004 examination of the Hilds requested in the Motion is central to the Trustee's investigation and to the efficient administration of this case. The Motion should be granted in full.

### D. Reservation of Rights.

35. The Trustee reserves the right to supplement this reply at or prior to the hearing on the Motion. The Trustee also reserves the right apply to the Court to seek additional discovery in connection with these matters.

123387516

WHEREFORE the Trustee respectfully requests that the Court grant the relief requested in the Motion, enter the proposed order attached to the Motion authorizing and directing a Bankruptcy Rule 2004 examination of Michael C. Hild, Laura D. Hild, and the Hild Entities as set forth in the Motion, and grant such other and further relief as it deems just and proper.

Dated: June 6, 2020
Wilmington, Delaware

**BLANK ROME LLP**

*/s/ Stanley B. Tarr*
Regina Stango Kelbon (DE No. 5444)
Stanley B. Tarr (DE No. 5535)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
Email: Kelbon@BlankRome.com
Tarr@BlankRome.com

-and-

Michael B. Schaedle
Michael D. Silberfarb
One Logan Square
130 North 18th Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555
Email: Schaedle@BlankRome.com
MSilberfarb@BlankRome.com

*Co-Counsel to Chapter 7 Trustee*

123387516