## Exhibit 1

## Agreement

## LITIGATION SUPPORT AND ALIGNMENT AGREEMENT

**THIS LITIGATION SUPPORT AND ALIGNMENT AGREEMENT** (this "Agreement") is made as of August 10, 2020 by and between (i) David W. Carickhoff, Chapter 7 Trustee (the "Trustee") of Live Well Financial, Inc. ("Live Well") and its chapter 7 estate (the "Estate"), and (ii) Mirae Asset Securities (USA) Inc. ("Mirae") (collectively, the "Parties").

### RECITALS

**WHEREAS**, on June 10, 2019 (the "Commencement Date"), each of Mirae, Flagstar Bank FSB ("Flagstar"), and Industrial and Commercial Bank of China Financial Services ("ICBC" and together with Mirae and Flagstar, the "Eligible Parties") filed an involuntary bankruptcy petition against Live Well in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS,** on July 1, 2019, the Bankruptcy Court entered the Order for Relief in an Involuntary Case against Live Well, and, on the same day, the Trustee was appointed as chapter 7 trustee of the Estate pursuant to section 701(a) of the Bankruptcy Code by the Office of the United States Trustee. The meeting of creditors in Live Well's chapter 7 case has been finally concluded;

**WHEREAS,** following his appointment, the Trustee has engaged in a preliminary investigation (the "Investigation") of the Estate and its assets, including, certain causes of action against various entities under chapter 5 of the Bankruptcy Code and otherwise applicable law. In so doing, the Trustee has consulted with each of Mirae, Flagstar and ICBC;

**WHEREAS**, in connection with the Investigation, without limitation, the Trustee has identified possibly colorable claims and causes of action for the benefit of all creditors of Live Well, including Mirae, Flagstar and ICBC (the "Estate Aligned Claims") against the following entities: (i) Interactive Data Corporation, Intercontinental Exchange, and Interactive Data Pricing and Reference Data, LLC (collectively, "ICE"); (ii) certain professional firms employed by Live Well prior to the Commencement Date; (iii) certain preferred equity interest holders and their principals, including but not limited to Brett J. Rome, North Hill Ventures II, LP, James P. Karides, LWFVEST, LLC, Five Elms Coinvest, L.P., Five Elms Equity Fund I, L.P., Five Elms Haakon, L.P., Gantcher Family Limited Partnership, James Brown, and Eric Legoff (the Trustee will consult with Mirae in connection with the identification of possible defendants in respect of the claims described in this subparagraph (iii)); (iv) certain entities that engaged in finance activities in respect of certain GNMA "interest only" bonds ("GNMA Bonds") owned by Live Well, the claims of these entities having been paid in an amount such that their recovery substantially exceeded the recoveries of similarly situated Live Well unsecured creditors, including, without limitation, Mirae, prior to the Commencement Date; and (v) as to the foregoing entities identified by reference or otherwise in the foregoing subparagraphs (i)–(iv), their respective current or former officers, directors, managers, members, partners, employees, agents, assigns, insiders, successors, subsidiaries, parents or affiliates;

**WHEREAS**, Mirae may have possibly colorable claims against ICE which are independent of and in addition to the Estate Aligned Claims (the "Mirae Aligned Claims" and collectively with the Estate Aligned Claims, the "Aligned Claims") and has asserted a

$22,964,797.19 unsecured, non-priority claim against the Estate in connection with that certain master repurchase agreement to which it was a party with Live Well;

**WHEREAS**, each of Mirae and the Trustee have agreed that it is reasonable, value-maximizing and efficient for each of Mirae and the Estate to coordinate litigation efforts against ICE and to agree to the joint representation of each of Mirae and the Estate by Reid Collins & Tsai, LLP ("Special Litigation Counsel") for such purposes, subject to Bankruptcy Court approval of this Agreement and of said retention. The Trustee will likewise employ Special Litigation Counsel in respect of all other Aligned Claims and such other claims and causes of action as he may assign such Special Litigation Counsel under the terms of such counsel's retention agreement;

**WHEREAS,** Mirae has agreed that distributions in respect of Aligned Claims should be made by the Trustee under this Agreement.

**NOW THEREFORE**, for good and valuable consideration, it is hereby stipulated, consented to and agreed by and among the Parties as follows:

1.   Effectiveness.  This Agreement shall be effective immediately upon the date on which the Bankruptcy Court approves this Agreement by an unstayed order entered on the docket of the Live Well chapter 7 case (the "Agreement Effective Date").

2.   Aligned Claims.  Each Estate Aligned Claim and each Mirae Aligned Claim shall remain the respective property of such Party and shall be asserted by such Party in any civil action.  Neither the Estate Aligned Claims nor the Mirae Aligned Claims shall be transferred, assigned, sold, or encumbered without the prior written consent of the Parties; provided, however, for the avoidance of doubt, (i) the Mirae Aligned Claims shall not, under any circumstances, be transferred, assigned, or sold to the Trustee or the Estate, (ii) the Mirae Aligned Claims may be transferred, assigned or sold without the prior written consent of the Trustee in connection with the sale or transfer of all or a substantial portion of the business of Mirae (regardless of the legal form), provided, however that if Mirae Aligned Claims are so transferred, assigned or sold they shall remain subject to this Agreement unless this Agreement is terminated in accordance with section 9 hereof; (iii) the Trustee reserves the right to abandon Estate Aligned Claims consistent with his fiduciary duty to the Estate, but only upon further order of the Bankruptcy Court; and (iv) Mirae reserves the right to terminate this Agreement in accordance with section 9 hereof.  The gross proceeds from the Aligned Claims (whether obtained through litigation, settlement or otherwise) during the term of this Agreement, shall be referred to, in the aggregate, as the "Litigation Proceeds."

3.   Special Litigation Counsel.  Special Litigation Counsel shall represent each of Mirae and the Trustee in respect of the Aligned Claims pursuant to the engagement letters attached hereto as Exhibit I (joint representation) and Exhibit II (Trustee representation).  The Trustee may retain Special Litigation Counsel to represent the Estate in connection with causes of action other than Aligned Claims; provided, however, that Special Litigation Counsel shall not represent the Estate in respect of matters that may be adverse to the interests of Mirae.  The Trustee's employment of Special Litigation Counsel shall be subject to prior approval of the Bankruptcy Court after notice and the submission of a retention application by the Trustee consistent with Exhibits I and II and applicable law and rules.  Special Litigation Counsel shall provide the Parties with periodic, written status reports in respect of Aligned Claims and shall convene a monthly teleconference to brief the Parties on the status of the Aligned Claims, including, without

limitation, their investigation process in respect of such Claims and related matters.  The Trustee may require Special Litigation Counsel to make further reports to the Parties on the status of Aligned Claims.

4.    <u>Distributions of Litigation Proceeds</u>.  The Trustee is the Distribution Agent in respect of Litigation Proceeds.  Subject to Mirae's rights of consent pursuant to section 6(ix), the Trustee shall determine when distributions can be made in respect of Litigation Proceeds, including, without limitation, interim distributions in respect of the Subject Trustee Commission and the Distribution Agent Fee (each as set forth below) and the items set forth in sub-sections (i), (ii), and (iv)(x) of this section.  All distributions under this Agreement, interim or otherwise, shall be subject to (a) the Trustee's commission for Estate disbursements, calculated as set forth in Bankruptcy Code section 326 as to all Litigation Proceeds derived from Estate Aligned Claims (the "<u>Subject Trustee Commission</u>"), and (b) the Trustee's Distribution Agent fee, calculated as set forth in Bankruptcy Code section 326 as to all Litigation Proceeds derived from Mirae Aligned Claims (the "<u>Distribution Agent Fee</u>" and collectively with the Subject Trustee Commission, the "<u>Trustee Fees</u>").  Once the Trustee Fees have been deducted from Litigation Proceeds, then the Trustee shall make distributions in the following order:  (i) first, (x) to Mirae as repayment of any amounts advanced by Mirae as expenses in connection with the litigation of all Aligned Claims (y) to the Trustee on behalf of the Estate, in respect of any Estate funded expense retainer and amounts advanced by the Trustee as expenses in connection with the Litigation of all Aligned Claims, and (z) to all Special Litigation Counsel costs and expenses relating to Aligned Claims (subject to any required allowance in respect of Estate Aligned Claims by order of the Bankruptcy Court) (collectively sub-sections (x), (y) and (z) are the "<u>Litigation Expenses</u>"); (ii) second, to the amount of Special Litigation Counsel's Bankruptcy Court approved contingency fee, which for the avoidance of doubt, shall be the percentage agreed by the Parties with Special Litigation Counsel applied to the Litigation Proceeds; (iii) third, to any fees and expenses of the Trustee's other professionals, but only to the extent that such fees and expenses (x) arise directly from investigation, prosecution and/or disposition of the Aligned Claims incurred after the Agreement Effective Date and subject to an agreed budget, and (y) are approved and allowed by order of the Bankruptcy Court  (collectively with the Trustee Fees and the fees set out in sub-sections (i), (ii) and (iii), the "<u>Litigation Fees</u>"); and (iv) fourth, (x) fifty percent (50%) of the Litigation Proceeds minus the Litigation Fees to Mirae, and (y) fifty percent (50%) of the Litigation Proceeds minus the Litigation Fees to the Estate, which Litigation Proceeds under this sub-section (iv)(y) shall be distributed by the Trustee pursuant to applicable bankruptcy law, rules and procedures, including, without limitation, under Bankruptcy Code sections 503, 507 and 726 (for the avoidance of doubt, Mirae shall be entitled to receive its respective *pro rata* share of this sub-section (iv)(y) distribution on account of its allowed claims; provided, however, that its allowed claims will be adjusted for any receipt of proceeds of Estate Aligned Claims by Mirae pursuant to sub-section (iv)(x) of this section).  The Trustee shall be subject to the same protection under applicable law in making distributions hereunder as he is entitled to under applicable bankruptcy law and his liability for any error, omission or negligence (but not the Trustee's gross negligence or willful misconduct) shall be subject to Estate indemnity and limited to the value of Estate assets.

5.    <u>Other Trustee Duties and Powers</u>.  The Trustee will be authorized, in Trustee's sole discretion, without prior approval from (but with reasonable prior notice to) Mirae, in Trustee's capacity as Distribution Agent hereunder, to approve ministerial matters in respect of the investigation or prosecution of Aligned Claims, including, without limitation:  (i) requests for extensions of time and deadlines; (ii) the filing or defense of any non-dispositive motions, including, without limitation, in respect of investigation or discovery matters; and (iii) the

incurrence of ordinary course investigation and litigation professional expenses and costs payable by the Estate, up to $10,000 per instance (subject to the budget governed by and under sub-sections 6(iii)–(iv) of this Agreement) on behalf of the Parties in respect of the Aligned Claims. For the avoidance of doubt, Mirae shall not be responsible for ordinary course investigation and litigation professional expenses unless explicitly consented to and agreed by Mirae, prior to any such expenditure. The Trustee shall convene the Parties to discuss a Material Decision (defined below) and may prepare an agenda for such discussion by electronic mail as a notice hereunder.  Such discussions will take place by teleconference or as the Trustee may otherwise specify.  Nothing contained in this Agreement shall condition, impair, or delegate the Trustee's fiduciary duty to the Estate and Trustee may act in a manner freely consistent with that duty.  This Agreement is consistent with the Trustee's fiduciary duty to the Estate.

6.  <u>Material Decisions</u>.  Any decision that is not a ministerial matter under section 5 of this Agreement and that materially relates to or impacts any Aligned Claim is a "<u>Material Decision</u>" and Material Decisions include, without limitation:  (i) adjustments to the compensation or the termination of Special Litigation Counsel in respect of its service to the Parties relating to the Aligned Claims; (ii) the commencement of any Aligned Claim; (iii) the establishment of a budget by Special Litigation Counsel and other Trustee professionals in respect of the investigation, prosecution or appeal of any Aligned Claim; (iv) the incurrence of investigation and litigation professional expenses and costs (a) in excess of $10,000 per instance, or (b) in excess of the budget described in sub-section (iii) of this section, on behalf of the Parties in respect of the Aligned Claims; (v) the filing of any dispositive motion in respect of Aligned Claims; (vi) the filing of any appeal in respect of Aligned Claims; (vii) the settlement or consensual resolution of any Aligned Claim; (viii) the abandonment of any Aligned Claim; (ix) the distribution of Litigation Proceeds pursuant to section 4 hereof, including, without limitation, on an interim basis, provided however that the Trustee retains full discretion and authority to make distributions of the Estate's portion of the Litigation Proceeds pursuant to section 4(iv)(y) of this Agreement in accordance with applicable law and rules; (x) matters relating to any waiver or impairment of joint litigation or attorney client privilege or the application of attorney work product doctrine; and (xi) the amendment of this Agreement to include additional Eligible Parties.  The Trustee shall convene the Parties by electronic mail or teleconference in advance of any Material Decision.  Any Material Decision requires the prior, written consent (written consent can be evidenced by electronic mail) of both Parties on notice to each other hereunder, which consent may not be unreasonably withheld.  In the event of a deadlock on any Material Decision or as may be required by the Trustee's fiduciary duty to the Estate, either the Trustee or Mirae may seek relief from the Bankruptcy Court to authorize a Material Decision and to give direction to Special Litigation Counsel in connection therewith; <u>provided</u>, <u>however</u>, that if any Party determines that a deadlock has arisen regarding any Material Decision, such Party must provide the other Party 15 days' prior written notice before seeking relief from the Bankruptcy Court as authorized in this section 6.

7.  <u>Cooperation; Privilege</u>.  The Parties agree to cooperate, in a commercially reasonable manner, in respect of the Aligned Claims, in each case including but not limited to by responding to discovery requests and making available pertinent witnesses to assist with fact investigation, depositions, and/or hearing testimony. All communications of any sort between the Parties, the Special Litigation Counsel, and their employees, representatives and professionals, are subject to the joint litigation privilege established between the Parties under that certain Joint Privilege and Information Sharing Agreement, dated as of September 25, 2019 as well as attorney client privilege and attorney work product doctrine.

8.  <u>Binding on Successors</u>.  This Agreement and the rights and obligations created hereby shall be binding upon and shall inure to the benefit of the successors, transferees, and assigns of each of the Parties hereto.  Neither this Agreement nor any of the rights or obligations hereunder may be assigned or delegated by any Party hereto, without the prior written consent of the other Party hereto, other than in connection with the sale or transfer of all or a substantial portion of the business of Mirae (regardless of the legal form) as set forth in section 2 of this Agreement.

9.  <u>Termination</u>.  The Parties may terminate this Agreement solely under the following circumstances:  (a) Mirae, in its reasonable discretion, may terminate this Agreement upon 30 days prior written notice to the Trustee, upon the occurrence of any of the following: (i) the engagement of Reid Collins & Tsai, LLP as Special Litigation Counsel is terminated and the Parties have not been able to agree upon the selection of substitute counsel within 30 days thereafter following good faith negotiations, (ii) Mirae has incurred funded costs and expenses to Special Litigation Counsel authorized pursuant to the budget governed by and under sub-sections 6(iii)–(iv) of this Agreement in connection with the prosecution of the Aligned Claims in excess of $100,000, or (iii) each of the Mirae Aligned Claims are settled in accordance with section 6(vii) of this Agreement and any distributions under section 4 of the Litigation Proceeds of the settlement of such claims are completed in accordance with the terms of this Agreement; and (b) the Trustee, in the Trustee's sole discretion, may terminate this Agreement within 30 days following the closing of any transfer, assignment, or sale of the Mirae Aligned Claims in accordance with section 2(ii) of this Agreement, without any further notice by the Trustee to Mirae, its successor(s), transferee(s), or assign(s).  Upon either Party's exercise of its rights under this section 9, the Parties shall consult in good faith to allocate among the Parties any costs and expenses incurred as of the date of termination, and with respect to termination under subsections 9(a)(i) and (ii), to re-assess any Litigation Proceeds paid to Mirae pursuant to section 4(iv) of this Agreement prior to termination.  If the Parties are not able to agree on an allocation or a reassessment of Litigation Proceeds as provided for in this section 9, the Trustee or Mirae, upon notice to the other party, shall be entitled to seek relief from the Bankruptcy Court to approve cost and expense allocation as well as matters relating to distribution of Litigation Proceeds consistent with this Agreement and applicable law and rules or as may be required by equity.

10.  <u>Amendments; Entire Agreement</u>.  This Agreement shall not be modified, altered, or amended without the prior written consent of each of the Parties hereto.  This Agreement constitutes the entire agreement of the Parties concerning the subject matter hereof, and supersedes any and all prior or contemporaneous agreements among the Parties concerning such subject matter.  The Parties acknowledge that this Agreement is not being executed in reliance on any oral or written agreement, promise or representation not contained herein.

11.  <u>Reliance on Legal Counsel</u>.  Each Party acknowledges that it is a sophisticated entity, that it has been represented in the negotiations for and in the execution of this Agreement by counsel of its own choice, and that it has read this Agreement and is fully aware of its contents and legal effect.

12.  <u>Representation of Authority</u>.  Subject to Bankruptcy Court approval of this Agreement, each Party referenced herein has the authority to sign this Agreement, by and through its designated representative(s); and no Party has sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations or causes of action referred to in this Agreement. The Parties each expressly represent and warrant that the consent, approval, or

5

authorization of no other person, entity or governmental or regulatory authority, other than the Bankruptcy Court, is required to approve the terms of this Agreement.

13. Jurisdiction; Governing Law.  In the event of a dispute concerning this Agreement, including without limitation any action to enforce the terms hereof, the Parties agree and consent to the exclusive jurisdiction of the Bankruptcy Court.  This Agreement and all claims and disputes arising out of or in connection with this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of Delaware.

14. Counterparts.  This Agreement may be executed in counterparts and by electronic or facsimile signatures, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement to be effective, provided each and every Party has executed and delivered, or caused to be delivered, to each other Party at least one counterpart of this Agreement signed by that Party.

15. Drafting.  The Parties have participated in and jointly consented to the drafting of this Agreement, and any claimed ambiguity shall not be construed for or against either of the Parties on account of such drafting.

16. Specific Performance.  The Parties hereto agree that irreparable damage would occur and that the Parties hereto would not have any adequate remedy at law in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached.  It is accordingly agreed that each Party hereto shall be entitled to seek an injunction or injunctions to prevent breaches or threatened breaches of this Agreement and to seek to enforce specifically the terms and provisions of this Agreement (and, to the fullest extent permitted by law, each party hereto hereby waives any requirement for the securing or posting of any bond in connection with such remedy), this being in addition to any other remedy to each such Party is entitled at law or in equity.

17. Notice.  All notices or other communications specified under this Agreement to be given in writing shall be sent by electronic mail in pdf (where specified expressly in this Agreement) or otherwise by first class mail, hand delivery or overnight courier (with a copy sent by electronic mail) to the other Party or Parties via their counsel at the addresses stated in the signature pages below or such other addressees as a Party may designate for itself in writing.

*[Signature Pages Follow]*

**IN WITNESS WHEREOF**, the undersigned have caused this Agreement to be duly executed, effective as of the date first written above.

LIVE WELL FINANCIAL, INC.

Name: David W. Carickhoff

By: _____
        Chapter 7 Trustee

c/o ARCHER & GREINER, PC
300 Delaware Avenue
Suite 1100
Wilmington, DE 19801
Telephone:  (302) 356-6621

BLANK ROME LLP
Michael B. Schaedle, Esq.
One Logan Square
130 North 18th Street
Philadelphia, PA 10103
Telephone: (215) 569-5762
E-mail: schaedle@blankrome.com

MIRAE ASSET SECURITIES (USA) INC.

Name: Jae Ryu

By: _____
        Chief Executive Officer

810 7th Avenue
37th Floor
New York, NY 10019
Telephone:  (646) 968-2050

STROOCK & STROOCK & LAVAN LLP
Akshay Belani
Claude G. Szyfer
180 Maiden Lane
New York, NY 10038
Telephone:  (212) 806-5400
E-mail: abelani@stroock.com
             cszyfer@stroock.com

*[Signature Page to Litigation Support and Alignment Agreement]*

**IN WITNESS WHEREOF**, the undersigned have caused this Agreement to be duly executed, effective as of the date first written above.

LIVE WELL FINANCIAL, INC.                    MIRAE ASSET SECURITIES (USA) INC.

Name: David W. Carickhoff                     Name: Jae Ryu

By: _____           By: _____
     Chapter 7 Trustee                           Chief Executive Officer

c/o ARCHER & GREINER, PC                       810 7th Avenue
300 Delaware Avenue                            37th Floor
Suite 1100                                     New York, NY 10019
Wilmington, DE 19801                           Telephone: (646) 968-2050
Telephone: (302) 356-6621

BLANK ROME LLP                                 STROOCK & STROOCK & LAVAN LLP
Michael B. Schaedle, Esq.                      Akshay Belani
One Logan Square                               Claude G. Szyfer
130 North 18th Street                          180 Maiden Lane
Philadelphia, PA 10103                         New York, NY 10038
Telephone: (215) 569-5762                      Telephone: (212) 806-5400
E-mail: schaedle@blankrome.com                 E-mail: abelani@stroock.com
                                                     cszyfer@stroock.com

*[Signature Page to Litigation Support and Alignment Agreement]*

Exhibit I

Special Litigation Counsel Joint Engagement Letter

REID COLLINS & TSAI LLP
1301 S. Capital of Texas Hwy
Suite C300
Austin, Texas 78746
Main: 512.647.6100
Fax: 512.647.6129
www.reidcollins.com

Gregory S. Schwegmann | Partner
Direct: 512.647.6108
gschwegmann@reidcollins.com

# reid | collins

August 10, 2020

<u>*Via Email*</u>

David W. Carickhoff
c/o Archer & Greiner, PC
300 Delaware Avenue
Suite 1100
Wilmington, DE 19801

Jae Ryu
Mirae Asset Securities (USA) Inc.
810 7th Avenue
37th Floor
New York, NY 10019

> **CONFIDENTIAL AND SUBJECT TO
> ATTORNEY-CLIENT PRIVILEGE**

      **Re:**    **Claims in connection with *In re Live Well Financial, Inc.*,
          Case No. 19-11317-LSS (Bankr. D. Del.)**

Dear David and Jae:

      Thank you for engaging Reid Collins & Tsai LLP ("**Reid Collins**," the "**Firm**," "**Counsel**" or "**we**") to represent David W. Carickhoff, in his capacity as the Chapter 7 Trustee (the "**Trustee**") of the Live Well Financial, Inc. ("**Live Well**") estate, and Mirae Asset Securities (USA) Inc. ("**Mirae**" and collectively with the Trustee, "**Clients**" or "**you**"), in connection with your respective claims against Interactive Data Corporation/Intercontinental Exchange and potentially others to be determined and agreed upon in writing between Reid Collins and Clients (collectively, the "**Targets**"). We appreciate this opportunity and look forward to working with you. Consistent with the requirements of the State Bar of Texas and other applicable ethical and disciplinary rules, it is our practice to specify in writing our engagement arrangements with our clients, and that is the purpose of this Letter of Engagement and the *Additional Terms of Engagement* that are enclosed. If you have any questions about this Letter of Engagement, the *Additional Terms of Engagement*, or any aspect of this engagement of our firm or our

relationship, please contact me immediately.   As it relates to the Trustee and the Live Well estate, this Letter of Engagement and the Additional Terms of Engagement are subject to approval by the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") as more fully set forth below.  Further, the Trustee and Mirae have entered into a certain Litigation Support and Alignment Agreement (the "**Litigation Support Agreement**"), which contemplates this joint representation, and the Trustee has filed a motion with the Bankruptcy Court seeking entry of an *Order Approving Motion of Chapter 7 Trustee for Approval of Litigation Support and Alignment Agreement by and Between David W. Carickhoff, in His Capacity as Chapter 7 Trustee for the Estate of Live Well Financial, Inc., and Mirae Asset Securities (USA) Inc., Pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure* (the "**LSA Order**").  This joint representation also is conditioned upon the Bankruptcy Court's entry of the LSA Order, which must remain unstayed.

We have agreed that Reid Collins shall provide legal counsel and representation to each of you under the following terms:

**A.     Nature and Scope of Representation.**   Reid Collins shall serve as special litigation counsel to the Clients in investigating and (if appropriate) pursuing the claims and causes of action belonging to the Clients against the Targets (the "**Claims**").  The scope of this representation shall not include any other matters unless the Trustee and/or Mirae, on the one hand, and Reid Collins, on the other, agree to expand the representation to include such matters pursuant to a written amendment to this Letter of Engagement executed by all of the parties hereto, which amendment as to the Trustee and the Live Well estate shall be subject to notice  or further approval by the Bankruptcy Court.

Eric Madden and I shall serve as the lead Reid Collins attorneys responsible for this matter, and I will be responsible for the day-to-day management of this matter.  Other Reid Collins attorneys, paralegals, and legal assistants may assist in this matter from time to time to contribute particular expertise or efficiencies.

**B.     Reid Collins's Obligations.**   Reid Collins agrees to comply with all obligations set out herein, including, but not limited to, cooperating with the Clients and keeping the Clients informed of all matters pertinent to the pursuit of the Claims.  Reid Collins shall undertake those tasks that, in its judgment, are necessary to analyze and pursue the Claims to obtain a recovery for the Clients.  Beyond that, Reid Collins shall not perform any legal services on behalf of the Clients not specified in this Letter of Engagement, including, without limitation, the filing or serving of any pleading, motion, brief, demand, or other document seeking relief from any court, arbitration service, or other tribunal, without consultation and authorization from the Clients.  Reid Collins's obligations under this Letter of Engagement shall cease upon the earliest of: (1) a full and final settlement resolving each of the Claims; (2) a final ruling, judgment, or award

August 10, 2020
Page 3

resolving each of the Claims; (3) a termination of, or a withdrawal from, the representation pursuant to paragraphs H or I below.

**C.    Clients' Obligations.**  The Clients agree to comply with all obligations set out herein, including, but not limited to, keeping Reid Collins informed of all matters necessary for Reid Collins to fully represent the Clients, and promptly responding to Reid Collins's requests.  The Clients agree to reasonably cooperate with Reid Collins in the investigation and pursuit of the Claims; to appear on reasonable notice at any and all depositions and court appearances; to produce relevant documents in its possession, custody, or control; and to comply with all of Reid Collins's reasonable requests in connection with preparation and presentation of evidence related to the Claims.  The Clients further agree that they shall not insist upon presenting any claim or defense that, in the opinion of Reid Collins, is not warranted under existing law and cannot be supported by a good-faith argument for extension, modification, or reversal of existing law.  In addition, the Clients agree not to insist that Reid Collins pursue a course of conduct that is, in the opinion of Reid Collins, illegal or unreasonable, or that is prohibited under applicable rules of professional conduct.

In order to comply with discovery obligations in connection with any future litigation involving the Claims, it is necessary for the Clients to  preserve and maintain all information, whether in electronic or hard-copy form, in its possession, custody, or control related to the Claims.  To the extent that the Clients have regular practices whereby information is discarded, those practices must cease immediately with respect to information that is relevant to the Claims.  The Clients are obligated to maintain all data relevant to the Claims in any and every form and must not discard anything without first discussing the matter with Reid Collins.

**D.    Informed Consent to Joint Representation**.  Joint representations may result in economic or tactical advantages.  You should be aware, however, that joint representations also involve significant risks.  First, joint representations may result in divided or at least shared attorney-client loyalties.  It is possible that issues may arise as to which our representation of any one of the Clients may be limited by our representation of the other Clients.  This could happen if, for example, one Client's interests would be served by the representation of rights, defense, strategies, claims, or evidence whose presentation would be detrimental to the interest of the other Client – in other words, if what is in one of the Client's best interest is not in the best interest of the other Client.  This is often a significant risk of joint representation.  Clients hereby agree to consult in good faith with each other and with Reid Collins to resolve any such issues raised by the joint representation contemplated herein.  Additionally, Reid Collins shall endeavor to provide reasonable notice to Clients in the event that it can identify a potential risk contemplated under this paragraph D.

August 10, 2020
Page 4

For example, and as set forth above, the sole purpose of this representation is to maximize the aggregate net recovery on all of the Clients' Claims, without regard to the results or effects on any particular Claims of any of the Clients. At least initially, this will lead Counsel to seek a global resolution of the Claims, rather than seek opportunities for settlement of a particular Client's claims, and might continue to lead Reid Collins to adopt global settlement strategy thereafter. This also might lead Reid Collins to select a forum in which it can bring all of the Clients' Claims together, even though another forum might be more favorable as to a particular Client's claim. This further might lead Reid Collins to present a view of the facts designed to maximize overall recoveries, even though a different view of the facts might be more favorable to a particular Client's Claims. The extent to which any of these or other possible conflicts will have an adverse impact on any particular Client's interest will depend upon, among other things, the arrangement among the Clients for the sharing of the costs and recoveries from the representation.

Furthermore, in the event of a dispute between or among any of the Clients, the attorney-client privilege generally would not protect your individual communications with Reid Collins regarding this matter from discovery by the other Client. Moreover, even absent such a dispute, the representation is structured so that there should not be any expectation of confidentiality as between or among the Clients with respect to this matter. For example, if Reid Collins receives information from or about one of you that Reid Collins believes the other should have in order to make decisions regarding the representation, Reid Collins may give that information to the other(s). Likewise, Reid Collins's evaluation of each Client's Claims will be provided to and available to all of the Clients. Of course, the attorney-client privilege would remain fully intact with respect to third parties as well as other matters not covered by this Agreement. With respect to waiver of the attorney-client privilege, you agree and acknowledge that each of you may effect a waiver as to your communications; however, you cannot and will not waive the privilege with respect to joint communications or communications made to or from one or more other Clients without the consent of those Clients. If you contemplate imparting to Reid Collins any information that you want to keep secret from any of the other Clients, you should consider obtaining separate counsel at this time.

By signing this Agreement, you consent to the arrangements discussed above and agree neither to assert a conflict of interest nor to seek to disqualify Reid Collins from any representations related to this matter. Notwithstanding such agreement and consent, depending on the circumstances, you acknowledge there remains some degree of risk that Reid Collins would be disqualified from continuing to represent one or more of the Clients in the event of a dispute or conflict between or among any of them.

Despite the risks and other issues discussed above, your signature on this Agreement represents your acknowledgement that you currently do not desire to be represented by other counsel; instead, you desire that Reid Collins jointly represent you

August 10, 2020
Page 5

and the other Clients in this matter.  As attorneys, we are governed by specific rules related to our representation of clients when actual or potential conflicts of interest exist. For example, Reid Collins's representation of potentially or actually conflicting interests is governed by Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct (among other provisions).[1]

We encourage you to review these professional conduct rules and to seek independent counsel regarding the import of this consent, and we emphasize that you remain completely free to seek independent counsel at any time even if you decide to sign this Agreement and consent to these arrangements. If you have any questions concerning this consent, please discuss them with Reid Collins or independent counsel before singing and returning this agreement.

E.  **Compensation.**  In exchange for its services, Reid Collins will be paid the following contingency fee (the "**Contingency Fee**") by the Clients in accordance with section 4 of the Litigation Support Agreement:

- If any Claims are resolved prior to serving Rule 2004 discovery, Reid Collins shall receive 20% of Gross Recoveries (as defined below) obtained by the Clients in connection with the Claims; or

- If any Claims are resolved after serving Rule 2004 discovery but before filing a lawsuit, Reid Collins shall receive 30% of Gross Recoveries obtained by the Clients in connection with the Claims; or

- If any Claims are resolved after the filing of a lawsuit, Reid Collins shall receive 40% of Gross Recoveries obtained by the Clients in connection with the Claims.

---

[1] Rule 1.06 Conflict of Interest: General Rule.
. . . .
(b) In other situation and except to the extent permitted by paragraph (c), a lawyer shall not represent a person if the representation of that person:
(1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyers' firm; or
(2) reasonably appears to be or become adversely limited by the lawyers or law firms' responsibilities to another client or to a third person or by the lawyers or law firms own interest.
(c) A lawyer may represent a client in the circumstances described in (b) if:
    (1) the lawyer reasonably believes the representation of each client will not be materially affected; and
    (2) each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any.

"**Gross Recoveries**" means the fair value of all cash and/or non-cash consideration obtained by the Clients in connection with any settlement, judgment, award, or other recovery regarding the Claims.  Of course, if no Gross Recoveries are obtained in connection with the Claims, Reid Collins will not be paid a Contingency Fee.

      F.    **Costs and Expenses.**  Certain costs and expenses may be incurred in connection with the Claims, including, but not limited to, filing fees, expert witness fees and expenses, expenses related to electronically stored information, deposition costs, copying expenses, travel costs, delivery fees, and computerized research charges (collectively, "**Out-of-Pocket Expenses**").  All such Out-of-Pocket Expenses shall be reasonable and necessary. Reid Collins shall propose a budget of Out-of-Pocket Expenses for each phase of its work and reach an agreement with the Clients on such budget ("Budgeted Out-of-Pocket Expenses") in connection with this Letter of Engagement.  The budget for Out-of-Pocket Expenses, however, may change over time due to unforeseen changes in circumstances.  Any changes to the budget shall be agreed upon in advance by Reid Collins and the Clients and the Clients' agreement to such revised budget shall not be unreasonably withheld.  The Clients agree that Reid Collins is authorized to incur such Budgeted Out-of-Pocket Expenses on their behalf and the Clients shall be responsible for advancing all Budgeted Out-of-Pocket Expenses and reimbursing Reid Collins for all such Budgeted Out-of-Pocket Expenses it advances on the Clients' behalf, as applicable.  To this end, Trustee agrees to fund an expense retainer in the amount of $50,000 from proceeds of the Live Well estate, which shall be used to reimburse Reid Collins for any Budgeted Out-of-Pocket Expenses it incurs in connection with the Claims. The Clients further agree to replenish the expense retainer upon reasonable request from Reid Collins.  Whether budgeted or not (and thus payable on advance), Reid Collins shall confer with the Clients prior to incurring any major expenses such as the retention of expert witnesses.

      G.    **Fee Application; Court Award of Attorney's Fees or Costs.**  Reid Collins is authorized to apply to any court or tribunal for the maximum amount of compensation, attorney's fees, costs, pre- and post-judgment interest, and litigation expenses available by law.  Any such fees and costs recovered on behalf of the Clients will be treated as Gross Recoveries under this Letter of Engagement.  As to the Trustee's share of compensation and Out-of-Pocket Expenses hereunder, prior to any final distribution to creditors and claimants by the Trustee, Reid Collins will file a fee application (it may be part of a single final fee application filed in connection with all of Reid Collins' work for the Live Well estate) for final allowance of compensation and Out-of-Pocket Expenses hereunder with the Bankruptcy Court, which shall cover all Out-of-Pocket Expenses (including those advanced under a budget hereunder), set  forth the calculation of the Trustee's share of the compensation (as defined under the Litigation Support and Alignment Agreement, the LSA Order, and the related side letter between Mirae and the

Trustee), and contain a description of the services provided to you and the Live Well chapter 7 estate; provided, however, that such fee application shall not include detailed time records.  For the avoidance of doubt, Reid Collins is not required to keep such records in connection with this Letter of Engagement.

**H.** **Clients' Right to Terminate Reid Collins's Representation.**  The Clients may terminate Reid Collins's representation under the following terms:

(1) The Clients may terminate Reid Collins with or without cause. Whether the grounds for termination constitute cause shall be determined pursuant to applicable law.

(2) In the event that the Clients terminate Reid Collins with cause, the Reid Collins shall not be entitled to any Contingency Fee, but Reid Collins shall be entitled to immediate reimbursement of any Out-of-Pocket Expenses in accordance with the terms of paragraph F.

(3) If the Clients terminate Reid Collins without cause, and to the extent permissible under applicable law, Reid Collins's interest in the Contingency Fee shall remain intact and unaffected, or Reid Collins may elect in its discretion to receive an immediate payment for all services rendered to the Clients under the Letter of Engagement, calculated on the basis of actual work hours performed at Reid Collins's standard hourly rates.

(4) The Clients understand and agree that terminating Reid Collins may result in the necessity to retain new counsel, which could have the effect of increasing the amount of the total fee paid to all attorneys.

(5) Regardless of whether the Clients terminate Reid Collins with or without cause, Reid Collins acknowledges and agrees that the Clients shall have the right to retain new counsel to pursue the Claims, and Reid Collins shall cooperate in good faith in the transition of counsel with respect to the Claims, including but not limited to, transferring all relevant attorney work-product prepared or obtained during the course of its representation.

**I.**    **Reid Collins's Right to Withdraw from Representation.**    Reid Collins reserves the right to withdraw from further representation in relation to one or more of the Claims in any of the following circumstances:

(1)    If Reid Collins, in its reasonable discretion after conferring in good faith with you and prior to filing a lawsuit regarding the Claims, determines that one or more of the Claims lacks sufficient merit or value to justify the risk of continued pursuit (for the avoidance of doubt, Reid Collins' right to withdraw under this paragraph I(1) shall apply only to such Claim(s) that are determined to lack sufficient merit or value to justify the risk of continued pursuit hereunder).

(2)    If you insist upon presenting any claim or defense that Reid Collins reasonably determines is not warranted under existing law and cannot be supported by a good-faith argument for an extension, modification, or reversal of existing law.  An example would be if you insist upon pursuing a claim that would violate Rule 11 of the Federal Rules of Civil Procedure or a state-law equivalent.

(3)    If you insist that Reid Collins pursue a course of conduct that is illegal or unreasonable, or that is prohibited under applicable rules of professional conduct.

(4)    If you refuse to reasonably cooperate with Reid Collins or follow Reid Collins's advice on a material matter, after written notice of Reid Collins's reasonable belief concerning the material matter and the basis thereof and Reid Collins's intent to withdraw and an opportunity for the Clients to cooperate and follow Reid Collins's advice.  As used herein, a "material matter" shall mean a matter that Reid Collins reasonably believes:    (a) will materially undermine or jeopardize the potential for success of one or more of the Claims without a corresponding increase in the likelihood of success or recovery under any other Claim; (b) will cause an undue and unwarranted increase in Reid Collins's time investment in pursuing the Claims without a corresponding increase in the likelihood of success or recovery under the Claims; or (c) implicates any of the bases for Reid Collins's right to withdraw from the representation set forth in subparts 1 through 3 of this paragraph.

     (5)    If you fail to replenish the expense retainer described in paragraph F of this Letter of Engagement upon reasonable request from Reid Collins or unreasonably withhold your agreement on a revised budget of Out-of-Pocket Expenses.

     (6)    In any circumstance in which Reid Collins obtains written consent from the Clients.

If Reid Collins elects to withdraw this representation, Reid Collins shall notify the Clients in writing. In the event Reid Collins decides to withdraw from pursuit of one or more of the Claims for a reason other than a breach by the Clients of this Letter of Engagement, then Reid Collins shall not be entitled to any Contingency Fee hereunder in relation to the Claims. In the event Reid Collins elects to withdraw under the circumstances set forth in subparts 1 through 6 of this paragraph, and to the extent permissible under applicable law, Reid Collins shall be entitled to receive from Gross Recoveries, if any, (a) payment of fees for the work it performed in connection with this Letter of Engagement based upon its full hourly rates and (b) reimbursement of any Out-of-Pocket Expenses in accordance with the terms of paragraph F, subject to the rights of each Client to object to the reasonableness of any such hourly fees and/or Out-of-Pocket Expenses. In the event any dispute arises regarding such hourly fees and/or Out-of-Pocket Expenses, each of the Clients and Reid Collins shall have the right to seek to have such dispute determined by the Bankruptcy Court on reasonable notice to the other parties. Within thirty (30) days after any withdrawal by Reid Collins, Reid Collins shall provide to each of the Clients documentation reasonably acceptable to the Clients setting forth (a)(I) the names of all Reid Collins attorneys and paraprofessionals who billed time to the Claims, (II) each such individual's hourly billing rate(s), as and when in effect during the engagement, and (III) a description of the work performed by each such individual, and (b) all of Reid Collins's Out-of-Pocket Expenses. The Clients agree to sign all necessary documents to facilitate the withdrawal of Reid Collins from any pending lawsuit immediately after receiving written notification of Reid Collins's intention to withdraw pursuant to the provisions of this Letter of Engagement. The Clients understand and acknowledge that if Reid Collins withdraws, the Clients may have to retain other counsel, and that the total fees paid to all attorneys may therefore be greater than the total amount that would have been paid had Reid Collins not withdrawn.

**J.**    **<u>No Guarantees.</u>**  The Clients acknowledge that Reid Collins has made no guarantees regarding the outcome of this matter or any other aspect related to this representation, and that any and all expressions about possible outcomes are only preliminary opinions.

August 10, 2020
Page 10

---

**K.**    **Settlement Authority**. The Clients retain sole discretion with respect to any decisions relating to any settlement of any claim, including the timing, content, consideration and all other terms of such a potential settlement.

**L.**    **Bankruptcy Court Approval.**    The terms of this Letter of Engagement as it relates to the Trustee and the Live Well estate are subject to the approval of the Bankruptcy Court in the above-referenced bankruptcy case pursuant to 11 U.S.C. § 328(a).   Upon such approval, this Letter of Engagement shall be effective as of August 10, 2020, and shall be binding upon the Trustee, the debtor, the Live Well bankruptcy estate, and its creditors.

**M.**    **Severability.**    In case any one or more of the provisions in this Letter of Engagement shall be found unenforceable in any respect, the parties have agreed that such unenforceability shall not affect any other provision, and that all other provisions of this Letter of Engagement shall remain valid and enforceable.

**N.**    **Integration/Amendment.**    This Letter of Engagement constitutes the final and only agreement of the parties hereto regarding Reid Collins's representation of the Clients, and it supersedes any prior written or oral understandings or agreements between the parties regarding that subject.   This Letter of Engagement may not be modified, amended, or replaced except in a writing signed by the parties hereto, or their successors or assigns, which may be subject to notice in or approval by the Bankruptcy Court.

**O.**    **Governing Law.**    This Letter of Engagement shall be construed in accordance with the laws of the State of Texas, without regard for its conflict of laws rules. As it relates to the Trustee and the Live Well estate, this Letter of Engagement is subject to Bankruptcy Court order(s) and applicable bankruptcy law and rules.   All matters relating to the retention of Reid Collins by the Trustee hereunder and final allowance of Compensation and Out-of-Pocket Expenses shall be adjudicated before the Bankruptcy Court.

**P.**    **Determination of Fairness and Reasonableness.**    The Clients acknowledge that: (1) Reid Collins did not act as its counsel in preparing or negotiating this Letter of Engagement; (2) the Clients have made sufficient investigation and inquiry to determine that this Letter of Engagement is fair and reasonable; (3) this Letter of Engagement was the product of an arm's length negotiation between the Clients and Reid Collins; (4) the Clients have had ample opportunity to review the Letter of Engagement independently and, to the extent that the Clients have chosen to do so, with separate counsel; and (5) the Clients are entering into this Letter of Engagement freely and voluntarily.

August 10, 2020
Page 11

     **Q.**    **Notices.**  All notices required to be delivered by Reid Collins under the terms of this Letter of Engagement shall be delivered in writing to you.

     **R.**    **Execution in Counterparts.**  It is understood and agreed that this Letter of Engagement may be signed in any number of identical counterparts, each of which shall be deemed an original for all purposes, but all of which shall constitute one and the same agreement.

     We sincerely appreciate the opportunity to represent you.  We look forward to working with you to achieve the best possible results in this matter.  If this Letter of Engagement accurately reflects our agreement, please sign and return this letter to me at your earliest convenience.

Very truly yours,

_____
Gregory S. Schwegmann

Enclosure

**AGREED AND ACCEPTED:**

DAVID W. CARICKHOFF, as the Chapter 7 Trustee
of the Live Well Financial estate.

_____
By:    David W. Carickhoff
Title:  Chapter 7 Trustee
Date:  _____

**AGREED AND ACCEPTED:**

MIRAE ASSET SECURITIES (USA) INC.

_____
By:    Jae Ryu
Title:  Chief Executive Officer
Date:  _____

August 10, 2020
Page 11

     **Q.**    **Notices.**  All notices required to be delivered by Reid Collins under the terms of this Letter of Engagement shall be delivered in writing to you.

     **R.**    **Execution in Counterparts.**  It is understood and agreed that this Letter of Engagement may be signed in any number of identical counterparts, each of which shall be deemed an original for all purposes, but all of which shall constitute one and the same agreement.

     We sincerely appreciate the opportunity to represent you.  We look forward to working with you to achieve the best possible results in this matter.  If this Letter of Engagement accurately reflects our agreement, please sign and return this letter to me at your earliest convenience.

                  Very truly yours,

                  _____

                  Gregory S. Schwegmann

Enclosure

**AGREED AND ACCEPTED:**

DAVID W. CARICKHOFF, as the Chapter 7 Trustee of the Live Well Financial estate.

_____

By:    David W. Carickhoff
Title:  Chapter 7 Trustee
Date:  **August 10, 2020**_____

**AGREED AND ACCEPTED:**

MIRAE ASSET SECURITIES (USA) INC.

_____

By:    Jae Ryu
Title:  Chief Executive Officer
Date:  _____

August 10, 2020
Page 11

**Q.**    **Notices.**  All notices required to be delivered by Reid Collins under the terms of this Letter of Engagement shall be delivered in writing to you.

**R.**    **Execution in Counterparts.**  It is understood and agreed that this Letter of Engagement may be signed in any number of identical counterparts, each of which shall be deemed an original for all purposes, but all of which shall constitute one and the same agreement.

We sincerely appreciate the opportunity to represent you.  We look forward to working with you to achieve the best possible results in this matter.  If this Letter of Engagement accurately reflects our agreement, please sign and return this letter to me at your earliest convenience.

Very truly yours,

_____

Gregory S. Schwegmann

Enclosure

**AGREED AND ACCEPTED:**

DAVID W. CARICKHOFF, as the Chapter 7 Trustee
of the Live Well Financial estate.

_____

By:    David W. Carickhoff
Title:  Chapter 7 Trustee
Date:  _____

**AGREED AND ACCEPTED:**

MIRAE ASSET SECURITIES (USA) INC.

_____

By:    Jae Ryu
Title:  Chief Executive Officer
Date:    8/3/20

| ADDITIONAL TERMS OF ENGAGEMENT |
| --- |

These are the *Additional Terms of Engagement* incorporated into and made a part of our Letter of Engagement. Because they are an integral part of our agreement to provide legal services, we ask that you review this document carefully and retain it for your files. If you have any questions after reading it, please contact us promptly. Notwithstanding anything herein to the contrary, to the extent there is a conflict between the terms and conditions set forth in the Letter of Engagement and the terms and conditions set forth in these *Additional Terms of Engagement*, the terms and conditions set forth in the Letter of Engagement shall control.

## Who Will Provide the Legal Services?

In most cases, one attorney will be your principal contact. From time to time, that attorney may delegate parts of your work to other lawyers or to legal assistants or non-legal professionals in the Firm. We do this in order to involve those with special knowledge or experience in an area and/or to provide service to you in a timely and efficient manner.

## The Scope of the Representation

As lawyers, we undertake to provide representation and advice on the legal matters for which we are engaged, and it is important that we both have a clear understanding of the legal services that the Firm has agreed to provide. In our Letter of Engagement, we specify the matter in which we will provide representation and the scope of the services we will provide. If there are any questions about the terms of engagement, including the scope of the representation that we are to provide in the matter, please raise those questions promptly with your principal contact at the Firm.

We cannot guarantee the outcome of any matter. Any expression of our professional judgment regarding your matter or the potential outcome is, of course, limited by our knowledge of the facts and based on the law at the time of expression. It is also subject to any unknown or uncertain factors or conditions beyond our control.

## Who Is Our Client?

It is our policy to represent only the person or entity identified in our Letter of Engagement and not any affiliates. For example, unless otherwise specifically stated in our Letter of Engagement, if you are a corporation or partnership, our representation does not include any parents, subsidiaries, employees, officers, directors, shareholders,

or partners of the corporation or partnership, or commonly owned corporations or partnerships; if you are a trade association, our representation excludes members of the trade association; if you are an individual, our representation does not include your employer, partners, spouse, siblings, or other family members.

**Your Cooperation**

To enable us to provide effective representation, you agree to:  (1) disclose to us, fully and accurately and on a timely basis, all facts and documents that are or might be material or that we may request; (2) keep us apprised on a timely basis of all developments relating to the representation that are or might be material; and (3) attend meetings, conferences, and other proceedings when it is reasonable to do so.

**Our Relationships With Others**

Our Firm represents various companies and individuals.  In some instances, the applicable rules of professional conduct may limit our ability to represent clients with conflicting or potentially conflicting interests.  Those rules of conduct often allow us to exercise our independent judgment in determining whether our relationship with one client prevents us from representing another.  In other situations, we may be permitted to represent a client only if the other clients consent to that representation.

If a controversy unrelated to the subject matter of the representation develops between you and any other client of the Firm, we will follow the applicable rules of professional responsibility to determine whether we may represent either you or the other client in the unrelated controversy.  In making this determination, we will consider your agreement to the Conflicts of Interest provisions in these *Additional Terms of Engagement.*

We have professional and personal relationships with many other attorneys and law firms, often because of our participation in bar associations and other professional organizations.  We believe that these relationships with other attorneys do not adversely affect our ability to represent any client and, in some circumstances, may enhance our representation.  Your acceptance of our Letter of Engagement means you consent to any such relationships between our Firm and other lawyers or law firms, even counsel who may be representing a party that is adverse to you in the matter that is the subject of this engagement or in some other matter.

**Conflicts of Interest**

Conflicts of interest greatly concern both lawyers and clients.  We attempt to identify actual and potential conflicts at the outset of any engagement, and may request that you sign a conflict waiver before we accept an engagement from you.  Occasionally, other

clients or prospective clients may ask us to seek a conflict waiver from you so that we can accept an engagement on their behalf.  Please do not take such a request to mean that we will represent you less zealously; rather, that we take our professional responsibilities to all clients and prospective clients very seriously.

Unfortunately, conflicts sometimes arise or become apparent after work begins on an engagement.  When that happens, we will do our best to address and resolve the situation in the manner that best serves the interests of all of our affected clients.

We may be asked to represent someone whose interests may be adverse to yours.  Subject to applicable bankruptcy law and rules as it relates to the Trustee and the Live Well estate, we are accepting this engagement on the understanding that our representation of you will not preclude us from accepting any other engagement from any existing or new client provided that (i) such engagement is not substantially related to the subject matter of any services we are providing to you, and (ii) in accepting such other engagement we would not impair the confidentiality of proprietary, sensitive, or otherwise confidential communications you have made to us.

Rules concerning conflicts of interest vary with the jurisdiction.  In order to avoid any uncertainty, our policy is that the Texas Disciplinary Rules of Professional Conduct will be applicable to the representation.  Your acceptance of our Letter of Engagement means you agree with that policy, unless the Letter of Engagement specifically states that some other rules of professional responsibility will govern our attorney-client relationship.

**How We Set Our Fees**

The basis for determining our fee for legal services is set forth in the Letter of Engagement.  If you are unclear about the basis for determining your fee, please contact the attorney responsible for your representation.  Clients frequently ask us to estimate the fees and other charges they are likely to incur in connection with a particular matter.  We are pleased to respond to such requests whenever possible with an estimate based on our professional judgment.  This estimate always carries the understanding that, unless we agree otherwise in writing, it does not represent a maximum, minimum, or fixed-fee quotation.  The ultimate cost frequently is more or less than the amount estimated.

**Charges for Other Expenses and Services**

As an adjunct to providing legal services, we may incur and pay a variety of charges on your behalf or charge for certain ancillary support services.  Whenever we incur such charges on your behalf or charge for such ancillary support services, and subject to the foregoing terms of the Letter of Engagement above, we will bill them to you as part of your monthly invoice.  Accordingly, our invoices usually will include amounts not only

for legal services rendered, but also for other expenses and services.  Examples include charges for photocopying, postage, facsimiles, long-distance telephone calls, travel and conference expenses, delivery charges, computerized research, and facsimile and other electronic transmissions.  Outside expenses will generally be billed at cost, while some in-house expenses (e.g., copying, telecopying, computer services, and in-house research) will include a reasonable allocation of overhead.  Travel expenses also are billed at cost, including the cost of coach-class travel.  In appropriate cases, reimbursable expenses will also include overtime charges for secretaries and other staff.

You authorize us to retain third parties, such as consultants, experts, and investigators, as may be necessary to the representation.  Although we advance third-party disbursements in reasonable amounts, subject to the budget discussed above, we will ask you to pay directly larger third-party invoices (usually those over $250).  Because we often have ongoing professional relationships with the persons who render such services, we ask that you pay such bills promptly and send us notice of your payment.

We generally make and retain copies of all documents generated or received by us in the course of your representation.  Should you request documents from us at the conclusion of our representation of you (other than your original documents), you agree that we may generate copies for our files at your expense, including both the reproduction charges and professional fees for time expended in reviewing files to be returned to you.

**Termination**

Because our Firm has been engaged to provide legal services in connection with the representation in the matter, as specifically defined in our Letter of Engagement, the attorney-client relationship terminates upon our completion of our services related to the representation in the matter.  After completion of the representation, however, changes may occur in the applicable laws or regulations that could affect your future rights and liabilities in regard to the matter.  Unless we are actually engaged after the completion of the representation to provide additional advice on such issues, the Firm has no continuing obligation to give advice with respect to any future legal developments that may relate to the matter.

If you later retain us to perform further or additional services, our attorney-client relationship will be subject to the terms of engagement agreed to at that time.

We look forward to the opportunity to complete our representation of you in the specified matter.  You may, however, terminate our representation at any time, with or without cause, by notifying us in writing.  Further information regarding your right to terminate the representation, and the effect of such termination, is set forth in the Letter of Engagement.

156698.01600/123658970v.1

We will return your papers and other property to you promptly upon receipt of your request for those materials, unless they are appropriately subject to a lien. You agree that we will own and retain our own files pertaining to the matter or case, including, for example, Firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal lawyers' work product such as drafts, notes, internal memoranda, legal and factual research, and investigative reports, prepared by or for the internal use of lawyers.

**Document Retention**

At the conclusion of the representation, we generally return to the client the client's original documents and any other documents that are specifically requested to be returned. As to any original documents so returned, we may elect to keep, at our expense, a copy of the documents in our stored files. Should you request other documents from us at the conclusion of our representation of you, you agree that we may generate copies for our files at your expense, including both the reproduction charges and professional fees for time expended in reviewing files to be returned to you.

At the close of any matter, we usually send the pertinent parts of our files in that matter to a storage facility for safekeeping at our expense. However, we do not store voluminous papers at our expense. The attorney closing the file will determine what part of the file is sent to storage and how long we will maintain the files in storage. Documents we choose not to store will be returned to you or destroyed.

**Disclaimer**

By signing the Letter of Engagement or otherwise indicating your acceptance of the Letter of Engagement, you acknowledge that our Firm has made no promises or guarantees to you about the outcome of the representation, and nothing in these terms of engagement shall be construed as such a promise or guarantee of any specific result. Either at the commencement or during the course of the representation, we may express opinions or beliefs about the matter or various courses of action and the results that might be anticipated. Any expressions on our part concerning the outcome of the representation, or any other legal matters, are based on our professional judgment and are not guarantees.

**Our Professional Responsibility**

The code of professional responsibility to which we are subject lists several types of conduct or circumstances that require or allow us to withdraw from representing a client. These include, for example, nonpayment of fees or charges, misrepresentation or failure

to disclose material facts, action contrary to our advice, and conflict of interest with another client.

We try to identify in advance and discuss with our clients any situation that may lead to our withdrawal.  If withdrawal ever becomes necessary, we give our client written notice as soon as practicable.

Under rules of the Texas Supreme Court and the State Bar of Texas, we advise our clients of the contents of the Texas Lawyer's Creed, a copy of which is enclosed.  In addition, we advise clients that the State Bar of Texas investigates and prosecutes complaints of professional misconduct against attorneys licensed in Texas.  A brochure entitled *Attorney Complaint Information* is available at all of our offices and is likewise available upon request.  A client having any questions about the State Bar's disciplinary process should call the Office of the General Counsel of the State Bar of Texas at this toll-free number:  (800) 932-1900.

## Modification of Our Agreement

The Letter of Engagement, including these *Additional Terms of Engagement*, reflects our entire agreement on the terms of this engagement.  These written terms of engagement are not subject to any oral agreements or understandings, and any change in these terms can only be made in a written instrument signed by both the Firm and you and may be subject to Bankruptcy Court approval.

## In Conclusion

We look forward to a long and mutually satisfying relationship with you.  Again, if at any time you have a question or concern, please feel free to bring it to the attention of your principal contact at our Firm.

◆◆◆

## THE TEXAS LAWYER'S CREED — A Mandate for Professionalism

*The Texas Supreme Court and the Texas Court of Criminal Appeals adopted this Creed, with the requirement that lawyers advise their clients of its contents when undertaking representation.*

I am a lawyer; I am entrusted by the People of Texas to preserve and improve our legal system. I am licensed by the Supreme Court of Texas. I must therefore abide by the Texas Disciplinary Rules of Professional Conduct, but I know that Professionalism requires more than merely avoiding the violation of laws and rules. I am committed to this Creed for no other reason that it is right.

## I.    OUR LEGAL SYSTEM.

A lawyer owes to the administration of justice personal dignity, integrity, and independence. A lawyer should always adhere to the highest principles of professionalism. I am passionately proud of my profession. Therefore, "My word is my bond." I am responsible to assure that all persons have access to competent representation regardless of wealth or position in life. I commit myself to an adequate and effective pro bono program. I am obligated to educate my clients, the public, and other lawyers regarding the spirit and letter of this Creed. I will always be conscious of my duty to the judicial system.

## II.    LAWYER TO CLIENT.

A lawyer owes to a client allegiance, learning, skill, and industry. A lawyer shall employ all appropriate means to protect and advance the client's legitimate rights, claims, and objectives. A lawyer shall not be deterred by any real or imagined fear of judicial disfavor or public unpopularity, nor be influenced by mere self-interest. I will advise my client of the contents of this Creed when undertaking representation. I will endeavor to achieve my client's lawful objectives in legal transactions and in litigation as quickly and economically as possible. I will be loyal and committed to my client's lawful objectives, but I will not permit that loyalty and commitment to interfere with my duty to provide objective and independent advice. I will advise my client that civility and courtesy are expected and are not a sign of weakness. I will advise my client of proper and expected behavior. I will treat adverse parties and witnesses with fairness and due consideration. A client has no right to demand that I abuse anyone or indulge in any offensive conduct. I will advise my client that we will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party. I will advise my client that we will not pursue tactics which are intended primarily for delay. I will advise my client that we will not pursue any course of action which is without merit. I will advise my client that I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect my client's lawful objectives. A client has no right to instruct me to refuse

156698.01600/123658970v.1

reasonable requests made by other counsel. I will advise my client regarding the availability of mediation, arbitration, and other alternative methods of resolving and settling disputes.

## III.    LAWYER TO LAWYER.    A

lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings. Ill feelings between clients shall not influence a lawyer's conduct, attitude, or demeanor toward opposing counsel. A lawyer shall not engage in unprofessional conduct in retaliation against other unprofessional conduct. I will be courteous, civil, and prompt in oral and written communications. I will not quarrel over matters of form or style, but I will concentrate on matters of substance. I will identify for other counsel or parties all changes I have made in documents submitted for review. I will attempt to prepare documents which correctly reflect the agreement of the parties. I will not include provisions which have not been agreed upon or omit provisions which are necessary to reflect the agreement of the parties. I will notify opposing counsel, and, if appropriate, the Court or other persons, as soon as practicable, when hearings, depositions, meetings, conferences or closings are canceled. I will agree to reasonable requests for extensions of time and for waiver of procedural formalities,

provided legitimate objectives of my client will not be adversely affected. I will not serve motions or pleadings in any manner that unfairly limits another party's opportunity to respond. I will attempt to resolve by agreement my objections to matters contained in pleadings and discovery requests and responses. I can disagree without being disagreeable. I recognize that effective representation does not require antagonistic or obnoxious behavior. I will neither encourage nor knowingly permit my client or anyone under my control to do anything which would be unethical or improper if done by me. I will not, without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety. I will avoid disparaging personal remarks or acrimony towards opposing counsel, parties and witnesses. I will not be influenced by any ill feeling between clients. I will abstain from any allusion to personal peculiarities or idiosyncrasies of opposing counsel. I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed. I will promptly submit orders to the Court. I will deliver copies to opposing counsel before or contemporaneously with submission to the court. I will promptly approve the form of orders which accurately reflect the substance of the rulings of the Court. I will not attempt to

gain an unfair advantage by sending the Court or its staff correspondence or copies of correspondence. I will not arbitrarily schedule a deposition, Court appearance, or hearing until a good faith effort has been made to schedule it by agreement. I will readily stipulate to undisputed facts in order to avoid needless costs or inconvenience for any party. I will refrain from excessive and abusive discovery. I will comply with all reasonable discovery requests. I will not resist discovery requests which are not objectionable. I will not make objections nor give instructions to a witness for the purpose of delaying or obstructing the discovery process. I will encourage witnesses to respond to all deposition questions which are reasonably understandable. I will neither encourage nor permit my witness to quibble about words where their meaning is reasonably clear. I will not seek Court intervention to obtain discovery which is clearly improper and not discoverable. I will not seek sanctions or disqualification unless it is necessary for protection of my client's lawful objectives or is fully justified by the circumstances.

**IV.   LAWYER   AND   JUDGE.** Lawyers and judges owe each other respect, diligence, candor, punctuality, and protection against unjust and improper criticism and attack. Lawyers and judges are equally responsible to protect the dignity and independence of the Court and the profession. I will always recognize that the position of judge is the symbol of both the judicial system and administration of justice. I will refrain from conduct that degrades this symbol. I will conduct myself in court in a professional manner and demonstrate my respect for the Court and the law. I will treat counsel, opposing parties, the Court, and members of the Court staff with courtesy and civility. I will be punctual. I will not engage in any conduct which offends the dignity and decorum of proceedings. I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain an advantage. I will respect the rulings of the Court. I will give the issues in controversy deliberate, impartial and studied analysis and consideration. I will be considerate of the time constraints and pressures imposed upon the Court, Court staff and counsel in efforts to administer justice and resolve disputes.

❖❖❖

156698.01600/123658970v.1

Exhibit II

Special Litigation Counsel Trustee Engagement Letter

REID COLLINS & TSAI LLP
1301 S. Capital of Texas Hwy
Suite C300
Austin, Texas 78746
Main: 512.647.6100
Fax: 512.647.6129
www.reidcollins.com

Gregory S. Schwegmann | Partner
Direct: 512.647.6108
gschwegmann@reidcollins.com

# reid | collins

August 10, 2020

<u>*Via Email*</u>

David W. Carickhoff
c/o Archer & Greiner, PC
300 Delaware Avenue
Suite 1100
Wilmington, DE 19801

<div style="border:1px solid">

**CONFIDENTIAL AND SUBJECT TO
ATTORNEY-CLIENT PRIVILEGE**

</div>

Re:    Claims in connection with *In re Live Well Financial, Inc.*,
    Case No. 19-11317-LSS (Bankr. D. Del.)

Dear David:

Thank you for engaging Reid Collins & Tsai LLP ("**Reid Collins**," the "**Firm**," "**Counsel**" or "**we**") to represent you, in your capacity as the Chapter 7 Trustee (the "**Trustee**," "**Client**," or "**you**") of the Live Well Financial, Inc. ("**Live Well**") estate, in connection with your claims against the former officers and directors of Live Well, certain pre-petition professional firms employed by Live Well, the former preferred shareholders of Live Well, certain recipients of transfers from Live Well, and Interactive Data Corporation/Intercontinental Exchange; and potentially others to be determined and agreed upon in writing between Reid Collins and you (collectively, the "**Targets**"). We appreciate this opportunity and look forward to working with you. Consistent with the requirements of the State Bar of Texas and other applicable ethical and disciplinary rules, it is our practice to specify in writing our engagement arrangements with our clients, and that is the purpose of this Letter of Engagement and the *Additional Terms of Engagement* that are enclosed. If you have any questions about this Letter of Engagement, the *Additional Terms of Engagement*, or any aspect of this engagement of our firm or our relationship, please contact me immediately. This Letter of Engagement and the Additional Terms of Engagement are subject to approval by the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") as more fully set forth below.

We have agreed that Reid Collins shall provide legal counsel and representation to you under the following terms:

August 10, 2020
Page 2

A.    <u>**Nature and Scope of Representation.**</u>    Reid Collins shall serve as special litigation counsel to the Client in investigating and (if appropriate) pursuing the claims and causes of action belonging to the Client against the Targets (the "**Claims**").  The scope of this representation shall not include any other matters unless you and Reid Collins agree to expand the representation to include such matters pursuant to a written amendment to this Letter of Engagement executed by the parties hereto, which amendment shall be subject to notice or further approval by the Bankruptcy Court.

Eric Madden and I shall serve as the lead Reid Collins attorneys responsible for this matter, and I will be responsible for the day-to-day management of this matter.  Other Reid Collins attorneys, paralegals, and legal assistants may assist in this matter from time to time to contribute particular expertise or efficiencies.

B.    <u>**Reid Collins's Obligations.**</u>    Reid Collins agrees to comply with all obligations set out herein, including, but not limited to, cooperating with you and keeping you informed of all matters pertinent to the pursuit of the Claims.  Reid Collins shall undertake those tasks that, in its judgment, are necessary to analyze and pursue the Claims to obtain a recovery for you.  Beyond that, Reid Collins shall not perform any legal services on your behalf not specified in this Letter of Engagement, including, without limitation, the filing or serving of any pleading, motion, brief, demand, or other document seeking relief from any court, arbitration service, or other tribunal, without consultation and authorization from you.  Reid Collins's obligations under this Letter of Engagement shall cease upon the earliest of: (1) a full and final settlement resolving each of the Claims; (2) a final ruling, judgment, or award resolving each of the Claims; (3) a termination of, or a withdrawal from, the representation pursuant to paragraphs G or H below.

C.    <u>**Client's Obligations.**</u>    You agree to comply with all obligations set out herein, including, but not limited to, keeping Reid Collins informed of all matters necessary for Reid Collins to fully represent you, and promptly responding to Reid Collins's requests.   You agree to reasonably cooperate with Reid Collins in the investigation and pursuit of the Claims; to appear on reasonable notice at any and all depositions and court appearances; to produce relevant documents in your possession, custody, or control; and to comply with all of Reid Collins's reasonable requests in connection with preparation and presentation of evidence related to the Claims.  You further agree that you shall not insist upon presenting any claim or defense that, in the opinion of Reid Collins, is not warranted under existing law and cannot be supported by a good-faith argument for extension, modification, or reversal of existing law.   In addition, you agree not to insist that Reid Collins pursue a course of conduct that is, in the opinion of Reid Collins, illegal or unreasonable, or that is prohibited under applicable rules of professional conduct.

August 10, 2020
Page 3

In order to comply with discovery obligations in connection with any future litigation involving the Claims, it is necessary for you to preserve and maintain all information, whether in electronic or hard-copy form, in its possession, custody, or control related to the Claims. To the extent that you have regular practices whereby information is discarded, those practices must cease immediately with respect to information that is relevant to the Claims. You are obligated to maintain all data relevant to the Claims in any and every form and must not discard anything without first discussing the matter with Reid Collins.

D.    **Compensation.** In exchange for its services, Reid Collins will be paid the following contingency fee (the "**Contingency Fee**") in accordance with section 4 of that certain Litigation Support and Alignment Agreement, entered into by and between the Trustee and Mirae Asset Securities (USA) Inc. ("**Mirae**"):

- If any Claims are resolved prior to serving Rule 2004 discovery, Reid Collins shall receive 20% of Gross Recoveries (as defined below) obtained by you in connection with the Claims; or

- If any Claims are resolved after serving Rule 2004 discovery but before filing a lawsuit, Reid Collins shall receive 30% of Gross Recoveries obtained by you in connection with the Claims; or

- If any Claims are resolved after the filing of a lawsuit, Reid Collins shall receive 40% of Gross Recoveries obtained by you in connection with the Claims.

"**Gross Recoveries**" means the fair value of all cash and/or non-cash consideration obtained by you in connection with any settlement, judgment, award, or other recovery regarding the Claims. Of course, if no Gross Recoveries are obtained in connection with the Claims, Reid Collins will not be paid a Contingency Fee.

E.    **Costs and Expenses.** Certain costs and expenses may be incurred in connection with the Claims, including, but not limited to, filing fees, expert witness fees and expenses, expenses related to electronically stored information, deposition costs, copying expenses, travel costs, delivery fees, and computerized research charges (collectively, "**Out-of-Pocket Expenses**"). All such Out-of-Pocket Expenses shall be reasonable and necessary. Reid Collins shall propose a budget of Out-of-Pocket Expenses for each phase of its work and reach an agreement with you on such budget ("Budgeted Out-of-Pocket Expenses") in connection with this Letter of Engagement. The budget for Out-of-Pocket Expenses, however, may change over time due to unforeseen changes in

circumstances.  Any changes to the budget shall be agreed upon in advance by Reid Collins and you and your agreement to such revised budget shall not be unreasonably withheld.  You agree that Reid Collins is authorized to incur such Budgeted Out-of-Pocket Expenses on their behalf and you shall be responsible for advancing all Budgeted Out-of-Pocket Expenses and reimbursing Reid Collins for all such Budgeted Out-of-Pocket Expenses it advances on your behalf, as applicable.  To this end, you agree to fund an expense retainer in the amount of $50,000 from proceeds of the Live Well estate, which shall be used to reimburse Reid Collins for any Budgeted Out-of-Pocket Expenses it incurs in connection with the Claims.[1]  You further agree to replenish the expense retainer upon reasonable request from Reid Collins.  Whether budgeted or not (and thus payable on advance), Reid Collins shall confer with you prior to incurring any major expenses such as the retention of expert witnesses.

F.    **Fee Application; Court Award of Attorney's Fees or Costs.**  Reid Collins is authorized to apply to any court or tribunal for the maximum amount of compensation, attorney's fees, costs, pre- and post-judgment interest, and litigation expenses available by law.  Any such fees and costs recovered on behalf of you will be treated as Gross Recoveries under this Letter of Engagement.  Prior to any final distribution to creditors and claimants by the Trustee, Reid Collins will file a fee application (it may be part of a single final fee application filed in connection with all of Reid Collins' work for the Live Well estate) for final allowance of compensation and Out-of-Pocket Expenses hereunder with the Bankruptcy Court, which shall cover all Out-of-Pocket Expenses (including those advanced under a budget hereunder) and shall contain a description of the services provided to you and the Live Well chapter 7 estate; provided, however, that such fee application shall not include detailed time records.  For the avoidance of doubt, Reid Collins is not required to keep such records in connection with this Letter of Engagement.

G.    **Client's Right to Terminate Reid Collins's Representation.**  You may terminate Reid Collins's representation under the following terms:

(1)    You may terminate Reid Collins with or without cause. Whether the grounds for termination constitute cause shall be determined pursuant to applicable law.

(2)    In the event that you terminate Reid Collins with cause, the Reid Collins shall not be entitled to any Contingency Fee, but Reid Collins shall be entitled to immediate reimbursement of

---

[1] The expense retainer and budget referred to in paragraph E above is the same expense retainer and budget referred to in paragraph F of that certain Letter of Engagement dated as of August 10, 2020 by and among RCT, the Trustee, and Mirae. For the avoidance of doubt, the Trustee's funding obligations are without duplication and the Trustee shall be obligated to initially fund the expense retainer in an aggregate amount of $50,000.

any Out-of-Pocket Expenses in accordance with the terms of Paragraph E.

(3)    If you terminate Reid Collins without cause, and to the extent permissible under applicable law, Reid Collins's interest in the Contingency Fee shall remain intact and unaffected, or Reid Collins may elect in its discretion to receive an immediate payment for all services rendered to you under the Letter of Engagement, calculated on the basis of actual work hours performed at Reid Collins's standard hourly rates.

(4)    You understand and agree that terminating Reid Collins may result in the necessity to retain new counsel, which could have the effect of increasing the amount of the total fee paid to all attorneys.

(5)    Regardless of whether you terminate Reid Collins with or without cause, Reid Collins acknowledges and agrees that you shall have the right to retain new counsel to pursue the Claims, and Reid Collins shall cooperate in good faith in the transition of counsel with respect to the Claims, including but not limited to, transferring all relevant attorney work-product prepared or obtained during the course of its representation.

H.    **Reid Collins's Right to Withdraw from Representation.**    Reid Collins reserves the right to withdraw from further representation in relation to one or more of the Claims in any of the following circumstances:

(1)    If Reid Collins, in its reasonable discretion after conferring in good faith with you and prior to filing a lawsuit regarding the Claims, determines that one or more of the Claims lacks sufficient merit or value to justify the risk of continued pursuit (for the avoidance of doubt, Reid Collins' right to withdraw under this paragraph H(1) shall apply only to such Claim(s) that are determined to lack sufficient merit or value to justify the risk of continued pursuit hereunder).

(2)    If you insist upon presenting any claim or defense that Reid Collins reasonably determines is not warranted under existing law and cannot be supported by a good-faith argument for an extension, modification, or reversal of existing law.    An example would be if you insist upon

pursuing a claim that would violate Rule 11 of the Federal Rules of Civil Procedure or a state-law equivalent.

(3)     If you insist that Reid Collins pursue a course of conduct that is illegal or unreasonable, or that is prohibited under applicable rules of professional conduct.

(4)     If you refuse to reasonably cooperate with Reid Collins or follow Reid Collins's advice on a material matter, after written notice of Reid Collins's reasonable belief concerning the material matter and the basis thereof and Reid Collins's intent to withdraw and an opportunity for you to cooperate and follow Reid Collins's advice.  As used herein, a "material matter" shall mean a matter that Reid Collins reasonably believes:  (a) will materially undermine or jeopardize the potential for success of one or more of the Claims without a corresponding increase in the likelihood of success or recovery under any other Claim; (b) will cause an undue and unwarranted increase in Reid Collins's time investment in pursuing the Claims without a corresponding increase in the likelihood of success or recovery under the Claims; or (c) implicates any of the bases for Reid Collins's right to withdraw from the representation set forth in subparts 1 through 3 of this paragraph.

(5)     If you fail to replenish the expense retainer described in paragraph E of this Letter of Engagement upon reasonable request from Reid Collins or unreasonably withhold your agreement on a revised budget of Out-of-Pocket Expenses.

(6)     In any circumstance in which Reid Collins obtains your written consent.

If Reid Collins elects to withdraw this representation, Reid Collins shall notify you in writing.  In the event Reid Collins decides to withdraw from pursuit of one or more of the Claims for a reason other than your breach of this Letter of Engagement, then Reid Collins shall not be entitled to any Contingency Fee hereunder in relation to the Claims. In the event Reid Collins elects to withdraw under the circumstances set forth in subparts 1 through 6 of this paragraph, and to the extent permissible under applicable law, Reid Collins shall be entitled to receive from Gross Recoveries, if any, (a) payment of fees for the work it performed in connection with this Letter of Engagement based upon its full hourly rates and (b) reimbursement of any Out-of-Pocket Expenses in accordance with

the terms of paragraph E, subject to your rights to object to the reasonableness of any such hourly fees and/or Out-of-Pocket Expenses.  In the event any dispute arises regarding such hourly fees and/or Out-of-Pocket Expenses, each of the parties shall have the right to seek to have such dispute determined by the Bankruptcy Court on reasonable notice to the other party. Within thirty (30) days after any withdrawal by Reid Collins, Reid Collins shall provide to you documentation reasonably acceptable to you setting forth (a)(I) the names of all Reid Collins attorneys and paraprofessionals who billed time to the Claims, (II) each such individual's hourly billing rate(s), as and when in effect during the engagement, and (III) a description of the work performed by each such individual, and (b) all of Reid Collins's Out-of-Pocket Expenses.  You agree to sign all necessary documents to facilitate the withdrawal of Reid Collins from any pending lawsuit immediately after receiving written notification of Reid Collins's intention to withdraw pursuant to the provisions of this Letter of Engagement.  You understand and acknowledge that if Reid Collins withdraws, you may have to retain other counsel, and that the total fees paid to all attorneys may therefore be greater than the total amount that would have been paid had Reid Collins not withdrawn.

   **I.**    **No Guarantees.**    You acknowledge that Reid Collins has made no guarantees regarding the outcome of this matter or any other aspect related to this representation, and that any and all expressions about possible outcomes are only preliminary opinions.

   **J.**    **Settlement Authority**. You retain sole discretion with respect to any decisions relating to any settlement of any claim, including the timing, content, consideration and all other terms of such a potential settlement.

   **K.**    **Bankruptcy Court Approval.**  The terms of this Letter of Engagement are subject to the approval of the Bankruptcy Court in the above-referenced bankruptcy case pursuant to 11 U.S.C. § 328(a).  Upon such approval, this Letter of Engagement shall be effective as of August 10, 2020, and shall be binding upon the Trustee, the debtor, the Live Well bankruptcy estate, and its creditors.

   **L.**    **Severability.**  In case any one or more of the provisions in this Letter of Engagement shall be found unenforceable in any respect, the parties have agreed that such unenforceability shall not affect any other provision, and that all other provisions of this Letter of Engagement shall remain valid and enforceable.

   **M.**    **Integration/Amendment.**  This Letter of Engagement constitutes the final and only agreement of the parties hereto regarding Reid Collins's representation of you, and it supersedes any prior written or oral understandings or agreements between the parties regarding that subject.  This Letter of Engagement may not be modified, amended, or replaced except in a writing signed by the parties hereto, or their successors or assigns,

August 10, 2020
Page 8

which may be subject to notice in or approval by the Bankruptcy Court.

**N.**   <u>**Governing Law.**</u>   Subject to Bankruptcy Court order(s) and applicable bankruptcy law and rules, this Letter of Engagement shall be construed in accordance with the laws of the State of Texas, without regard for its conflict of laws rules. All matters relating to the retention of Reid Collins hereunder and final allowance of Compensation and Out-of-Pocket Expenses shall be adjudicated before the Bankruptcy Court.

**O.**   <u>**Determination of Fairness and Reasonableness.**</u>   You acknowledge that: (1) Reid Collins did not act as its counsel in preparing or negotiating this Letter of Engagement; (2) you have made sufficient investigation and inquiry to determine that this Letter of Engagement is fair and reasonable; (3) this Letter of Engagement was the product of an arm's length negotiation between you and Reid Collins; (4) you have had ample opportunity to review the Letter of Engagement independently and, to the extent that you have chosen to do so, with separate counsel; and (5) you are entering into this Letter of Engagement freely and voluntarily.

**P.**   <u>**Notices.**</u>   All notices required to be delivered by Reid Collins under the terms of this Letter of Engagement shall be delivered in writing to you.

**Q.**   <u>**Execution in Counterparts.**</u>   It is understood and agreed that this Letter of Engagement may be signed in any number of identical counterparts, each of which shall be deemed an original for all purposes, but all of which shall constitute one and the same agreement.

We sincerely appreciate the opportunity to represent you. We look forward to working with you to achieve the best possible results in this matter. If this Letter of Engagement accurately reflects our agreement, please sign and return this letter to me at your earliest convenience.

Very truly yours,

_____
Gregory S. Schwegmann

Enclosure

August 10, 2020
Page 9

**AGREED AND ACCEPTED:**

DAVID W. CARICKHOFF, as the Chapter 7 Trustee
of the Live Well Financial estate.

By:     David W. Carickhoff
Title:  Chapter 7 Trustee
Date:   August 10, 2020

| ADDITIONAL TERMS OF ENGAGEMENT |
| --- |

These are the *Additional Terms of Engagement* incorporated into and made a part of our Letter of Engagement.  Because they are an integral part of our agreement to provide legal services, we ask that you review this document carefully and retain it for your files.  If you have any questions after reading it, please contact us promptly.  Notwithstanding anything herein to the contrary, to the extent there is a conflict between the terms and conditions set forth in the Letter of Engagement and the terms and conditions set forth in these *Additional Terms of Engagement*, the terms and conditions set forth in the Letter of Engagement shall control.

## Who Will Provide the Legal Services?

In most cases, one attorney will be your principal contact.  From time to time, that attorney may delegate parts of your work to other lawyers or to legal assistants or non-legal professionals in the Firm.  We do this in order to involve those with special knowledge or experience in an area and/or to provide service to you in a timely and efficient manner.

## The Scope of the Representation

As lawyers, we undertake to provide representation and advice on the legal matters for which we are engaged, and it is important that we both have a clear understanding of the legal services that the Firm has agreed to provide.  In our Letter of Engagement, we specify the matter in which we will provide representation and the scope of the services we will provide.  If there are any questions about the terms of engagement, including the scope of the representation that we are to provide in the matter, please raise those questions promptly with your principal contact at the Firm.

We cannot guarantee the outcome of any matter.  Any expression of our professional judgment regarding your matter or the potential outcome is, of course, limited by our knowledge of the facts and based on the law at the time of expression.  It is also subject to any unknown or uncertain factors or conditions beyond our control.

## Who Is Our Client?

It is our policy to represent only the person or entity identified in our Letter of Engagement and not any affiliates.  For example, unless otherwise specifically stated in our Letter of Engagement, if you are a corporation or partnership, our representation does not include any parents, subsidiaries, employees, officers, directors, shareholders,

156698.01600/123659074v.1

or partners of the corporation or partnership, or commonly owned corporations or partnerships; if you are a trade association, our representation excludes members of the trade association; if you are an individual, our representation does not include your employer, partners, spouse, siblings, or other family members.

## Your Cooperation

To enable us to provide effective representation, you agree to: (1) disclose to us, fully and accurately and on a timely basis, all facts and documents that are or might be material or that we may request; (2) keep us apprised on a timely basis of all developments relating to the representation that are or might be material; and (3) attend meetings, conferences, and other proceedings when it is reasonable to do so.

## Our Relationships With Others

Our Firm represents various companies and individuals. In some instances, the applicable rules of professional conduct may limit our ability to represent clients with conflicting or potentially conflicting interests. Those rules of conduct often allow us to exercise our independent judgment in determining whether our relationship with one client prevents us from representing another. In other situations, we may be permitted to represent a client only if the other clients consent to that representation.

If a controversy unrelated to the subject matter of the representation develops between you and any other client of the Firm, we will follow the applicable rules of professional responsibility to determine whether we may represent either you or the other client in the unrelated controversy. In making this determination, we will consider your agreement to the Conflicts of Interest provisions in these *Additional Terms of Engagement.*

We have professional and personal relationships with many other attorneys and law firms, often because of our participation in bar associations and other professional organizations. We believe that these relationships with other attorneys do not adversely affect our ability to represent any client and, in some circumstances, may enhance our representation. Your acceptance of our Letter of Engagement means you consent to any such relationships between our Firm and other lawyers or law firms, even counsel who may be representing a party that is adverse to you in the matter that is the subject of this engagement or in some other matter.

## Conflicts of Interest

Conflicts of interest greatly concern both lawyers and clients. We attempt to identify actual and potential conflicts at the outset of any engagement, and may request that you sign a conflict waiver before we accept an engagement from you. Occasionally, other

156698.01600/123659074v.1

clients or prospective clients may ask us to seek a conflict waiver from you so that we can accept an engagement on their behalf.  Please do not take such a request to mean that we will represent you less zealously; rather, that we take our professional responsibilities to all clients and prospective clients very seriously.

Unfortunately, conflicts sometimes arise or become apparent after work begins on an engagement.  When that happens, we will do our best to address and resolve the situation in the manner that best serves the interests of all of our affected clients.

We may be asked to represent someone whose interests may be adverse to yours.  Subject to applicable bankruptcy law and rules, we are accepting this engagement on the understanding that our representation of you will not preclude us from accepting any other engagement from any existing or new client provided that (i) such engagement is not substantially related to the subject matter of any services we are providing to you, and (ii) in accepting such other engagement we would not impair the confidentiality of proprietary, sensitive, or otherwise confidential communications you have made to us.

Rules concerning conflicts of interest vary with the jurisdiction.  In order to avoid any uncertainty, our policy is that the Texas Disciplinary Rules of Professional Conduct will be applicable to the representation.  Your acceptance of our Letter of Engagement means you agree with that policy, unless the Letter of Engagement specifically states that some other rules of professional responsibility will govern our attorney-client relationship.

## How We Set Our Fees

The basis for determining our fee for legal services is set forth in the Letter of Engagement.  If you are unclear about the basis for determining your fee, please contact the attorney responsible for your representation.  Clients frequently ask us to estimate the fees and other charges they are likely to incur in connection with a particular matter.  We are pleased to respond to such requests whenever possible with an estimate based on our professional judgment.  This estimate always carries the understanding that, unless we agree otherwise in writing, it does not represent a maximum, minimum, or fixed-fee quotation.  The ultimate cost frequently is more or less than the amount estimated.

## Charges for Other Expenses and Services

As an adjunct to providing legal services, we may incur and pay a variety of charges on your behalf or charge for certain ancillary support services.  Whenever we incur such charges on your behalf or charge for such ancillary support services, and subject to the foregoing terms of the Letter of Engagement above, we will bill them to you as part of your monthly invoice.  Accordingly, our invoices usually will include amounts not only for legal services rendered, but also for other expenses and services.  Examples include

156698.01600/123659074v.1

charges for photocopying, postage, facsimiles, long-distance telephone calls, travel and conference expenses, delivery charges, computerized research, and facsimile and other electronic transmissions.  Outside expenses will generally be billed at cost, while some in-house expenses (e.g., copying, telecopying, computer services, and in-house research) will include a reasonable allocation of overhead.  Travel expenses also are billed at cost, including the cost of coach-class travel.  In appropriate cases, reimbursable expenses will also include overtime charges for secretaries and other staff.

You authorize us to retain third parties, such as consultants, experts, and investigators, as may be necessary to the representation.   Although we advance third-party disbursements in reasonable amounts, subject to the budget discussed above, we will ask you to pay directly larger third-party invoices (usually those over $250).  Because we often have ongoing professional relationships with the persons who render such services, we ask that you pay such bills promptly and send us notice of your payment.

We generally make and retain copies of all documents generated or received by us in the course of your representation.  Should you request documents from us at the conclusion of our representation of you (other than your original documents), you agree that we may generate copies for our files at your expense, including both the reproduction charges and professional fees for time expended in reviewing files to be returned to you.

**Termination**

Because our Firm has been engaged to provide legal services in connection with the representation in the matter, as specifically defined in our Letter of Engagement, the attorney-client relationship terminates upon our completion of our services related to the representation in the matter.  After completion of the representation, however, changes may occur in the applicable laws or regulations that could affect your future rights and liabilities in regard to the matter.  Unless we are actually engaged after the completion of the representation to provide additional advice on such issues, the Firm has no continuing obligation to give advice with respect to any future legal developments that may relate to the matter.

If you later retain us to perform further or additional services, our attorney-client relationship will be subject to the terms of engagement agreed to at that time.

We look forward to the opportunity to complete our representation of you in the specified matter.  You may, however, terminate our representation at any time, with or without cause, by notifying us in writing.  Further information regarding your right to terminate the representation, and the effect of such termination, is set forth in the Letter of Engagement.

We will return your papers and other property to you promptly upon receipt of your request for these materials, unless they are appropriately subject to a lien.  You agree that we will own and retain our own files pertaining to the matter or case, including, for example, Firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal lawyers' work product such as drafts, notes, internal memoranda, legal and factual research, and investigative reports, prepared by or for the internal use of lawyers.

**Document Retention**

At the conclusion of the representation, we generally return to the client the client's original documents and any other documents that are specifically requested to be returned.  As to any original documents so returned, we may elect to keep, at our expense, a copy of the documents in our stored files.  Should you request other documents from us at the conclusion of our representation of you, you agree that we may generate copies for our files at your expense, including both the reproduction charges and professional fees for time expended in reviewing files to be returned to you.

At the close of any matter, we usually send the pertinent parts of our files in that matter to a storage facility for safekeeping at our expense.  However, we do not store voluminous papers at our expense.  The attorney closing the file will determine what part of the file is sent to storage and how long we will maintain the files in storage.  Documents we choose not to store will be returned to you or destroyed.

**Disclaimer**

By signing the Letter of Engagement or otherwise indicating your acceptance of the Letter of Engagement, you acknowledge that our Firm has made no promises or guarantees to you about the outcome of the representation, and nothing in these terms of engagement shall be construed as such a promise or guarantee of any specific result.  Either at the commencement or during the course of the representation, we may express opinions or beliefs about the matter or various courses of action and the results that might be anticipated.  Any expressions on our part concerning the outcome of the representation, or any other legal matters, are based on our professional judgment and are not guarantees.

**Our Professional Responsibility**

The code of professional responsibility to which we are subject lists several types of conduct or circumstances that require or allow us to withdraw from representing a client. These include, for example, nonpayment of fees or charges, misrepresentation or failure

to disclose material facts, action contrary to our advice, and conflict of interest with another client.

We try to identify in advance and discuss with our clients any situation that may lead to our withdrawal.  If withdrawal ever becomes necessary, we give our client written notice as soon as practicable.

Under rules of the Texas Supreme Court and the State Bar of Texas, we advise our clients of the contents of the Texas Lawyer's Creed, a copy of which is enclosed.  In addition, we advise clients that the State Bar of Texas investigates and prosecutes complaints of professional misconduct against attorneys licensed in Texas.  A brochure entitled *Attorney Complaint Information* is available at all of our offices and is likewise available upon request.  A client having any questions about the State Bar's disciplinary process should call the Office of the General Counsel of the State Bar of Texas at this toll-free number:  (800) 932-1900.

**Modification of Our Agreement**

The Letter of Engagement, including these *Additional Terms of Engagement*, reflects our entire agreement on the terms of this engagement.  These written terms of engagement are not subject to any oral agreements or understandings, and any change in these terms can only be made in a written instrument signed by both the Firm and you and may be subject to Bankruptcy Court approval.

**In Conclusion**

We look forward to a long and mutually satisfying relationship with you.  Again, if at any time you have a question or concern, please feel free to bring it to the attention of your principal contact at our Firm.

<div align="center">❖❖❖</div>

## THE TEXAS LAWYER'S CREED — A Mandate for Professionalism

*The Texas Supreme Court and the Texas Court of Criminal Appeals adopted this Creed, with the requirement that lawyers advise their clients of its contents when undertaking representation.*

I am a lawyer; I am entrusted by the People of Texas to preserve and improve our legal system. I am licensed by the Supreme Court of Texas. I must therefore abide by the Texas Disciplinary Rules of Professional Conduct, but I know that Professionalism requires more than merely avoiding the violation of laws and rules. I am committed to this Creed for no other reason that it is right.

**I.      OUR LEGAL SYSTEM.** A lawyer owes to the administration of justice personal dignity, integrity, and independence. A lawyer should always adhere to the highest principles of professionalism. I am passionately proud of my profession. Therefore, "My word is my bond." I am responsible to assure that all persons have access to competent representation regardless of wealth or position in life. I commit myself to an adequate and effective pro bono program. I am obligated to educate my clients, the public, and other lawyers regarding the spirit and letter of this Creed. I will always be conscious of my duty to the judicial system.

**II.     LAWYER TO CLIENT.** A lawyer owes to a client allegiance, learning, skill, and industry. A lawyer shall employ all appropriate means to protect and advance the client's legitimate rights, claims, and objectives. A lawyer shall not be deterred by any real or imagined

fear of judicial disfavor or public unpopularity, nor be influenced by mere self-interest. I will advise my client of the contents of this Creed when undertaking representation. I will endeavor to achieve my client's lawful objectives in legal transactions and in litigation as quickly and economically as possible. I will be loyal and committed to my client's lawful objectives, but I will not permit that loyalty and commitment to interfere with my duty to provide objective and independent advice. I will advise my client that civility and courtesy are expected and are not a sign of weakness. I will advise my client of proper and expected behavior. I will treat adverse parties and witnesses with fairness and due consideration. A client has no right to demand that I abuse anyone or indulge in any offensive conduct. I will advise my client that we will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party. I will advise my client that we will not pursue tactics which are intended primarily for delay. I will advise my client that we will not pursue any course of action which is without merit. I will advise my client that I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect my client's lawful objectives. A client has no right to instruct me to refuse

156698.01600/123639074v.1

reasonable requests made by other counsel. I will advise my client regarding the availability of mediation, arbitration, and other alternative methods of resolving and settling disputes.

### III.    LAWYER TO LAWYER.    A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings. Ill feelings between clients shall not influence a lawyer's conduct, attitude, or demeanor toward opposing counsel. A lawyer shall not engage in unprofessional conduct in retaliation against other unprofessional conduct. I will be courteous, civil, and prompt in oral and written communications. I will not quarrel over matters of form or style, but I will concentrate on matters of substance. I will identify for other counsel or parties all changes I have made in documents submitted for review. I will attempt to prepare documents which correctly reflect the agreement of the parties. I will not include provisions which have not been agreed upon or omit provisions which are necessary to reflect the agreement of the parties. I will notify opposing counsel, and, if appropriate, the Court or other persons, as soon as practicable, when hearings, depositions, meetings, conferences or closings are canceled. I will agree to reasonable requests for extensions of time and for waiver of procedural formalities, provided legitimate objectives of my client will not be adversely affected. I will not serve motions or pleadings in any manner that unfairly limits another party's opportunity to respond. I will attempt to resolve by agreement my objections to matters contained in pleadings and discovery requests and responses. I can disagree without being disagreeable. I recognize that effective representation does not require antagonistic or obnoxious behavior. I will neither encourage nor knowingly permit my client or anyone under my control to do anything which would be unethical or improper if done by me. I will not, without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety. I will avoid disparaging personal remarks or acrimony towards opposing counsel, parties and witnesses. I will not be influenced by any ill feeling between clients. I will abstain from any allusion to personal peculiarities or idiosyncrasies of opposing counsel. I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed. I will promptly submit orders to the Court. I will deliver copies to opposing counsel before or contemporaneously with submission to the court. I will promptly approve the form of orders which accurately reflect the substance of the rulings of the Court. I will not attempt to

gain an unfair advantage by sending the Court or its staff correspondence or copies of correspondence. I will not arbitrarily schedule a deposition, Court appearance, or hearing until a good faith effort has been made to schedule it by agreement. I will readily stipulate to undisputed facts in order to avoid needless costs or inconvenience for any party. I will refrain from excessive and abusive discovery. I will comply with all reasonable discovery requests. I will not resist discovery requests which are not objectionable. I will not make objections nor give instructions to a witness for the purpose of delaying or obstructing the discovery process. I will encourage witnesses to respond to all deposition questions which are reasonably understandable. I will neither encourage nor permit my witness to quibble about words where their meaning is reasonably clear. I will not seek Court intervention to obtain discovery which is clearly improper and not discoverable. I will not seek sanctions or disqualification unless it is necessary for protection of my client's lawful objectives or is fully justified by the circumstances.

**IV.  LAWYER  AND  JUDGE.**
Lawyers and judges owe each other respect, diligence, candor, punctuality, and protection against unjust and improper criticism and attack. Lawyers and judges are equally responsible to protect the dignity and independence of the Court and the profession. I will always recognize that the position of judge is the symbol of both the judicial system and administration of justice. I will refrain from conduct that degrades this symbol. I will conduct myself in court in a professional manner and demonstrate my respect for the Court and the law. I will treat counsel, opposing parties, the Court, and members of the Court staff with courtesy and civility. I will be punctual. I will not engage in any conduct which offends the dignity and decorum of proceedings. I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain an advantage. I will respect the rulings of the Court. I will give the issues in controversy deliberate, impartial and studied analysis and consideration. I will be considerate of the time constraints and pressures imposed upon the Court, Court staff and counsel in efforts to administer justice and resolve disputes.

❖❖❖

156698.01600/123659074v.1