## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LIVE WELL FINANCIAL, INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-11317 (LSS)<br><br>**Hearing Date: 3/26/2021 at 10:00 a.m. (ET)**<br>**Objections Due: 3/17/2021 at 4:00 p.m. (ET)** |

## MOTION OF THE CHAPTER 7 TRUSTEE PURSUANT TO FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT AGREEMENT BY AND AMONG THE TRUSTEE, MIRAE ASSET SECURITIES (USA) INC., AND ICE DATA PRICING & REFERENCE DATA LLC

David W. Carickhoff, in his capacity as the Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Live Well Financial, Inc. ("Live Well" or the "Debtor"), files this motion ("Motion") seeking entry of an Order authorizing and approving the *Settlement and Release Agreement* ("Settlement Agreement")[1] among the Trustee, on behalf of the Debtor's Estate, Mirae Asset Securities (USA) Inc. ("Mirae"), and ICE Data Pricing & Reference Data, LLC (together with its principals, successors, affiliates and assigns, "PRD"). A copy of the Settlement Agreement is annexed as Exhibit 1 to the Proposed Order attached hereto as Exhibit A. In support of the Motion, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

1.      The Trustee and Mirae have reached a global settlement with PRD that resolves the Estate's and Mirae's respective claims against PRD relating to PRD's publication of prices of certain HECM-IO (home equity conversion mortgage – interest only) bonds. The Parties have agreed to resolve all disputes among them pursuant to the terms of the Settlement Agreement. For the reasons

---

[1] Capitalized terms used but not defined in the Motion have the meanings ascribed to such terms in the Settlement Agreement.

125265846

set forth more fully below, the Trustee submits that the Settlement Agreement is in the best interests of the Estate and its creditors, is well within the range of reasonableness, and should be approved.

2.      The Settlement Agreement is the culmination of extensive arm's length negotiation, including a full-day mediation, between the Trustee, Mirae, and PRD.  The Settlement Agreement provides for a $29,000,000 cash payment to the Trustee to resolve potential claims against PRD held by the Estate and Mirae.  The Trustee believes the Settlement Agreement is reasonable for several reasons, including, among other things: (1) the Estate's and Mirae's claims are subject to defenses which create material risks for the success of their respective claims; (2) if litigated, the Estate and Mirae claims would both require lengthy and expensive trials and subsequent appeals in multiple venues, thereby delaying resolution of the bankruptcy case and distributions to creditors; and (3) the Settlement Agreement provides an immediate and substantial monetary recovery to the Estate for the benefit of all creditors.

## JURISDICTION

3.      The Court has jurisdiction over this matter under 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2).[2]  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief requested in this Motion are pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4.      On June 10, 2019 (the "Filing Date"), an involuntary bankruptcy petition under chapter 7 of the Bankruptcy Code was filed against Live Well in the United States Bankruptcy Court

---

[2]  The Trustee confirms his consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by this Court in connection with this Motion to the extent it is later determined this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

for the District of Delaware (the "Court").  Prior to ceasing operations, the Debtor was a financial services company that provided reverse mortgages and forward mortgages to customers, serviced mortgages, and traded in mortgage-backed securities.

5.      On July 1, 2019, the Court entered the Order for Relief.  On the same day, the Trustee was appointed by the Office of the United States Trustee for Region 3 as chapter 7 trustee of the Estate pursuant to Bankruptcy Code section 701(a).  The meeting of creditors in Live Well's chapter 7 case was held and concluded.

6.      On September 23, 2020, the Court entered the *Order Approving Motion of the Chapter 7 Trustee for Approval of Litigation Support and Alignment Agreement by and between David W. Carickhoff in his Capacity as Chapter 7 Trustee for the Estate of Live Well Financial, Inc. and Mirae Asset Securities (USA) Inc.* (the "Alignment Order"). [3]  The Alignment Order authorized, modified,  and approved the *Litigation Support and Alignment Agreement* between the Trustee and Mirae (collectively, with the Alignment Order, the "Alignment Agreement"). Under the Alignment Agreement, *inter alia*, the Trustee and Mirae agreed to coordinate their litigation efforts related to their respective claims and causes of action against certain identified targets (the "Aligned Claims"), including PRD, by, among other things, engaging the same special litigation counsel in connection with their investigation and pursuit of the Aligned Claims and sharing their associated costs and proceeds.  The Trustee and Mirae further agreed that all litigation proceeds derived from the Aligned Claims would be paid, in the first instance, to the Trustee, who would then make distributions in accordance with the waterfall defined in paragraph 4 of the Alignment Agreement.

7.      Shortly after the Court authorized and approved the Alignment Agreement, the Trustee, Mirae, and their respective professionals ramped up their investigation of the Estate's and

---

[3] Dkt. 256.

Mirae's potential claims against PRD.  Both sets of claims relate to PRD's potential liability with respect to the alleged massive bond price-fixing scheme (the "Price-Fixing Scheme") perpetrated by certain former directors, officers, and employees of Live Well—principally, Michael Hild, Eric Rohr, and Darren Stumberger (the "Culpable Insiders").

8.      Simply put, the Trustee believes the Culpable Insiders fraudulently inflated the values of the bonds in Live Well's portfolio (the "Live Well Bonds"), caused Live Well to incur significant liabilities by leveraging the bonds, through repurchase ("repo") agreements, based upon the inflated values, then caused Live Well to use the borrowed cash to pay themselves and purchase more bonds.  The Culpable Insiders then fraudulently inflated the values of Live Well's newly acquired bonds and repeated the process again and again.  Throughout this process, the Culpable Insiders dramatically grew the reported value of Live Well's bond portfolio from approximately $71 million in September 2015 to over $455 million by October 2018.  In reality, however, by October 2018, the value of Live Well's portfolio, the majority of which had been financed through repurchase agreements, was overstated by over $200 million.

9.      The execution of this scheme depended upon the Culpable Insiders' ability to manipulate the prices of the Live Well Bonds, to convince Live Well's lenders to agree to accept those prices to value the bonds and extend credit to Live Well based upon the fraudulently inflated bond prices.  To do this, the Culpable Insiders submitted prices for the Live Well Bonds to PRD, a well-respected securities pricing service, as "broker quotes."  PRD passed those prices along to its customers, including Mirae, with the designation of "single broker quoted" as part of its pricing service.  The Culpable Insiders then sought out repo lenders that would agree to use only the PRD-published prices to value the Live Well Bonds.  In this manner, the Culpable Insiders repeatedly caused Live Well to finance its bonds for more than they were worth and then used the excess cash to expand the portfolio and to line their own pockets.

10.     The Price-Fixing Scheme ultimately resulted in investigations by the U.S. Securities and Exchange Commission and the United States Attorney's Office for the Southern District of New York, criminal proceedings against the Culpable Insiders, and Live Well's collapse into bankruptcy, and caused Mirae, which provided financing to Live Well through repo agreements based upon inflated bond prices, and Live Well to suffer tens of millions of dollars in damages.

11.     Shortly after the approval of the Alignment Agreement and the engagement of special litigation counsel, the Trustee, Mirae, and PRD, along with another third-party lender and Live Well creditor with potential claims against PRD, Flagstar Bank, FSB, entered into a tolling agreement and agreed to participate in a good-faith effort to resolve their respective disputes on a pre-suit basis.  To that end, the parties also agreed to a process, culminating in a four-party mediation, whereby they would exchange relevant information and the Trustee and Mirae would provide PRD with draft complaints detailing their claims.

12.     Through their investigation, which included the review of thousands of documents, voluntary disclosures from PRD, witness interviews, and financial analysis, the Trustee and Mirae discovered sufficient information for each to assert several claims against PRD.  In particular, and in the context of these pre-suit discussions, the Trustee asserted claims against PRD, on behalf of the Estate, for (1) aiding and abetting the Culpable Insiders' fraud; and (2) aiding and abetting the Culpable Insiders' breaches of fiduciary duty.  Based upon preliminary analysis performed by the Trustee and his professional advisors, the Trustee asserted that the total harm suffered by Live Well, and for which PRD was liable, was approximately $90 million.  Similarly, Mirae asserted claims for damages against PRD of approximately $29 million for (1) fraud; (2) negligent misrepresentation; and (3) aiding and abetting the Culpable Insiders' fraud.

13.     PRD vigorously disputes these claims and that it has any liability whatsoever.  For example, PRD maintains that it neither knew, nor should have known, of the Price-Fixing Scheme

or that PRD had any reason to know that any of its customers had entered into arrangements with Live Well to finance Live Well Bonds, much less agreed to use PRD's published prices to set the values of the bonds.  In support of this, PRD points to allegations made by the United States Attorney's Office in its criminal complaint against Hild that the Price-Fixing Scheme was hidden from PRD.

14.    Moreover, PRD maintains that the prices it published for the Live Well Bonds were always clearly labelled as "single broker quotes," which, pursuant to its disclosures, designates such a price as a pass-through from, among other things, market-makers, and for which PRD disclaims all responsibility.  As a result, PRD asserts, it did not make, and could not have made, any material misrepresentations—negligently or fraudulently—regarding the prices of the Live Well Bonds. During its discussions with the Trustee and Mirae, PRD relied upon numerous documents in support of this argument, including screen shots of the pricing service portal showing the "single broker quoted" designation on the Live Well bonds and its public disclosures detailing the meaning of that designation.

15.    In addition to these defenses, PRD also asserted that (1) the Estate's claims are barred by the *in pari delicto* doctrine; and (2) that the Trustee's alleged damages are speculative and unprovable.

16.    On January 14, 2021, the parties participated in a full-day virtual mediation with a New York-based JAMS mediator, serving as the neutral.  In advance of the mediation, the parties exchanged extensive briefing with voluminous exhibits, setting forth their respective factual and legal positions, and engaged in numerous conversations regarding their respective positions and the documents and information upon which those positions were based.  Although the parties were unable to resolve their dispute during the mediation, the parties continued their settlement discussions through counsel over the next several weeks.  Ultimately, after extensive good faith and

arm's length negotiations, the Trustee, Mirae, and PRD agreed to resolve their dispute under the

terms reflected in the Settlement Agreement.

## SUMMARY OF PROPOSED SETTLEMENT

17.    In addition to usual and customary settlement terms, the material terms[4] of the

Settlement Agreement include the following:

a.    Court Approval.  The Settlement Agreement is subject to the approval of this Court pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Approval Order").

b.    Effective Date.  The Settlement Agreement will be become effective (the "Effective Date") upon the expiration of the time to appeal or move for reconsideration of the Approval Order if no appeal is taken or motion filed, or upon the conclusion of all appeals and denial of all motions.

c.    Settlement Payment.  Within five (5) business days of the Effective Date, PRD shall pay the total amount of $29,000,000 by wire transfer to the Trustee.

d.    Release of the Trustee's Claims Against PRD.  In consideration of PRD's obligations and releases under the Settlement Agreement, the Trustee, for the Live Well bankruptcy estate, its agents, attorneys, employees, officers, directors, shareholders, assigns, and affiliates, irrevocably and unconditionally releases and discharges PRD, its past and present officers, directors, shareholders, agents, insurers and reinsurers, attorneys, predecessors, affiliates and employees, and each of their respective successors, assigns, heirs and representatives (collectively, the "PRD Released Persons"), from any and all claims, rights, demands, injuries, debts, liabilities, omissions, accounts, contracts, agreements, causes of action, suits and damages whatsoever, in law or equity, and whether based on contract, tort, or otherwise, known or unknown, suspected or unsuspected, of every kind and nature, which the Live Well bankruptcy estate, or its, affiliates, successors, assigns, heirs, and representatives at any time had, now have, or hereafter can or may have against PRD for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this release, concerning, related to, arising out of, or arising from the dispute or PRD's relationship with Live Well.  Notwithstanding the foregoing, this release does not release PRD from its representations and obligations under

---

[4]  In the event of any inconsistency between the description of the Settlement Agreement contained in this Motion and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall govern and control.

this Settlement Agreement or any other contractual relationship between the Parties.

e.   Release of Mirae's Claims Against PRD.   In consideration of PRD's obligations and releases under this Settlement Agreement, Mirae, for itself, and each of its respective agents, attorneys, employees, officers, directors, shareholders, assigns, and affiliates, irrevocably and unconditionally releases and discharges the PRD Released Persons from any and all claims, rights, demands, injuries, debts, liabilities, omissions, accounts, contracts, agreements, causes of action, suits and damages whatsoever, in law or equity, and whether based on contract, tort, or otherwise, known or unknown, suspected or unsuspected, of every kind and nature, which Mirae, or its affiliates, successors, assigns, heirs, and representatives at any time had, now have, or hereafter can or may have against PRD for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this release, concerning, related to, arising out of, or arising from the dispute or PRD's relationship with Live Well.   Notwithstanding the foregoing, this release does not release PRD from its representations and obligations under this Settlement Agreement or any other contractual relationship between Mirae and PRD.

f.   PRD's Release.  In consideration of the Trustee's and Mirae's respective obligations and releases under this Settlement Agreement, PRD, for itself, and each of its agents, attorneys, employees, officers, directors, shareholders, assigns, and affiliates, irrevocably and unconditionally releases and discharges each of the Trustee, the Live Well bankruptcy estate, and Mirae, and each of their respective past and present officers, directors, shareholders, agents, insurers and reinsurers, attorneys, predecessors, affiliates and employees, and their respective successors, assigns, heirs, and representatives, from any and all claims, rights, demands, injuries, debts, liabilities, omissions, accounts, contracts, agreements, causes of action, suits and damages whatsoever, in law or equity, and whether based on contract, tort, or otherwise, known or unknown, suspected or unsuspected, of every kind and nature, which PRD, or its affiliates, successors, assigns, heirs, and representatives at any time had, now have, or hereafter can or may have against the Trustee or Mirae for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this release, concerning, arising out of, or arising from the dispute or PRD's relationship with Live Well, including but not limited to any claims made in the Bankruptcy Case.   Notwithstanding the foregoing, this release does not release the Trustee or Mirae from its representations and obligations under this Settlement Agreement or any other contractual relationship between Mirae and PRD.

g.   Discovery Demands.  Mirae and the Trustee withdraw, with prejudice, any and all pending discovery demands of all PRD Released Persons made pursuant to Federal Rule of Bankruptcy Procedure 2004.   Notwithstanding

the foregoing, if requested, PRD agrees to cooperate in connection with reasonable requests for information by the Trustee in connection with other proceedings in the Bankruptcy Case, provided that such requests seek information that is not already in the possession, custody or control of the Trustee or otherwise accessible to the Trustee through less burdensome means.

h.    <u>Non-Disparagement.</u>  The Trustee, Mirae, and PRD further agree that, unless required to do so by legal process, none of the Parties, including any of their respective officers, directors, managers, or employees, will make any disparaging statements or representations, either directly or indirectly, whether orally or in writing, by word or gesture, or through their agents, to any person whatsoever, about the other Party or the other Party's officers, directors, managers, or employees.  For purposes of this paragraph, a disparaging statement or representation is any communication which, if publicized to another, would cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character, or product quality of the person or entity to whom the communication relates; provided, however, that no statement or representation contained within any pleading filed by the Trustee in connection with the Bankruptcy Case shall be deemed a "disparaging statement or representation" pursuant to this paragraph unless such statement or representation specifically alleges that PRD acted negligently, recklessly or willfully, or otherwise knew or should have known of any wrongful act perpetrated by any person purporting to act on behalf of Live Well.

## <u>RELIEF REQUESTED AND BASES THEREFOR</u>

18.    By this Motion, the Trustee respectfully requests entry of an order, substantially in the form annexed hereto as Exhibit A, authorizing and approving the Settlement Agreement, a copy of which is annexed as Exhibit 1 to the proposed order.

19.    Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estates, and providing for the efficient resolution of bankruptcy cases.  *See In re Martin*, 91 F.3d 389, 393 (3rd Cir. 1996); *accord Will v. Next Proteins, Inc. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).  To achieve these results, Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve a settlement or compromise by the trustee after notice and a hearing.  *See* Fed. R. Bankr. P. 9019(a); *see also* 11 U.S.C. § 105(a) (empowering

the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code).

20.     In applying this rule, a bankruptcy court should approve a settlement if it is "fair and equitable" and "in the best interest of the estates". *In re Capmark Fin. Group Inc.*, 438 B.R. 471, 514 (Bankr. D. Del. 2010); *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Grp., Inc.)*, 336 B.R. 87, 93 (Bankr. D. Del. 2005), *aff'd*, No. 05-828-SRL, 2006 WL 2842462 (D. Del. 2005).  To properly make this determination, the court "must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate." *Key3Media*, 336 B.R. at 92 (quoting *Martin*, 91 F.3d at 393).

21.     The United States Court of Appeals for the Third Circuit has provided four criteria a bankruptcy court should consider in approving a settlement: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of creditors.  *See Martin*, 91 F.3d at 393.  When applying these four criteria to the facts of a particular case, a court "is not supposed to have a mini-trial on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Key3Media Group*, 336 B.R. at 93; *In re Nortel Networks, Inc.*, 522 B.R. 491, 509 (Bankr. D. Del. 2014) (approving settlement under the *Martin* factors); *In re Capmark Fin. Group Inc.*, 438 B.R. 471, 514 (Bankr. D. Del. 2010) (same).  The court does not have to be convinced the settlement is the best possible compromise.  Rather, the court must conclude the settlement is "within the reasonable range of litigation possibilities." *See In re World Health Alt., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (internal citation omitted).

22.     The Trustee submits the terms of the Settlement Agreement fall well within this range of reasonableness and, accordingly, the Settlement Agreement should be approved.  Indeed, the *Martin* factors weigh strongly in favor of approval of the Settlement Agreement.

23.     First, the probability of the ultimate success of the Trustee's and Mirae's claims against PRD is uncertain.  For example, large portions of the Trustee's claimed damages are based upon the lost profits of the Debtor's legitimate business operations which will require a battle of the experts to prove and the Estate's claims face certain affirmative defenses asserted by PRD. Although Mirae's claims against PRD are not subject to the same defenses, Mirae nevertheless faces substantial litigation risks.  To succeed on its claims, Mirae would have to overcome, among other things, PRD's arguments that it properly disclosed the nature and source of the prices it published for the Live Well Bonds and that it expressly disclaimed all responsibility for the accuracy of those prices.  PRD would also likely assert a host of contract-based defenses to Mirae's claims.  Although the Trustee and Mirae believe they would ultimately prevail on their respective claims against PRD, a substantial risk remains that PRD could succeed with its defenses, that the Estate's damages are significantly less than the Trustee asserts, and that Mirae could not have reasonably relied upon the PRD published prices.

24.     Second, litigating the Trustee's and Mirae's claims will be a complex, lengthy, and expensive process. In the absence of the proposed Settlement Agreement, the Trustee and Mirae would need to engage in costly and time-consuming litigation, likely on multiple fronts—Mirae's claims would likely be brought in New York while the Trustee's claims would likely proceed in Delaware—to resolve the claims.  These separate proceedings potentially could result in inconsistent rulings or outcomes.  Furthermore, both sets of claims raise difficult questions regarding the true market prices of the relatively illiquid Live Well Bonds at various points in time which will require costly expert analysis and testimony to determine.  Moreover, even if the Trustee proves liability,

the extent of the Estate's damages is uncertain, and proving damages will similarly require significant, and expensive, expert analysis and testimony.  These issues will likely not be ripe for decision on dispositive motions, thereby requiring a lengthy, expensive trial, and possibly subsequent appeal.  In the meantime, resolution of the Bankruptcy Case and any distributions to creditors will be delayed and will remain uncertain.

25.    Third, the paramount interest of Debtor's creditors will be best served by the Settlement Agreement.  The proposed Settlement Agreement avoids the substantial risks, costs, and delays of litigation while bringing substantial value into the Estate.  Among other things, the Settlement Agreement provides an immediate and substantial monetary recovery on both the Trustee's and Mirae's claims and creates important liquidity for the benefit of all creditors and claimants.  Finally, although PRD appears to have sufficient assets to pay any judgment that either the Trustee or Mirae could reasonably obtain through litigation, there is execution risk associated with the collection of any judgment and appellate risks, including significant delays in collection and the potential for any judgment obtained to be reduced or overturned.

26.    Thus, all of the relevant factors support approval of the Settlement Agreement.  The Trustee, therefore, respectfully submits that the Settlement Agreement is fair, reasonable, and in the best interest of the Estate and its creditors and should be authorized and approved.  After entry of the proposed form of order approving the Settlement Agreement, and the fulfilment of obligations thereunder, the Trustee and Mirae shall take such acts as authorized by the Alignment Agreement, including, without limitation, the distribution of Mirae Net Litigation Proceeds (as defined in the Alignment Agreement) by the Trustee to Mirae.

## RESERVATION OF RIGHTS

27.     Except as expressly set forth in this Motion or in the Settlement Agreement, the Trustee, on behalf of himself and the Estate, Mirae, and PRD each expressly reserve all rights, claims, counterclaims, defenses, and arguments.

## NOTICE

28.     Notice of this Motion has been provided to the following parties or their respective counsel, if any: (i) the Office of the United States Trustee, (ii) Mirae, (iii) PRD, and (iv) all parties that have requested pursuant to Bankruptcy Rule 2002 to receive notice in this case.  The Trustee submits, in light of the nature of the relief requested, no further notice is necessary or required.

29.     No prior request for the relief requested in this Motion has been made to this Court or to any other court.

30.     The Trustee submits this Motion does not present novel issues of law requiring the citation to any authority, other than the statutes and rules cited above, and, accordingly, submit no separate memorandum of law is necessary.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter the Proposed Order annexed as Exhibit A to this Motion (1) authorizing and approving the Settlement Agreement annexed as Exhibit 1 to the Proposed Order, and (2) granting the Trustee such other and further relief as the Court deems appropriate under the circumstances.

Dated: March 3, 2021          **BLANK ROME LLP**
      Wilmington, Delaware

/s/ Stanley B. Tarr
Stanley B. Tarr (DE No. 5535)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:   (302) 425-6400
Facsimile:   (302) 425-6464
Email:   Tarr@BlankRome.com

-and-

Michael B. Schaedle (admitted *pro hac vice*)
Michael D. Silberfarb (admitted *pro hac vice*)
One Logan Square
130 North 18th Street
Philadelphia, Pennsylvania 19103
Telephone:   (215) 569-5500
Facsimile:   (215) 569-5555
Email:   Schaedle@BlankRome.com
        MSilberfarb@BlankRome.com

*Co-Counsel to the Chapter 7 Trustee*

and

Gregory S. Schwegmann (*pro hac vice*)
REID COLLINS & TSAI LLP
1301 S. Capital of Texas Hwy., C-300
Austin, TX 78746
Telephone:   (512) 647-6100
Facsimile:   (512) 647-6129
Email:   gschwegmann@reidcollins.com

-and-

Eric D. Madden (*pro hac vice*)
1601 Elm Street, Suite 4200
Dallas, TX  75201
Telephone:   (214) 420-8900
Facsimile:   (214) 420-8909
Email:   emadden@reidcollins.com

*Special Counsel to the Chapter 7 Trustee*