UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | . | Chapter 7 |
| IN RE: | . | |
| | . | Case No. 19-11317(LSS) |
| LIVE WELL FINANCIAL, INC., | . | |
| | . | |
| | . | 824 Market Street |
| | . | Wilmington, Delaware 19801 |
| Debtor. | . | |
| . . . . . . . . . . . . . . . | . | Thursday, December 18, 2025 |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Chapter 7
Trustee:                        Stanley B. Tarr, Esq.
                                BLANK ROME, LLP
                                1201 North Market Street
                                Suite 800
                                Wilmington, Delaware 19801

                                Bryan J. Hall, Esq.
                                CHIPMAN, BROWN, CICERO
                                 & COLE, LLP
                                Hercules Plaza
                                1313 North Market Street
                                Suite 5400
                                Wilmington, Delaware 19801

                                Gregory S. Schwegmann, Esq.
                                REID, COLLINS & TSAI, LLP
                                1301 South Capital of Texas
                                 Highway, Suite C300
                                Austin, Texas 78746

(Appearances Continued)

Audio Operator:                 Electronically Recorded
                                by Brandon J. McCarthy, ECRO

Transcription Company:          Reliable
                                1007 N. Orange Street
                                Wilmington, Delaware 19801
                                (302)654-8080
                                Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:  (Continued)

For VACU Resolution, LLC:    Ricardo Palacio, Esq.
                            ASHBY & GEDDES, PA
                            500 Delaware Ave, Suite 8
                            Wilmington, Delaware 19801

APPEARANCES VIA ZOOM:  (On the Record)

For VACU Resolution, LLC:    Robert H. Chappell, III, Esq.
                            SPOTTS, FAIN, CHAPPELL
                             & ANDERSON, PC
                            411 East Franklin Street
                            Suite 600
                            Richmond, Virginia 23219

Also Appearing:             Michael Hild, *Pro Se*

                            Laura Hild, *Pro Se*

INDEX

|  | PAGE |
|---|---|
| Motion Requesting Order of Clarification [D.I. 577; filed July 31, 2025] | 4 |
| Colloquy Re:  Hild Litigation | 38 |
| Fee Applications | 41 |

(Proceedings commence at 10:32 a.m.)

(Call to order of the Court)

THE COURT:  Please be seated.

Mr. Tarr.

MR. TARR:  Good morning, Your Honor.  Stanley Tarr from Blank Rome on behalf of David Carickhoff as Chapter 7 Trustee for the Live Well estate.

I'm joined here today with co-counsel Bryan Hall from the Chipman Brown firm, as well as Greg Schwegmann from Reid Collins.

MR. SCHWEGMANN:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. TARR:  Your Honor, there are three matters on for hearing today, the first of which is Mr. Hild's motion. Unless you have any specific questions from me, I will cede the podium now.

THE COURT:  No, I do not.

MR. TARR:  Thank you.

THE COURT:  This is Mr. Hild's motion.

Mr. Hild.

MR. HILD:  Good morning, Your Honor.  Michael Hild, appearing *pro se* for myself, and joining me is Laura Hild, regarding the motion for clarification.

We understand the Court has limited today's hearing to oral argument, and so we are prepared to proceed

accordingly, Your Honor.

THE COURT:  Yes.  And in particular, Mr. Hild, I want to know specifically what you want me to do when you get to that part.

MR. HILD:  Understood, Your Honor.  Thank you.

At the outset, Your Honor, in order to avoid any confusion on that point, the proposed order included with our reply is the operative request before the Court.  It reflects a narrowed clarification after considering the responses, and it focuses only on what the settlement order does not do.  This is a narrow motion for clarification of the Court's February 14th, 2024 settlement order.

We are not asking the Court to modify the order, revisit settlement approval, adjudicate ownership, or decide the merits of any claim.  What we are asking the Court to clarify is two limits of its order:

First, that the settlement order does not adjudicate ownership of any surplus proceeds before a merits judgment;

And second, that the settlement order does not require interpleader, escrow, or similar cash restraint before a merits judgment.

In terms of why clarification is needed, the motion was filed because, in response to the trustee's threatened litigation in surplus proceeds, VACU and VRL began taking the

position that any surplus must be deposited or interpleaded as a condition of sale.  And that position does not arise from the text in the settlement order; it arises from the uncertainty about what the order does and does not do.  The reply narrows the relief accordingly.  We're asking only for clarification of the order's limits, which only this Court can provide.

The record also shows that CHV, Church Hill Ventures, affirmatively proposed a prompt sale, including as late as June 2025, per reply Exhibit F, and VRL agreed to proceed with sale on July the 1st.  See Reply Exhibit B.

The stall, unfortunately, arose only after the trustee asserted a competing claim to surplus proceeds, which VACU acknowledged internally, per Reply Exhibit C.

Clarification prevents that sequence from being misread as a prejudgment restraint imposed by this Court.

Briefly, Your Honor, regarding standard, Michael Hild, myself, has standing as a guarantor because I'm experiencing ongoing, concrete injury from delay.  The guaranteed loan continues to compound interest accruing daily and my credit is being damaged while the sale remains stalled between -- based on how the order is being interpreted.

With respect to Laura Hild, she has standing because, unlike a guarantor, she has not assumed liability; yet, the settlememt order is being interpreted to justify

conditioning the sale on her own consent to escrow or interpleader and threatening litigation, and she does not agree, all before any finding of liability.

In terms of a brief comment related to the consistency about the *lis pendens* ruling, Your Honor's recent *lis pendens* ruling confirms that entitlement remains un-adjudicated, it must be resolved on the merits.  This motion is consistent with that ruling.  The *lis pendens* preserves notice; it doesn't impose a cash restraint.  Likewise, the settlement order preserved rights; it did not compel interpleader or escrow before adjudication.

So, in conclusion, Your Honor, unless the Court has questions, those are the limits of the clarification we're requesting.  We're not -- we're not asking this Court to decide ownership, impose escrow, or adjudicate merits, only to clarify what its order does not do.

THE COURT:  Thank you.

MR. HILD:  Thank you, Your Honor.

THE COURT:  Thank you.

Who is going to respond?

MR. PALACIO:  Good morning, Your Honor.  May it please the Court, Ricardo Palacio of Ashby & Geddes, here on behalf of VACU.

Your Honor, Robert Chappell from Spotts Fain is on, he's been admitted *pro hac*, I was going to just introduce you

8

to him; and, if you will, Your Honor, he's going to handle the argument today.

THE COURT:  Mr. Chappell.

MR. CHAPPELL:  Good morning, Your Honor.  May it please the Court, Robert Chappell, appearing on behalf of VACU Resolution, LLC, which I will refer to as "VRL."

And as Your Honor probably saw, we raised a number of what I will call "technical issues" in our pleadings, including standing, the *pro se* representation of corporate litigants, and Rule 59 and 60 modification of orders.  And while we believe those arguments are well founded, and we do affirm then, nevertheless, I want, unless the Court has specific questions, to focus on a couple of practical issues:

First, I'd like to note a procedural issue for the Court.  Attached to the Hild's reply at Docket Number 606 are some correspondence that constitute Rule 408 confidential settlement communications among VRL and the Hild Entities and their counsel.  We don't think they should have been attached to the motion.  We're not going to object; however, we are reserving our right to comment on them in argument.

And so, with that being said, I'm going to go on to the -- some of the practical issues.  The most practical of all, of course, is we don't know if there will be a surplus from the sale of these properties.

Second, and for reasons identified in Your Honor's

recent opinion on the *lis pendens* issue, the LWF Trustee's claims to a constructive or resulting trust --

THE COURT: Uh-uh.

MR. CHAPPELL: -- do create an interest in and a cloud on the title to the receivership properties.

THE COURT: Let me --

MR. CHAPPELL: That cloud --

THE COURT: Let me stop --

MR. CHAPPELL: -- on title --

THE COURT: -- you there. Let me stop you there because I went back and read the transcript of the hearing on the settlement and specifically looked at the three categories of properties. And my understanding and the representations to the Court were that the properties that are the -- that the Virginia Credit Union had the lien on were not *lis pendens* properties.

MR. CHAPPELL: That's correct.

THE COURT: So how --

MR. CHAPPELL: That's --

THE COURT: -- is there --

MR. CHAPPELL: -- absolutely --

THE COURT: -- a cloud --

MR. CHAPPELL: -- correct.

THE COURT: -- on those properties, which are not *lis pendens* properties?

MR. CHAPPELL:  Yeah, the cloud is the filing of the complaint that asserts that monies looted from Live Well Financial went into those properties and were paid to VACU, at that time, the credit union.  And so that creates a creditors rights issue cloud.

And if the Court looks at the Kepley declaration, which was attached to our pleading, the Court will see the interchange between Mr. Kepley, the foreclosure trustee, and Fidelity Title, regarding obtaining a tittle assurance -- insurance commitment.

THE COURT:  But --

MR. CHAPPELL:  And Fidelity --

THE COURT:  But you have -- but you have settled, the Virginia Credit Union has settled with the trustee.

MR. CHAPPELL:  Correct.

THE COURT:  And so how is there a cloud --

MR. CHAPPELL:  Well, the --

THE COURT:  -- over these --

MR. CHAPPELL:  The --

THE COURT:  -- properties, which are not *lis pendens* properties?

MR. CHAPPELL:  The settlement removes the cloud, Your Honor.

THE COURT:  Okay.

MR. CHAPPELL:  The settlement --

THE COURT:  It removed --

MR. CHAPPELL:  -- removed --

THE COURT:  -- the cloud.  So what is the --

MR. CHAPPELL:  Right.

THE COURT:  What is the title company's problem?

MR. CHAPPELL:  Well, the concern here is a condition of the settlement was the agreement that any surplus -- which, by definition, was a disputed asset -- Church Hill Ventures and the Hilds claim it and the Live Well Trustee claims it by virtue of his complaint, so it is a disputed race.

THE COURT:  No, he doesn't --

MR. CHAPPELL:  And --

THE COURT:  -- by the virtue of his complaint. His complaint only goes to the *lis pendens* properties, that's it.

MR. CHAPPELL:  No, Your Honor.

THE COURT:  Yes.

MR. CHAPPELL:  Well, I don't --

THE COURT:  Yes.  It only goes --

MR. CHAPPELL:  Okay.

THE COURT:  -- to those properties that have been specifically traced, and they were identified.  And those are the ones on which the *lis pendens* have been filed.  They haven't been filed on these other properties.

MR. CHAPPELL:  Well, I understand all of that, Your

Honor.  And -- but there -- the cloud on title is the complaint.  The *lis pendens* puts parties on notice of the complaint.  But if you go back and look at the settlement agreement, the trustee -- it recites in the recitals that the trustee asserted that he had claims against VACU because monies that came from Live Well, he asserts wrongfully, were paid to VACU, either in the form of down payment or loan payments.

THE COURT:  And that's been settled.

MR. CHAPPELL:  And we entered -- well, I'm sorry. Go ahead, Your Honor.

THE COURT:  That's been settled.

MR. CHAPPELL:  Well, it is being settled by the settlement agreement that Mr. Hild is seeking to alter by this motion.

THE COURT:  No, he's not.  He is not seeking to alter it --

MR. CHAPPELL:  Well --

THE COURT:  -- but this motion.

It was told to me that these properties were not part of the *lis pendens*, there was no *lis pendens* against them.

It was told to me that the law required the interpleader.  I did not permit it, approve it, sanction it, et cetera.

And I'm concerned that --

MR. CHAPPELL:  Well --

THE COURT:  -- this settlement, which was only between the trustee and Virginia Credit Union, is being used improperly.  I'm concerned --

MR. CHAPPELL:  But Your Honor --

THE COURT:  -- about that.

MR. CHAPPELL:  I can assure you it's not.  And if I could proceed, I, perhaps, can shed some light on that.

THE COURT:  Okay.

MR. CHAPPELL:  So, as we have said, and again, if the Court looks at the Kepley declaration, the Court will see that Mr. Kepley reached out to Fidelity Title to obtain title insurance.  He was advised that Fidelity had red-flagged this property, the receivership properties, not the *lis pendens* properties, it had red-flagged the receivership property because of the pendency of the trustee's complaint and the risk that any purchaser would be brought into creditors rights litigation by the Live Well Trustee because of the asserted claims of a constructive or resulting trust.  And that was something that had to be clarified, in order to obtain title insurance.  Fidelity approved the order that Your Honor entered.

At the end of the day, we will be in a position where our -- if there is a surplus, we will be in a position

14

where Mr. Kepley, our trustee, is holding property that is subject to multiple claims:  One claim is -- one claim is from the Hilds and one claim is from the Live Well Trustee.

It is incorrect to say that the settlement agreement that we reached waives the trustee's claims as to any surplus.  It specifically preserves those claims and the claims of the Hilds.  And that is why that -- those funds need to be interpled, Your Honor.

And we have cited the Court to Virginia Code Section 8.01-364:

"Whenever any person is or may be exposed to multiple liability through the existence of claims by others to the same property or fund held by him or on his behalf, such person may file a pleading and require such parties to interplead their claims.   It is not [a] ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another" --

And so, in this proceeding, the guts of the settlement agreement between the Live Well Trustee and VACU is this:

VACU is paying money to the Live Well Trustee.

It is receiving a general release and also an

acknowledgment of the primacy of its liens as to the receivership property.

But a specific provision is, because the claims of the Live Well Trustee and the Hilds, as to any surplus, has not been adjudicated, it must be interpled or, otherwise, it puts our foreclosure trustee in the impossible position of holding funds to which two parties make a claim, and he does not have to make that choice, he is allowed to interplead those funds.

THE COURT:  Well, he can interplead them, but that doesn't answer the question.  He may -- I don't -- I'm not giving him any advice as to what he should be doing.  He needs to be doing and foreclosing appropriately.

And I don't know --

MR. CHAPPELL:  Of course.

THE COURT:  -- whether interpleading is appropriate or not.  I didn't bless it; I didn't not bless it.  He's doing what he thinks he should be doing.  But those properties -- but I'm trying to understand why he thinks he -- he's got a -- he's got a release, he's got a settlement.  He's --

MR. CHAPPELL:  But --

THE COURT:  -- got a --

MR. CHAPPELL:  But --

THE COURT:  -- settlement.

MR. CHAPPELL:  If Your Honor please, there is a settlement, there is a settlement, but a term of the settlement is the trustee still has his claims to a surplus, and they will be interpled for adjudication of the competing claims of the trustee and the Hilds.

THE COURT:  Well, where is the -- okay.  So he interpleads, and then the -- and then he's out.

MR. CHAPPELL:  He interpleads.  The -- we would -- what would happen is a suit would be filed.  It would name all known claimants; it would -- for example, it would name the Live Well Trustee.  And as Your Honor knows, you granted relief from stay for the purpose of avoiding the Barton Doctrine issues with naming a trustee in a foreign forum other than the one in which he has been appointed.

THE COURT:  Yes.  But I --

MR. CHAPPELL:  You named --

THE COURT:  -- didn't --

MR. CHAPPELL:  -- the Live Well --

THE COURT:  -- bless --

MR. CHAPPELL:  -- Trustee --

THE COURT:  -- doing that.  I just gave relief from stay to permit it, if it needs to be done; I didn't bless it --

MR. CHAPPELL:  But --

THE COURT:  -- the doing --

MR. CHAPPELL:  But Your Honor --

THE COURT:  -- of it.

MR. CHAPPELL:  -- the settlement agreement provides that the funds will be interpled and that the claims of all parties are preserved.

THE COURT:  So then the Hilds can go in and say dismiss the interpleader because it's inappropriate.

MR. CHAPPELL:  And the trustee can come in and say don't dismiss it because I have these claims.

THE COURT:  Okay.

MR. CHAPPELL:  So that is the essence of the settlement agreement.  And I'm sorry, you know, there's the -- Your Honor, I'm sure, is familiar with the old saw that a camel is a horse designed by a committee.  That settlement agreement was the product of heavy negotiation.

THE COURT:  But what I'm --

MR. CHAPPELL:  I believe --

THE COURT:  -- concerned about -- I get that.

MR. CHAPPELL:  Okay.

THE COURT:  What I'm concerned about is:  If the trustee could have traced these proceeds to the properties that are being foreclosed on, the trustee would have done that and put it in the complaint, and they didn't.  He didn't.

MR. HALL:  Your Honor?

THE COURT:  And so we're reaching beyond what my understanding -- now that I have one -- if the *lis pendens* doctrine in Virginia is:  To encumber funds on properties that haven't even been alleged to be traced, traceable to those properties.  And I have that concern, that my order somehow will be used to say that this complaint says something -- before me says something that it does not.

MR. CHAPPELL:  Well, Judge, I can only tell you that we believed and understood from the trustee that he asserted that he could trace funds that came from Live Well straight into these properties by way of down payments and payments that were made to Virginia Credit Union.

THE COURT:  Well, that's why --

MR. CHAPPELL:  And --

THE COURT:  -- I clarified.  During the settlement, we went through, and it was represented, it's in the transcript that these are not *lis pendens* properties.

MR. HALL:  Your Honor?

MR. CHAPPELL:  And they're not.  But that doesn't mean the trustee didn't assert he could trace funds into them.

THE COURT:  Then why didn't file a *lis pendens* on them?

MR. HALL:  Your Honor, if I may?

THE COURT:  Yes.

19

MR. HALL:  Bryan Hall of Chipman Brown for David Carickhoff, the Chapter 7 Trustee.

I apologize to Your Honor, to mister -- to yourself, Your Honor, and Mr. Chappell, but I'd like to try to clarify a couple of points.  So -- and I apologize.  If you do not have a copy of the complaint, it's at Docket Item 1 in the adversary proceeding.

But as one of the attorneys who worked on that complaint, it does allege that there are in excess of 30 properties.  The trustee traced the debtor's money into each of those properties.  And those properties, some of them there's a *lis pendens* against, some of them are subject to VACU liens, and some of them are involved in a foreclose -- a preliminary order of forfeiture in New York.

THE COURT:  Correct.

MR. HALL:  So the trustee has alleged as to all of those.  We only filed the *lis pendens* against the properties that were not in the government bucket or in the VACU bucket.

THE COURT:  Well --

MR. HALL:  But the settlement contemplated that, essentially, VACU could proceed with its foreclosure, which I understand it's attempting to do, and that the trustee is not standing in the way of that, right?  And the trustee's claims against VACU have been settled in exchange for a settlement payment.  And so that process should be allowed to continue,

as Your Honor contemplated, in Virginia, and --

THE COURT:  I didn't contemplate anything.

MR. HALL:  For the --

THE COURT:  I approved a settlement --

MR. CHAPPELL:  Yeah.

THE COURT:  -- between Virginia Credit Union and the trustee.

MR. HALL:  Yes, Your Honor.

THE COURT:  I didn't bless what happens with the surplus.  I didn't bless anybody's claims against the surplus.

MR. CHAPPELL:  Right.

THE COURT:  And I'm not getting -- though I don't think I have to -- the trustee's strategy of not filing a *lis pendens* when it thinks it has a right to certain property.

But I do want to make sure that my settlement order -- which I thought was clear, quite frankly -- is not being misused.  So let's take a look at the order that's been submitted in the reply.

MR. CHAPPELL:  In which pleading, Your Honor?  I'm sorry.

THE COURT:  In the reply.  I think it's 606.

MR. CHAPPELL:  Okay.  Thank you, Your Honor.

THE COURT:  Mr. HIld, is that the --w ell, you may not know.  There was a -- I know I had the first order.  Now

you say there's a second order in your reply, which was filed December 15?

MR. HILD:  Yes, Your Honor.  It was the proposed order attached to the reply. I think it was -- unfortunately, because we don't have electronic filing, we had to mail it and I -- we're looking up the actual D.I. number right now, but it was just entered, I believe, on Monday morning -- or excuse me -- Tuesday, if I'm not mistaken.

THE COURT:  So I'm looking at Docket 606.

MR. TARR:  And -- yeah.  If I may, Your Honor? It's Page 11 of 43, at the top.

MR. HALL:  It's in Tab L of the binder.

MR. TARR:  Yeah.

(Pause in proceedings)

THE COURT:  Okay.  Tell me what concerns you have about this order.

MR. HALL:  Sure.  And I think, Your Honor, from the trustee's perspective, we think that the concerns that the Hilds expressed, which were raised and addressed at the January 2024 hearing, are -- have been already contemplated and accounted for in the order that Your Honor entered back in February of 2024.

So there are specific provisions in there, particularly in Paragraphs 2 and 5 of the order filed at docket item five -- or sorry -- entered at Docket Item 518, I

believe making very clear that the Court is not taking a position on anything related to any future interpleader, anything that's going on in Virginia. And that's what we understood coming out of that January 2024 hearing, and that's what we think should remain the state of things and --

THE COURT: How does this change that?

MR. HALL: Well, I think the concern that we have is that the -- and I don't want to speak for VACU, but my understanding from their papers is they already have an order and an agreement that has been -- that is acceptable to the title insurance company.

And everyone has expressed an interest in the sale process moving forward. And I think my primary concern is I don't want something to -- that's going to delay the sale process.

THE COURT: And I'm curious about it. It seems to be taking a long time to sell these properties. Is -- can -- and I do understand a receiver had to come in, and I read that they've been stabilized and you have renters and all that. But it does seem to be taking a long time.

MR. HALL: Yeah. So, Your Honor, the trustee is not a party to those proceedings, he -- so I'd like to defer to the VACU and the Hilds on that.

THE COURT: Of course.

Mr. Chappell.

MR. HILD:  Your Honor, if I may?

THE COURT:  Mr. Hild.

MR. HILD:  Yes.  So the -- you're absolutely right, it is taking a long time.  And the reason that it's taking a long time is that, because of the trustee's threats of litigation against Virginia Credit Union, if it refuses for the interpleader and places any surplus funds, if they exist, into -- paid into court, then it will litigate.

And as a result, Virginia Credit Union is refusing to sell the properties, which is why we've been dragging for almost two years -- unless Mrs. Hild, as the owner of Church Hill Ventures, and Michael Hild, as the guarantor of the loans, agrees to have those proceeds placed into interpleader and paid into court.

And then, inevitably, the Court in Virginia will then defer back to this Court, creating a loop, asking for interpretation of the settlement order, which, to be -- let's be clear.  The trustee is claiming that the settlement agreement and the court order require, compel the proceeds to be paid into interpleader.  That is the claim that's being made by the trustee and Virginia Credit Union, and that they cannot proceed unless this court clarifies that the settlement order does not require that.

And so that is why we're here, unfortunately; otherwise, we would have already proceed with sale long, long

ago.  And it's being held up for that very reason.

So there are no competing claims to the same fund. That's what an interpleader -- interpleader requires. There's no judgment, there's no lien, there's no forfeiture order, there's no -- you know, those things don't exist.  A mandatory interpleader would freeze funds indefinitely and create a jurisdictional loop where the merits are never reached.  And so preservation cannot substitute for adjudication.

MR. CHAPPELL:  Judge, could I be heard --

THE COURT:  Yes.

MR. CHAPPELL:  -- for a moment?

THE COURT:  And I will say, Mr. Hild, I'm not sure I fully appreciate what you said there.

But let me hear from Mr. Chappell.

MR. CHAPPELL:  So, first of all, the provision that is of most concern to us is in the settlement agreement. It's on Page 4 of the settlement agreement, in Paragraph Number 4(iii):

"Third, after satisfaction of the sale costs and the VACU loan obligations, all other net proceeds of any assets ('the contested net proceeds') shall be paid as required by Virginia law into the Registry of the Virginia Court, for an interpleader action ('the interpleader action'), which shall

name all necessary parties, including the trustee."

And the reason the trustee is a necessary party to that interpleader action is because the trustee, at least by every representation we heard and from what Mr. Hall just said, does claim that funds looted from Live Well went into these properties, and that he had a claim that we have now settled as to VACU, based on the settlement agreement.

But he is still asserting a claim to the surplus; and, therefore, our foreclosure trustee is left in a position where both the Hilds, writ large, and the Live Well Trustee are claiming they have a right to those proceeds.  And so that is the fundamental issue here.

THE COURT:  But what's --

MR. CHAPPELL:  And that --

THE COURT:  -- holding up --

MR. CHAPPELL:  -- is why --

THE COURT:  -- the case?

MR. CHAPPELL:  Well, I --

THE COURT:  What's holding --

MR. CHAPPELL:  I would like --

THE COURT:  -- up the sale?

MR. CHAPPELL:  -- to speak to that, Your Honor, I would like to speak to that, but --

THE COURT:  And I --

MR. CHAPPELL:  -- I'm just --

THE COURT:  I'm looking at your provision here and it says they shall be paid, the net proceeds shall be paid, as required by Virginia Law, into the Registry.  I don't know whether Virginia Law requires it under these circumstances --

MR. CHAPPELL:  Well --

THE COURT:  -- or not, and that's for the Virginia Credit Union to make a determination, I suppose.  It actually doesn't -- reading the settlement, it doesn't require the Trustee of the Virginia Credit Union to do it; it just says "as required by Virginia law."  So -- but he'll interpret it and have counsel helping him interpret it.  Okay?

But how does that impact on the sale process?

MR. CHAPPELL:  Well, it impacts on the sale process because we have to be able to obtain title insurance, and our title insurer has told us they need an order from this Court.  The order we obtained from this Court, which approved the trustee's entry into this agreement, requires, the agreement requires the interpleader of the funds.

An interpleader is necessary, in any event, because those funds are subject to competing claims:  The trustee claims them and the Hilds claim them.

THE COURT:  Okay.  That's --

MR. CHAPPELL:  And so --

THE COURT:  But you have to have the sale first, before you have any funds.

MR. CHAPPELL:  That's --

THE COURT:  So why hasn't the --

MR. CHAPPELL:  That's right.

THE COURT:  How has that slowed down the sale?

MR. CHAPPELL:  Sure.  So a couple of points, Your Honor, if I could:

Number one, we got -- and I have -- if Your Honor will give me just a moment.  We had -- we obtained the initial receivership order on May 23rd of 2024, and over the objection of the Hilds and Church Hill Ventures.

In August, we obtained the supplemental receivership order, again, over the objection of the Hilds.

From about June to October of last year, we were busy trying to stabilize the properties, deal with a ton of deferred maintenance --

MR. HILD:  That's not true.  We object, Your Honor.  This is diverting now into something that is not a legal argument; this is getting into why they delayed.  And I would respectfully object to this becoming an evidentiary-type hearing because we --

MR. CHAPPELL:  Your Honor --

THE COURT:  Mr. Hild --

MR. CHAPPELL:  -- he opened the door.

MR. HILD:  But --

THE COURT:  Excuse me --

MR. CHAPPELL:  He opened the door.

THE COURT:  -- both of you, both of you.

Mr. Hild, I asked a question of Mr. Chappell; he is responding.  This is not turning into an evidentiary hearing.  But in any event, I'm -- Mr. Hild is -- I mean Mr. Chappell is speaking now.

Mr. Chappell.

MR. CHAPPELL:  Thank you, Your Honor.

Around November or so of 2024, about a year ago, in consultation with the receiver, a decision was made that it made business sense to get the commercial spaces in these properties leased, they had been vacant since 2020.  And so a commercial broker was retained and the properties were put out for lease.  It was about May to June of this year when that leasing process came to a conclusion.  It was at that point that we attempted to have discussions with the Hilds and their entity about moving forward with a foreclosure sale.

What Mr. Hild did not tell you and what he made a false claim about is that there is another impediment to sale.  Virginia law is very clear that, if there is a dispute about the amount owed under a deed of trust, ordinarily, the trustee, under the deed of trust, must resolve that dispute before proceeding with a sale.  And so we attempted to have negotiations with the Hilds about that.  Those negotiations

were premised on three points:

First, to allow the sale to go forward without improving or impairing any party's position;

Second, to allow the portion of the debt that was conceded for settlement purposes only, never on the record, as relatively undisputed, to be paid;

And third, to come up with a process for either resolving or adjudicating the dispute as to the remaining portion. That remaining portion, we were told, contained objections about the amount we paid to the Live Well Trustee, attorneys' fees, perhaps default interest, et cetera.

And if Your Honor wants to see an example of some of the problems we encountered, if you look at Docket Number 606, Exhibit B -- this is Page 16 of 43 -- we received, for example, correspondence from Mr. Hild's counsel that said -- that proposed as follows:

A limited waiver --

THE COURT: I thought --

MR. CHAPPELL: -- such that --

THE COURT: -- you told me this was all subject to settlement discussions. I do not want to hear settlement discussions.

MR. CHAPPELL: Well --

THE COURT: I didn't read the settlement discussions --

MR. CHAPPELL: Okay.

THE COURT: -- I do not want to hear them.

MR. CHAPPELL: Well, let -- but what Your Honor does need to know is that Mr. Hild falsely claimed that there was an agreement to move forward.

MR. HILD: I objection, Your Honor.

THE COURT: I am not --

MR. HILD: This is, again --

THE COURT: I am not --

MR. HILD: Thank you.

THE COURT: -- accepting anything as evidence here. I do not want to hear about settlement discussions.

MR. CHAPPELL: Well --

THE COURT: Whether you should be having settlement discussions or just moving is not -- you know, at some point -- you've had my order for a year and a half, a year and a half. I assume --

MR. CHAPPELL: Yeah --

THE COURT: -- interest is continuing to accrue and all kinds of things are happening there. I can't tell you what the trust -- what the receivers obligations are or how he should be conducting anything. All I know --

MR. CHAPPELL: Judge --

THE COURT: -- is that my order doesn't decide these disputes, and it didn't create disputes. Okay? It did

not create disputes and it's not -- it should not be a holdup here.  And it can't be used to force Mrs. Hild or any of the corporate entities to agree to something they're not agreeing to, and it shouldn't be used that way.  I'm sure that this long, drawn-out process on these properties is not helping resolve anything, I am sure it is not.  And I -- the -- I -- you know.

But what's wrong with this order?  What's wrong with the order that has been put in front of me for clarification, given that, apparently, there is some disagreement over what it does?

MR. HALL:  Your Honor --

MR. CHAPPELL:  Well --

MR. HALL:  -- if I may?  Bryan Hall for the Chapter 7 Trustee.

We -- having had further review of the revised proposed order that the Hilds submitted at Docket Item 606, I think, with a couple of changes, that it would be acceptable to the trustee, subject to, you know, hearing from the other parties.

THE COURT:  And what are the changes you think --

MR. HALL:  So, Your Honor, we -- if folks have it, it's Docket Item 606, I believe Exhibit A.

The first change we would propose, Your Honor, is Paragraph 1, to simply clarify that the motion is granted as

set forth herein, again, just attempting to avoid any misunderstandings later.

The second change we would request, Your Honor, Paragraph 2, first line.  I believe Your Honor's order was entered on Valentine's Day, February 14th, rather than the 21st.

THE COURT:  It was.

MR. HALL:  And --

THE COURT:  Okay.

MR. HILD:  Apologies.

MR. HALL:  And then, in terms of the -- in terms of the substance of the order, Your Honor, I think, if the language ended with the line "interpleader of surplus proceeds," period, I think that would acceptable to the trustee.

THE COURT:  Mr. Chappell?

MR. CHAPPELL:  I think I'd like to talk with my client.  It's probably okay.  I don't have authority to agree to it at this moment, but it's probably okay.

THE COURT:  Mr. Hild.

MR. HILD:  I'm sorry, Your Honor.  I'm just reading it again one more time, to make sure I'm understanding how that changes the substance of the interpretation.  Just a moment.

THE COURT:  Yes.

(Pause in proceedings)

MR. HILD:  I guess I'm questioning the whole point that Virginia Credit Union is pointing to and that the trustee was pointing to is Paragraph 4(iii) of the settlement agreement.  So, if it's omitted -- I don't know.  Maybe I'm not understanding why they're -- if they could explain why they're requesting the change.

I don't understand, since Paragraph 4(iii) has been the point of contention and the motion for clarification is try -- is attempting to clarify that very point, that Paragraph 4(iii) is not to be interpreted to require or compel interpleader of the surplus proceeds, how we don't end up in the same exact situation where in now, wherein a sale is completed, surplus proceeds are paid into court, the Virginia Court; in turn, is -- the settlement agreement is waved in front of the Court, and then the Court says I need clarification from Delaware.  I mean, that's what we're trying to avoid, Your Honor, is this circular loop that we're in.

THE COURT:  Yeah.  It's hard to know what's going to happen in the future.  Okay?  And whether a Virginia Court is going to feel like it can't -- that it needs any guidance from me, when I said that the interpleader action is up to the Virginia Court.

Where I think it should probably end, this

34

sentence, is -- I would take it slightly further.  I would say:

> "It does not require or compel interpleader of surplus proceeds under Paragraph 3 of the settlement agreement."

Because it doesn't under absent a merge, it doesn't under any circumstances.  And so I think that's clear, rather than specifying one circumstance under which it doesn't --

MR. HILD:  That --

THE COURT:  -- or which it would.

MR. HILD:  That would be acceptable, Your Honor.  I think that's a good solution.

THE COURT:  So that would be the order that I would propose to enter, subject, Mr. Chappell, to you talking to your client about it.  I don't think it, quite frankly, changes the order, which I entered, which I entered after reading both certifications of counsel and obviously pulled from both orders to create my own order, with the intention that the rights of anyone who wasn't a signatory to that agreement are not impacted.

And they're free to go in, if an interpleader action is filed, to argue whatever about the appropriateness of an interpleader action.  And if it's going to wind up back in front of me, quite frankly, let's get that started.  Okay?  But hopefully it won't.  And that's all I'm going to say.

So I would like to hear back from the parties after Mr. Chappell has had an opportunity to speak with his client.

Certainly, I don't want this order to become a problem for the title company because that just is another hurdle.  I don't think it should be.  And the title company should be comforted by the fact that there's not *lis pendens* filed on these properties.

Okay.  So I'll look for a certification of counsel once those communications have happened.  If, for some reason, Mr. Chappell, you hear from your client this is not acceptable, we'll have to reconvene, and I --

MR. CHAPPELL:  I understand --

THE COURT:  -- have to --

MR. CHAPPELL:  -- Your Honor.

THE COURT:  -- understand why, and I would need to understand, at that point, why I shouldn't --

MR. CHAPPELL:  I --

THE COURT:  -- enter this limited form of order.

MR. CHAPPELL:  I understand.  And as I'm sure Your Honor will guess, we will probably seek to run the proposed language by the title company and confirm it is acceptable to them --

THE COURT:  Yes.

MR. CHAPPELL:  -- and confirm it's acceptable with the client, generally, and then we'll follow up with counsel.

THE COURT:  Yes, I would expect that.

MR. HILD:  Your Honor, may I just ask a clarification question?

THE COURT:  Yes.

MR. HILD:  I just want to make sure I understand your direction correctly.  Are you looking for -- you asked for a certification of counsel from Virginia Credit Union. Are you asking for Ms. Hild and I to put anything on the record coming out of this hearing?

THE COURT:  No, I'm not.  What I'm looking for is simply a certification of counsel that would tell me that the order, as it's been modified here, is acceptable, or if it's not; and then, if it's not, then we'll have to reconvene. But I'm not expecting anything from you.

MR. HILD:  Understood.

And the only request we would make, respectfully, Your Honor, is, just given the sheer length of time that this issue has been festering with -- you know, we would like to see the property sold -- if you could impose some form of a time line to have that certification of counsel submitted, we'd sure appreciate it, as we'd like to have this resolved, please.

THE COURT:  I'm not going to impose a time line.  I have professionals in front of me, I'm sure it will be handled promptly.  And I would expect to see it, normally,

after a hearing, in the next few days sometime.

MR. HILD:  Understood, Your Honor.

THE COURT:  Okay.  Thank you.

MR. HALL:  Thank you very much --

MR. HILD:  Thank you.

MR. HALL:  -- Your Honor.

MR. CHAPPELL:  Thank you, Your Honor.

MR. TARR:  Thank you, Your Honor.  Stanley Tarr from Blank Rome on behalf of the trustee.

I want to segue to the rest of the agenda, but --

THE COURT:  What is the rest?  Because this is what I --

MR. TARR:  It's fee apps.

THE COURT:  -- focused on.  Ah ...

MR. TARR:  It's fee apps.

But before I do, Your Honor, let me just make a couple of points:

One, on the certification of counsel, I will represent to you that we will undertake -- my view is this: It will either be the order we've just discussed, which would be submitted as a redline against Mr. Hild's order.

THE COURT:  Uh-huh.

MR. TARR:  And presuming that that's the case, I will circulated the proposed redline and COC to Mr. Hild.

Obviously, Mr. Palacio is here and he's well aware

of the Delaware practice; and, consistent with that, as soon as we hear, you know, from VRL, VACU, assuming we're moving forward with the proposed order, that's how we'll implement the COC. It will reflect the consent of the Hilds to the order that you've described at the hearing, and that the order they're looking at is consistent with that.

THE COURT: Thank you.

MR. TARR: I also want to represent to you that, as you know, in connection with *pro se* matters, sometimes it's difficult, particularly because there's not ECF notice.

So, just as an example, another undertaking we've undergone, without necessarily you telling us to do, is, for example, when your *lis pendens* opinion and order came out, we both emailed it and mailed it to the Hilds, so that they had record of it. So, generally speaking, with matters with respect to their issues, we will endeavor to try to, again, email, mail, so that there's no -- nothing lost in the transom between docket entry and, you know, *pro se* litigants.

THE COURT: Thank you. I appreciate that.

MR. TARR: One more thing before we get to the fee apps. And I think -- so none of it is in respect of VRL/VACU matters. So, to the extent they want to go, they can. But it does reflect on the litigation against the Hilds.

We are at a point, Your Honor, where there are motions pending before you in respect of a discovery

extension that they want.

THE COURT:  Uh-huh.

MR. TARR:  We have a scheduling order in place.

So one of the things, for example, that is ready to go forward, has been ready to go forward, is our expert opinion that shows or that traces funds into those entities. We're ready to proceed on all of that.  And so I would ask Your Honor for guidance with respect to, you know, having -- giving us *lis pendens*, having dealt wit the clarification. Where do we go to next?

THE COURT:  So that is the next thing on my list. Okay?  So getting the opinion out -- which, believe me, did not happen in the last two weeks; we didn't write it, research it in the last two weeks.

MR. TARR:  Yeah.

THE COURT:  And then dealing with this matter, which I felt was of the utmost importance.

And I have gathered all of the filings.  I think the rest of them are of a piece, in that they are all having to do with discovery.  And I have to wrap my head around -- I've gotten all the scheduling orders together, we've got all the motions and the motions to compel and the motions to quash.  And what I need to look to do is to get my head around all of those, and then we're going to have a conference and we're going to talk about how this case goes

forward.  Okay?  And I see the motion.

You know, I just want to make sure I have the facts --

MR. TARR:  Sure.

THE COURT:  -- and I have everything in front of me.  And then we can -- I will figure out am I going to permit additional discovery, am I not going to permit additional discovery, was the discovery that is subject to the motions to quash issued before fact discovery deadlines. I need to get that whole time line together and do it.  I felt that these -- and I think that's all of a piece.  But I -- to know how it's going to go forward, I have to get back into that.  But I felt that the opinion and then this were first.  Now I'm focused on the scheduling order and discovery.

MR. TARR:  Your Honor, understood and appreciated. I guess I -- just to be clear, I would say they mostly relate to scheduling.  There's a motion to sort of expand the discovery, then there are also related motions to compel SEC, Walker --

THE COURT:  Uh-huh.

MR. TARR:  -- Foster.

In addition to that bucket, there is a separate motion for sanctions that -- you know, that Mr. Hild has put forward.

And then there's also a motion with respect to striking the answer.

But ultimately, the issue there is what are we -- and Your Honor was considering this, I'm not asking for an answer -- but deals with how any and/or all of this relates to the entities, separately, that are no longer represented.

THE COURT:  I've given some thought to that.  But before I put my thoughts out there --

MR. TARR:  Sure.

THE COURT:  -- I want to make sure I have the big picture view --

MR. TARR:  No, understood.

THE COURT:  -- of how this matter should proceed.

MR. TARR:  Appreciated, Your Honor.

And I'm -- at this point, I'm -- and I would -- you know, to the extent Your Honor allows, the other parties can leave, we can deal with any questions you have on the fee apps.

THE COURT:  Well, and I will tell you, unfortunately, I haven't looked at the fee apps.  I will do so and I will let you know if I have any issues; and, if I don't, I will just issue those orders.

MR. TARR:  Okay.  And my only plea, Your Honor, is --

THE COURT:  Before the --

42

MR. TARR:  You know --

THE COURT:  -- end of the year.

MR. TARR:  You know how it is.

(Laughter)

MR. TARR:  You know how it is.

THE COURT:  Yep.

MR. TARR:  Okay.

THE COURT:  Someone has marching orders.

(Laughter)

THE COURT:  Before the end of the year.  I'll look at it promptly and let you know if I have any issues.

MR. TARR:  Okay.  And Your Honor, unless you have anything else, that concludes our agenda.

THE COURT:  I do not.  Thank you.  We're adjourned.

MR. TARR:  Thank you, Your Honor.

UNIDENTIFIED:  Thank you, Your Honor.

(Proceedings concluded at 11:22 a.m.)

*****

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.


_____          December 20, 2025

Coleen Rand, AAERT Cert. No. 341

Certified Court Transcriptionist

For Reliable