# EXHIBIT  B

157910390

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| LIVE WELL FINANCIAL, INC., | Case No. 19-11317 (LSS) |
| Debtor. | **Re: D.I. 231, 233, 234** |

**ORDER APPROVING THE CONFIDENTIAL SETTLEMENT AGREEMENT
AND RELEASE BY AND BETWEEN THE CHAPTER 7 TRUSTEE
AND GREAT AMERICAN INSURANCE COMPANY**

Upon consideration of the motion (the "Motion")[1] of David W. Carickhoff (the "Trustee"), Chapter 7 Trustee of Live Well Financial, Inc. (the "Debtor") in the above-captioned chapter 7 case, seeking entry of an Order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, authorizing and approving the *Confidential Settlement Agreement and Release* (the "Agreement"), a copy of which is annexed hereto as Exhibit 1, by and between the Trustee, on behalf of the Debtor's estate, and Great American Insurance Company ("Great American"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157; and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; and upon consideration of the Motion; and the Court finding that entry of this Order is in the best interests of the Debtors' estates, creditors, and other parties in interest; and any objections or responses to the Motion having been resolved, withdrawn, or overruled by the Court; and upon all of the proceedings had

---

[1] Capitalized terms used but not defined in this Order shall have the meaning ascribed to such terms in the Motion.

123425588

before the Court; and after due deliberation, and good and sufficient cause appearing therefor; IT IS HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Trustee is authorized to enter into the Agreement, which is approved in all respects.

3. In accordance with the terms of the Agreement, within 14 days following the date of entry of this Order, Great American shall pay by wire transfer the Great American Settlement Payment to the Trustee, for the benefit of the estate.

4. Nothing contained in the Motion, the Agreement, or this Order shall in any way impair or impact the Trustee's rights, claims, counterclaims, defenses, and arguments, including, without limitation, the Trustee's rights to object to all claims, requests for payment, or other motions filed in this case. Further, the Trustee shall retain and reserve all rights and coverage defenses Great American may have under the terms of the Policies for the benefit of the Debtor's estate.

5. Upon this Order becoming final and non-appealable, any party qualifying as an Insured under the Policies is hereby enjoined from making any further claim based upon, arising out of, or in any way involving the Policies.

6. The fact that a particular provision of the Agreement is not included in this Order does not in any way impair or impact the enforceability of such provision, it being the intention of this Court to approve the Agreement in its entirety.

7. The Trustee and Great American each are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the terms of the Agreement.

123425588

3

8.    This Court shall retain jurisdiction over all matters arising from or related to the Agreement and/or to the interpretation, implementation, or enforcement of this Order.

3

123425588

**EXHIBIT 1**

**The Agreement**

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") is made and entered into by and between David W. Carickhoff, solely in his capacity as the Chapter 7 trustee (the "Trustee") of the bankruptcy estate of Live Well Financial, Inc. ("Live Well"), on the one hand, and Great American Insurance Company ("Great American"), on the other hand.  The Trustee, Live Well, and Great American, collectively, are referred to as the "Parties," and each, individually, is referred to as a "Party."

## RECITALS

WHEREAS, Great American issued the following insurance policies to Live Well:  (1) Policy No. DOL134582 for the Policy Period of June 11, 2017 to June 11, 2018 (the "2017-2018 Policy"), and (2) Policy No. DOL1345852 for the June 11, 2018-June 11, 2019 Policy Period (the "2018-2019 Policy") (collectively, the "Policies");

WHEREAS, no claims were made under the 2017-2018 Policy;

WHEREAS, on March 5, 2019, Live Well provided notice to Great American of SEC Enforcement Proceedings (the "SEC Enforcement Proceedings") against Live Well and former Live Well Chairman and Chief Executive Officer Michael Hild ("Mr. Hild");

WHEREAS, on June 10, 2019 (the "Petition Date"), certain creditors of the Debtor filed an involuntary petition under chapter 7 of the Bankruptcy Code against the Debtor in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, on or about July 1, 2019, the Bankruptcy Court entered the Order for Relief and, on the same date, the Trustee was appointed pursuant to section 701(a) of the Bankruptcy Code;

WHEREAS, on or about August 1, 2019, former Live Well Executive Vice President Darren Stumberger provided notice to Great American of SEC and DOJ Subpoenas served upon Mr. Stumberger (the "Stumberger Subpoenas");

WHEREAS, on August 13, 2019, former Live Well Chief Financial Officer and Senior Vice President Eric Rohr ("Mr. Rohr") provided notice to Great American of an SEC Subpoena served upon Mr. Rohr (the "Rohr Subpoena");

**WHEREAS**, on or about August 20, September 11, October 15, 2019, and January 29, 2020, respectively, former Live Well employees, officers and/or directors, each provided notice to Great American (the "Employee Notices");

**WHEREAS**, the Trustee for the sole benefit of the Live Well bankruptcy estate and for no other insured timely purchased an extension of the "Discovery Period" under the Policies for an additional twelve (12) months including September 11, 2019 through September 11, 2020;

**WHEREAS**, by letters dated on or about August 6, August 27 and September 10, 2019, the Trustee provided notice to Great American of several matters and circumstances, including: DOJ criminal proceedings against Messrs. Hild, Rohr and Stumberger; an SEC enforcement action against Live Well along with Messrs. Hild, Rohr and Stumberger; a civil lawsuit against Live Well and Mr. Hild brought by creditor Flagstar Bank (the "Flagstar Bank Lawsuit"); and potential additional creditor litigation against Live Well and Mr. Hild relating to the bankruptcy proceedings; all of which the Trustee believed triggered coverage (collectively, the "Trustee Notice Letters");

**WHEREAS**, on November 27, 2019, Mr. Rohr filed proof of claim numbered 50 ("POC No. 50") in the amount of $166,849.77 on account of an alleged indemnification claim for legal services and a duplicate proof of claim numbered 52 ("POC No. 52 and together with POC No. 50, the "Rohr Chapter 7 Claim");

**WHEREAS**, on November 27, 2019, Mr. Hild filed proof of claim numbered 51 ("Hild Chapter 7 Claim") in the amount of $250,388.75 on account of an alleged indemnification claim for legal services;

**WHEREAS**, on or about December 20, 2019, Mr. Rohr provided notice to Great American that Mr. Rohr had been named as a defendant in the Flagstar Bank Lawsuit (the "Rohr Notice Letter" and collectively, with the SEC Enforcement Proceedings, the Stumberger Subpoenas, the Rohr Subpoena, the Employee Notices, the "Noticed Matters");

**WHEREAS**, Live Well, Mr. Hild, and others qualifying as Insureds under the Policies, have sought, and Great American has denied coverage for the Noticed Matters;

**WHEREAS**, following negotiations between the Trustee and Great American, the Trustee and Great American have agreed to settle the matters set forth in the Trustee Notice Letters and that Great American will pay to Live Well's bankruptcy estate Seven Hundred and Ninety Thousand Dollars ($790,000.00) (the "Great

American Settlement Payment") to settle all disputes between them concerning the Policies;

**WHEREAS**, the Trustee shall retain all rights and coverage defenses Great American has pursuant to the Policies as against any and all Insureds, none of which shall be the subject of the releases set forth below; and

**NOW, THEREFORE,** for full and valuable consideration and on the terms, conditions and covenants contained in this Agreement, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the foregoing Recitals, which are incorporated into and form part of this Agreement, the Parties agree as follows:

### 1.      Bankruptcy Court Approval

The Agreement is a binding and enforceable settlement agreement on the terms set forth in this Agreement and is not subject to the execution of any further or more definitive settlement documents; provided, however, that the Agreement is subject to the final, non-appealable approval of the Bankruptcy Court pursuant to an order entered under Bankruptcy Rule 9019 (the "Approval Order"), releasing Great American from all further liability to any party under the Policies.  The Parties agree to cooperate with each other and use their collective best efforts to obtain the Approval Order of the Bankruptcy Court.

### 2.      Payment by Great American

Within 14 days of the later of, (1) the execution of this Agreement by Great American, (2) oral confirmation by the Trustee to Great American of the bank account details set forth below, or (3) the date on which the Approval Order becomes final and non-appealable, Great American shall wire transfer to the Trustee's account specified below the Great American Settlement Payment. Payment shall be made via wire to the Trustee's account in respect of the Live Well bankruptcy estate.

### 3.      Releases

a.      In consideration of the promises and other consideration in this Agreement, the Trustee, on behalf of Live Well, and to the fullest extent permitted by law, hereby releases, remises, acquits and forever discharges Great American and its predecessors and successors in interest, affiliates, subsidiaries, parents, and divisions, and each of the foregoing entities' past, present and future associates, representatives, owners, heirs, assigns, shareholders, creditors, liquidators, administrators, trustees, debtors in possession, receivers, executors, partners,

principals, directors, officers, employees, attorneys, agents, members, and persons acting by, through, under or in concert with any of the foregoing (the "Great American Related Persons and Entities"), separately and jointly, of and from any and all claims, debts, liens, contracts, agreements, promises, demands, payments, rights, obligations, loss, judgments, awards, attorney's fees, costs, expenses, interests, damages, liabilities, benefits and causes of action, at law or in equity, of whatever kind or character, known or unknown, suspected, fixed, or contingent, that the Trustee and the Live Well Estate have, have had, or may have in the future against Great American and/or the Great American Related Persons and Entities based on, arising out of, or in any way involving (i) the Noticed Matters; (ii) the Policies; and (iii) any claims or allegations of "bad faith" or unfair claim handling, extra-contractual liability or breach of any express or implied promise, or breach of any duty grounded in law or in contract relating thereto concerning the Policies or the Noticed Matters (collectively, the "Released Matters").  Notwithstanding the foregoing, this release shall not extend to claims for breach of this Agreement or the warranties or representations contained herein.

b.      In consideration of the promises and other consideration in this Agreement, Great American, on its own behalf and to the fullest extent permitted by law, on behalf of the Great American Related Persons and Entities, hereby release, remise, acquit and forever discharge Live Well, the Trustee, separately and jointly, and past, present and future representatives, assigns, attorneys, agents, and persons acting by, through, under or in concert with any of the foregoing (the "Live Well Related Persons and Entities"), of and from any and all claims, debts, liens, contracts, agreements, promises, demands, payments, rights, obligations, loss, judgments, awards, attorneys' fees, costs, expenses, interests, damages, liabilities, benefits and causes of action, at law or in equity, of whatever kind or character, known or unknown, suspected, fixed, or contingent, that Great American has, had, or may have in the future against Live Well, the Trustee or the Live Well Related Persons and Entities based on, arising out of, or in any way involving the Released Matters.  Notwithstanding the foregoing, this release shall not extend to claims for breach of this Agreement or the warranties or representations contained herein.

c.      However, nothing contained in Paragraph 3(b) of this Agreement shall be deemed to release, discharge, limit or otherwise extinguish the Trustee's rights to assert any and all coverage defenses that were or may have been available to Great American as against any Insured under the Policies.  The Trustee shall be assigned, subrogated to, and retain all rights and coverage defenses each of the Live Well bankruptcy estate and Great American has pursuant to the Policies in respect of all other alleged beneficiaries of the Policies, including, without limitation, in respect of the timeliness of notice under each of the relevant Policies.  All such rights and coverage defenses remain fully enforceable as to other alleged beneficiaries or insured entities in respect of the Policies.

### 4.   Unknown Claims

With respect to the releases set forth in Paragraph 3 of this Agreement, the Parties intend the Agreement to be effective as a full and final accord and satisfaction as between one another of the matters released herein.  In furtherance of such intention, the Parties acknowledge that they are aware that new or different facts in addition to, or different from, those now known or believed to be true regarding the subject matter of this Agreement may be discovered, but intend this Agreement to fully, finally and forever settle and release the matters as between one another as described herein.  The Parties hereby expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of any statute or principle of common law of the United States or any other state, territory or country, which narrowly construes releases purporting by their terms to release such unknown or underestimated claims and/or liabilities in whole or in part, restricts or prohibits the releasing of such claims and/or liabilities or otherwise relates to the release of unknown claims, including, but not limited to, Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

### 5.   Bankruptcy Court Jurisdiction

The Parties agree that the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement, and to otherwise resolve any disputes under or pertaining to this Agreement, and all Parties hereto consent and submit to the jurisdiction of the Bankruptcy Court for all such matters; provided that any beneficiary of the releases set forth herein may assert and enforce the releases and seek related relief in any court or tribunal of competent jurisdiction.  The Parties further agree that this Agreement shall be governed by and construed in accordance with the provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the laws of the State of Delaware, without regard to the conflict of laws principles thereof.

### 6.   No Admission of Liability or Coverage

The Parties acknowledge and agree that this Agreement is entered into for the sole purpose of resolving certain disputes with respect to the Policies and that neither the execution nor the performance of any of the terms of this Agreement will

constitute or be construed as an admission by either Party of any liability, an admission of coverage or lack of coverage under the Policies, or an admission of the validity or enforceability of any matters that are released pursuant to this Agreement.  The Parties also acknowledge and agree that this Agreement will not be taken or used, nor will this Agreement be admissible in evidence, in any action, cause of action or proceeding, except in an action to enforce the terms of this Agreement.

### 7.    No Assignment

Live Well represents and warrants that it has not sold, assigned or otherwise transferred any interest in the claims, demands, rights, actions, causes of action or liabilities that are the subject of the releases contained in this Agreement.

### 8.    Authority

The undersigned individuals executing this Agreement represent and warrant that they are authorized to enter into and execute this Agreement on behalf of the entity on whose behalf they purport to execute the Agreement, that the appropriate corporate resolutions or other consents have been passed and/or obtained, and that this Agreement will be binding upon those entities.  The Parties acknowledge and agree that the Trustee's entry into this Agreement shall be subject to the approval of the Bankruptcy Court.

### 9.    Entire Agreement

This Agreement constitutes the entire agreement among the Parties with respect to the matters addressed herein and supersedes all prior oral or written agreements with respect to the matters released.  This Agreement will not be amended, altered or modified, except by an instrument in writing signed by the Party against whom enforcement of the amendment, alteration or modification is sought.

### 10.    Confidentiality

a.    The Parties agree reasonably to cooperate to protect and keep confidential the material economic terms and information contained herein; provided that the Parties acknowledge and agree that the United States Bankruptcy Code, the Bankruptcy Rules, and orders of the Bankruptcy Court may require the disclosure of certain or all of the terms and information contained herein.

**11.      Advice of Counsel**

This Agreement is made and executed by each Party with the advice of counsel, and neither Party has been coerced or induced to enter into this Agreement by any improper action of the other Party.

**12.      Headings and Captions**

The headings and captions used in this Agreement are for convenience only, are not a part of this Agreement, and will not alter or determine any rights or obligations under this Agreement.

**13.      Execution in Counterparts**

This Agreement may be executed in counterparts, each of which will be deemed an original, and all of which, together, will constitute but one and the same instrument, which instrument will for all purposes be sufficiently evidenced by any such counterpart.   Execution by facsimile or by an electronically transmitted signature shall be fully and legally binding on the Parties.

**IN WITNESS WHEREOF,** each undersigned Party has caused this Agreement to be duly executed on its behalf.

Dated:  June 24, 2020                     Great American Insurance Company

By: */s/ Edward C. Carleton*

Title:  *Counsel for GAIC*

Dated:  June 24, 2020                     David W. Carickhoff, solely in his capacity as the Chapter 7 Trustee of Live Well Financial, Inc.

By:  */s/ David W. Carickhoff*

Title:  *Chapter 7 Trustee*