**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LIVE WELL FINANCIAL, INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-11317-LSS |
| DAVID W. CARICKHOFF, solely in his capacity as Chapter 7 Trustee of Live Well Financial, Inc.,<br><br>Plaintiff,<br>v.<br><br>STUART H. CANTOR, JAMES P. KARIDES, BRETT J. ROME, LWFVEST LLC, NORTH HILL VENTURES II, LP, FIVE ELMS EQUITY FUND I, L.P., FIVE ELMS HAAKON, L.P., FIVE ELMS COINVEST, L.P., JAMES BROWN, GANTCHER FAMILY LIMITED PARTNERSHIP, and ERIC LEGOFF,<br><br>Defendants. | Adv. Pro. No. 21-50990 (LSS)<br><br>**Objection Deadline: September 11, 2026 at 4:00 p.m. (ET)**<br>**Hearing: September 30, 2026 at 3:30 p.m. (ET)** |

**MOTION OF THE CHAPTER 7 TRUSTEE PURSUANT TO FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT AGREEMENTS WITH FIVE ELMS EQUITY FUND I, L.P., FIVE ELMS HAAKON, L.P., AND FIVE ELMS COINVEST, L.P.**

David W. Carickhoff, solely in his capacity as the chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Live Well Financial, Inc. ("Live Well"), files this motion ("Motion") seeking entry of an Order authorizing and approving (1) the *Settlement and Release Agreement* by and among the Trustee, on behalf of the Debtor's estate, and Five Elms Equity Fund I, L.P. (the "FEEF Agreement"); (2) the *Settlement and Release Agreement* by and among the Trustee, on behalf of the Debtor's estate, and Five Elms Haakon, L.P. (the "FEH Agreement");

and (3) the *Settlement and Release Agreement* by and among the Trustee, on behalf of the Debtor's estate, and Five Elms Coinvest, L.P. (the "FEC Agreement" and collectively with the FEEF Agreement and the FEH Agreement, the "Agreements").[1] Copies of the Agreements are annexed as Exhibits 1–3 to the proposed order attached hereto. In support of the Motion, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1. By the Agreements, the Trustee has reached settlements with the Settling Defendants that resolve this adversary proceeding with respect to the causes of action pleaded against the Settling Defendants. The Trustee submits that the Agreements with the Settling Defendants are well within the range of reasonableness, in the interest of creditors, and should be approved by the Court.

## JURISDICTION

2. The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).[2] Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief requested in this Motion are pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. On June 10, 2019 (the "Filing Date"), an involuntary bankruptcy petition under chapter 7 of the Bankruptcy Code was filed against Live Well in the United States Bankruptcy

---

[1] Five Elms Equity Fund I, L.P. ("FEEF"), Five Elms Haakon, L.P. ("FEH") and Five Elms Coinvest, L.P. ("FEC") are collectively referred to herein as the "Settling Defendants." Capitalized terms used but not defined in the Motion have the meanings ascribed to such terms in the Agreements.

[2] The Trustee confirms his consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by this Court in connection with this Motion to the extent it is later determined this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

Court for the District of Delaware. Prior to ceasing operations, the Debtor was a financial services company that provided reverse mortgages and forward mortgages to customers, serviced mortgages, and traded in mortgage-backed securities.

4. On July 1, 2019, the Court entered the Order for Relief. (D.I. 49). On the same day, the Trustee was appointed by the Office of the United States Trustee for Region 3 as chapter 7 trustee of the Estate pursuant to Bankruptcy Code section 701(a). The meeting of creditors in Live Well's chapter 7 case has been finally concluded.

**The Parties' Relationship, the Amended Complaint, and Procedural Posture**

5. Prior to the Filing Date, each of the Settling Defendants was a preferred stockholder of Live Well. The Settling Defendants disposed of their preferred stock in the Debtor on or about September 30, 2016, through a stock repurchase transaction that resulted in Live Well suffering significant harm, including the amounts paid to the preferred stockholders in connection with the transaction (the "Preferred Stock Repurchase"). The Trustee has alleged that the Settling Defendants received the following amounts in connection with the Preferred Stock Repurchase: (1) FEEF received $2,976,457.40 in cash consideration, a $1,818,946.19 note, and $272,841.90 in interest payments on the note; (2) FEH received $181,614.35 in cash consideration, a $110,986.55 note, and $16,648.00 in interest payments on the note; and (3) FEC received $171,525.66 in cash consideration, a $104,820.63 note, and $15,723.19 in interest payments on the note.

6. On June 29, 2021, the Trustee initiated this adversary proceeding ("Subject Adv. Pro.") by filing his original complaint against the Settling Defendants, among others, that asserted certain claims against the Settling Defendants related to their receipt of funds in connection with the Preferred Stock Repurchase. (Subject Adv. Pro., D.I. 1). Specifically, the Trustee brought claims against the Settling Defendants sounding in: (i) fraudulent transfer (actual and constructive

as to certain transfers, payments, and releases) under applicable law, including Va. Code Ann. § 55.1-400, *et seq.*, 6 Del. Code § 1301, *et seq.*, and 11 U.S.C. §§ 544 and 550, and under 11 U.S.C. §§ 548 and 550, (ii) unjust enrichment under applicable law (as to certain transfers, payments, and releases); and (iii) objections to, and equitable subordination of, the Settling Defendants' claims filed in the bankruptcy case.

7. On September 9, 2021, the Settling Defendants moved to dismiss the claims alleged against them. (Subject Adv. Pro., D.I. 13). On June 13, 2023, the Court issued an order granting in part, and denying in part, the Settling Defendants' motion, and further granted the Trustee leave to amend. (Subject Adv. Pro., D.I. 41). The Trustee filed an amended complaint (the "Amended Complaint") on August 11, 2023. (Subject Adv. Pro., D.I. 45). On September 23, 2023, the Settling Defendants filed a motion to dismiss certain claims alleged in the Trustee's Amended Complaint. (Subject Adv. Pro., D.I. 54). The Court issued an order denying the Settling Defendants' subsequent motion to dismiss on July 23, 2025. (Subject Adv. Pro., D.I. 85). After the resolution of the Settling Defendants' motions to dismiss, the following claims alleged against the Settling Defendants in the Amended Complaint remain in the case: (1) Counts 5 and 6 (avoidance of release as actually and constructively fraudulent); (2) Count 9 (avoidance of actual intent fraudulent transfers); (3) Count 10 (unjust enrichment); and (4) Counts 11 and 12 (objections to and equitable subordination of the Settling Defendants' claims) (collectively, the "Subject Causes of Action").

8. On August 6, 2025, the Settling Defendants filed an answer to the Amended Complaint. (Subject Adv. Pro., D.I. 86). The Settling Defendants' Answer asserted complete defenses to the causes of action asserted against them. Without limitation, no Settling Defendant served on the Live Well board of directors and each Settling Defendant maintains that it was not

involved directly in the authorization of the Preferred Stock Repurchase by the Live Well board and officers.

## SUMMARY OF PROPOSED SETTLEMENT

9. Rather than engage further in costly and protracted litigation, the Trustee and the Settling Defendants have reached an agreement to resolve the Trustee's claims against the Settling Defendants through extensive good faith and arm's-length negotiations. The results of such negotiations are the settlements embodied in the Agreements.

10. In addition to usual and customary settlement terms, a summary of the material terms[3] of the Agreements is listed below:

a. Effective Date. The Agreements shall become effective on their respective Effective Dates, which is the date on which all of the following conditions have been satisfied or waived in a written document signed by each of the Parties: (a) the Bankruptcy Court has entered the Approval Order; and (b) the Approval Order has become a final order because (i) no motion for reconsideration regarding the Approval Order has been timely filed within fourteen (14) calendar days after the date of the entry of the Approval Order, as required by Federal Rule of Bankruptcy Procedure 9023; (ii) no notice of appeal regarding the Approval Order has been timely filed within fourteen (14) calendar days after the date of the entry of the Approval Order, as required by Federal Rule of Bankruptcy Procedure 8002(a); and (iii) if a notice of appeal or motion for reconsideration of the Approval Order has been timely filed, as required by Federal Rule of Bankruptcy Procedure 9023 or Federal Rule of Bankruptcy Procedure 8002(a), then such appeal or motion has been denied with prejudice and the Approval Order is not subject to further timely appellate review.

b. Settlement Payments.

1. FEEF Settlement Payment. By no later than December 31, 2027, the Settling Defendant shall pay, or cause to be paid, to the Trustee by wire transfer a settlement payment in an amount determined by the date on which such payment is made (the "Settlement Payment"), with such amount increasing over time as follows: if the Settlement Payment is made on or before December 31, 2026, the Settlement Payment shall be

[3] In the event of any inconsistency between the description of the Agreement contained in this Motion and the terms of the Agreement, the terms of the Agreement shall govern and control. The material terms of the Agreements are identical except for the timing and amount of the settlement payments, which are specifically set forth below.

Five Hundred Seventy Six Thousand Five Hundred Ninety and 91/100 U.S. dollars (US$576,590.91); if the Settlement Payment is made on or after January 1, 2027 and on or before June 30, 2027, the Settlement Payment shall be Six Hundred Five Thousand Six Hundred Forty-Three and 94/100 U.S. dollars (US$605,643.94); and if the Settlement Payment is made on or after July 1, 2027 and on or before December 31, 2027, the Settlement Payment shall be Six Hundred Thirty Four Thousand Two Hundred Fifty U.S. dollars (US$634,250.00). The Trustee shall provide wire transfer instructions to the Settling Defendant promptly upon execution of this Settlement Agreement.

2. FEH Settlement Payment. By no later than December 31, 2027, the Settling Defendant shall pay, or cause to be paid, to the Trustee by wire transfer a settlement payment in an amount determined by the date on which such payment is made (the "Settlement Payment"), with such amount increasing over time as follows: if the Settlement Payment is made on or before December 31, 2026, the Settlement Payment shall be Thirty Five Thousand One Hundred Eighty One and 82/100 U.S. dollars (US$35,181.82); if the Settlement Payment is made on or after January 1, 2027 and on or before June 30, 2027, the Settlement Payment shall be Thirty Six Thousand Nine Hundred Fifty-Four and 54/100 U.S. dollars (US$36,954.54); and if the Settlement Payment is made on or after July 1, 2027 and on or before December 31, 2027, the Settlement Payment shall be Thirty Eight Thousand Seven Hundred U.S. dollars (US$38,700.00). The Trustee shall provide wire transfer instructions to the Settling Defendant promptly upon execution of this Settlement Agreement.

3. FEC Settlement Payment. By no later than December 31, 2027, the Settling Defendant shall pay, or cause to be paid, to the Trustee by wire transfer a settlement payment in an amount determined by the date on which such payment is made (the "Settlement Payment"), with such amount increasing over time as follows: if the Settlement Payment is made on or before December 31, 2026, the Settlement Payment shall be Thirty Three Thousand Two Hundred Twenty-Seven and 27/100 U.S. dollars (US$33,227.27); if the Settlement Payment is made on or after January 1, 2027 and on or before June 30, 2027, the Settlement Payment shall be Thirty Four Thousand Nine Hundred One and 52/100 U.S. dollars (US$34,901.52); and if the Settlement Payment is made on or after July 1, 2027 and on or before December 31, 2027, the Settlement Payment shall be Thirty Six Thousand Five Hundred Fifty U.S. dollars (US$36,550.00). The Trustee shall provide wire transfer instructions to the Settling Defendant promptly upon execution of this Settlement Agreement.

c. Trustee's Release. In consideration of the Settling Defendant's obligations and releases under this Settlement Agreement, upon the Trustee's receipt of

the Settlement Payment, the Trustee, for the Live Well bankruptcy estate, its agents, attorneys, employees, officers, directors, shareholders, assigns, and affiliates, hereby irrevocably and unconditionally releases and discharges the Settling Defendant, their past and present officers, directors, shareholders, agents, insurers and reinsurers, attorneys, predecessors, affiliates and employees, and each of their respective successors, assigns, heirs and representatives (collectively, the "Settling Defendant Released Persons"), from any and all claims, rights, demands, injuries, debts, liabilities, omissions, accounts, contracts, agreements, causes of action, suits and damages whatsoever, in law or equity, and whether based on contract, tort, or otherwise, known or unknown, suspected or unsuspected, of every kind and nature, which the Live Well bankruptcy estate, or its, affiliates, successors, assigns, heirs, and representatives at any time had, now have, or hereafter can or may have against the Settling Defendant for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this release, concerning, related to, arising out of, or arising from the Dispute or the Settling Defendant's relationship with Live Well. Notwithstanding the foregoing, this release does not release the Settling Defendant from its representations and obligations under this Settlement Agreement or apply to any Settling Defendant Released Person that entered into a separate settlement agreement with the Trustee.

d. Settling Defendants' Release. In consideration of the Trustee's obligations and releases under this Settlement Agreement, upon the Trustee's receipt of the Settlement Payment, the Settling Defendant, for itself, and each of the Settling Defendant Released Persons, hereby irrevocably and unconditionally release and discharge the Trustee, the Live Well bankruptcy estate, and each of their respective past and present officers, directors, shareholders, agents, insurers and reinsurers, attorneys, predecessors, affiliates and employees, and their respective successors, assigns, heirs and representatives, from any and all claims, rights, demands, injuries, debts, liabilities, omissions, accounts, contracts, agreements, causes of action, suits and damages whatsoever, in law or equity, and whether based on contract, tort, or otherwise, known or unknown, suspected or unsuspected, of every kind and nature, which the Settling Defendant and Settling Defendant Released Persons at any time had, now have, or hereafter can or may have against the Trustee or the Live Well Estate for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this release, concerning, arising out of, or arising from the Dispute or the Settling Defendant's relationship with Live Well, including (i) any claims by the Settling Defendant under 11 U.S.C. § 502(h) relating to the Settlement Payment, and (ii) any claims filed by or scheduled on behalf of the Settling Defendant, as well as the right to receive any distributions on any such claims, in the Bankruptcy Case. Notwithstanding the foregoing, this release does not release the Trustee or the Live Well

bankruptcy estate from its representations and obligations under this Settlement Agreement.

e. Exclusion from Releases. In addition to the exclusions specifically set forth above, nothing in this Settlement Agreement shall constitute a release for any claims of breach of this Settlement Agreement. Moreover, nothing in this Settlement Agreement shall limit the Trustee's right to receive additional funds in connection with the Bankruptcy Case. For the avoidance of doubt, no release in this section 3 is deemed to impair any claim or cause of action of the Live Well bankruptcy estate against any former Live Well director, officer, shareholder, equity interest holder, employee, affiliate, agent, representative, professional, predecessor or successor (except to the extent any Settling Defendant Released Person is such a person or entity).

f. Dismissal Matters. Within five (5) business days of receipt of the Settlement Payment, the Trustee will cause to be filed in the Adversary Proceeding a Stipulation of Dismissal (subject to the approval by the Settling Defendants), dismissing the Settling Defendants from the Adversary Proceeding with prejudice (and each party to bear its own costs and fees) pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) and Fed. R. Bankr. P. 7041.

## RELIEF REQUESTED AND BASES THEREFOR

11. By this Motion, the Trustee respectfully requests entry of an order, substantially in the form annexed hereto as Exhibit A, authorizing and approving the Agreements, copies of which are annexed as Exhibits 1–3 to the proposed order.

12. Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estates, and providing for the efficient resolution of bankruptcy cases. *See In re Martin*, 91 F.3d 389, 393 (3rd Cir. 1996); *accord Will v. Next Proteins, Inc. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006). To achieve these results, Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve a settlement or compromise by the trustee after notice and a hearing. *See* Fed. R. Bankr. P. 9019(a); *see also* 11 U.S.C. § 105(a) (empowering the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code).

13. In applying this rule, a bankruptcy court should approve a settlement if it is "fair and equitable" and "in the best interest of the estates". *In re Capmark Fin. Group Inc.*, 438 B.R. 471, 514 (Bankr. D. Del. 2010); *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Grp., Inc.)*, 336 B.R. 87, 93 (Bankr. D. Del. 2005), *aff'd*, No. 05-828-SRL, 2006 WL 2842462 (D. Del. 2005). To properly make this determination, the court "must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate." *Key3Media*, 336 B.R. at 92 (quoting *Martin*, 91 F.3d at 393).

14. The United States Court of Appeals for the Third Circuit has provided four criteria a bankruptcy court should consider in approving a settlement: (i) the probability of success in litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of creditors. *See Martin*, 91 F.3d at 393. When applying these four criteria to the facts of a particular case, a court "is not supposed to have a mini-trial on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Key3Media Group*, 336 B.R. at 93; *In re Nortel Networks, Inc.*, 522 B.R. 491, 509 (Bankr. D. Del. 2014) (approving settlement under the *Martin* factors); *In re Capmark Fin. Group Inc.*, 438 B.R. 471, 514 (Bankr. D. Del. 2010) (same). The court does not have to be convinced the settlement is the best possible compromise. Rather, the court must conclude the settlement is "within the reasonable range of litigation possibilities." *See In re World Health Alt., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (internal citation omitted).

15. The Trustee submits the terms of the Agreements fall well within this range of reasonableness and, accordingly, the Agreements should be approved.

16. The *Martin* factors weigh strongly in favor of approval of the Agreements. But for the Agreements, the Trustee and the Settling Defendants would need to engage in costly and time-consuming litigation to resolve the Estate's claims with respect to the Dispute and the Subject Causes of Action. While the Trustee anticipates the Estate would prevail in any such litigation, there is a substantial downside risk. The Settling Defendants have asserted multiple defenses to the Subject Causes of Action, that if successful, might significantly limit the Trustee's potential recoveries or completely bar the Trustee from obtaining any recoveries from the Settling Defendants.

17. The Settling Defendants were not Live Well directors or officers and maintain that they were not involved in the decision-making relating to the Preferred Stock Repurchase, and thus, are not culpable fiduciaries or their wholly controlled entities (as are several of the remaining defendants in this adversary). Further, the Settling Defendants might successfully assert certain defenses relating to certain of the Subject Causes of Action that sound in fraudulent transfer, limiting the Trustee's avenues for avoidance or redress in material ways if those defenses were successful.

18. The Agreements avoid the substantial risks and costs of litigation while bringing substantial value into the Estate. Among other things, the Agreements provide for the Settling Defendants to pay, depending on the date of payment, a total of between $645,000 and $709,500 in cash to the Trustee for the benefit of the Estate, subject to the terms of special litigation counsel's retention and that certain *Litigation Support and Alignment Agreement between the Trustee and Mirae Asset Securities (USA), Inc.*, dated August 10, 2020, and approved by order of this Court, dated September 23, 2020 (D.I. 256), for the dismissal of the claims alleged against them in this adversary proceeding. The Trustee has consulted with Mirae Asset Securities (USA), Inc.

("Mirae") as to the settlement embodied in the Agreements and understands that Mirae, one of the Estate's largest creditors, has no objection to the settlement. Further, the Agreements contain releases that are appropriately tailored to the facts and circumstances of this case. The settlements with the Settling Defendants embodied in the Agreements are, therefore, in the paramount interests of the Estate's creditors.

19. The Trustee respectfully submits the Agreements are fair, reasonable, and in the best interest of the Estate and its creditors and the Agreements should be authorized and approved.

## RESERVATION OF RIGHTS

20. Except as expressly set forth in this Motion or in the Agreements, each of the Trustee, on behalf of himself and the Estate, and each Settling Defendant reserves all rights, claims, counterclaims, defenses, and arguments.

## NOTICE

21. Notice of this Motion has been provided to the following parties or their respective counsel, if any: (i) the Debtor; (ii) the Office of the United States Trustee; (iii) each Settling Defendant; (iv) Mirae; and (v) all parties that have requested pursuant to Bankruptcy Rule 2002 to receive notice in this case. The Trustee submits, in light of the nature of the relief requested, no further notice is necessary or required.

22. No prior request for the relief requested in this Motion has been made to this Court or to any other court.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter the proposed order annexed as Exhibit A to this Motion (i) authorizing and approving the Agreements annexed as

Exhibits 1–3 to the Proposed Order, and (ii) granting the Trustee such other and further relief as the Court deems appropriate under the circumstances.

Dated: August 28, 2026
Wilmington, Delaware

**BLANK ROME LLP**

*/s/ Lawrence R. Thomas III*
Stanley B. Tarr (DE No. 5535)
Lawrence R. Thomas III (DE No. 6935)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Email: Stanley.Tarr@BlankRome.com
Lorenzo.Thomas@BlankRome.com

-and-

**REID COLLINS & TSAI LLP**

Gregory S. Schwegmann (admitted *pro hac vice*)
1301 S. Capital of Texas Hwy., Suite 300
Austin, Texas 78746
Telephone: (512) 647 6100
Email: gschwegmann@reidcollins.com

*Counsel for David W. Carickhoff, the Chapter 7 Trustee*