**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LIVE WELL FINANCIAL, INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-11317-LSS |
| DAVID W. CARICKHOFF, solely in his capacity as Chapter 7 Trustee of Live Well Financial, Inc.,<br><br>Plaintiff,<br>v.<br><br>STUART H. CANTOR, JAMES P. KARIDES, BRETT J. ROME, LWFVEST LLC, NORTH HILL VENTURES II, LP, FIVE ELMS EQUITY FUND I, L.P., FIVE ELMS HAAKON, L.P., FIVE ELMS COINVEST, L.P., JAMES BROWN, GANTCHER FAMILY LIMITED PARTNERSHIP, and ERIC LEGOFF,<br><br>Defendants. | Adv. Pro. No. 21-50990 (LSS)<br><br>**Objection Deadline: September 11, 2026 at 4:00 p.m. (ET)**<br>**Hearing: September 30, 2026 at 3:30 p.m. (ET)** |

**MOTION OF THE CHAPTER 7 TRUSTEE PURSUANT TO FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT AGREEMENT WITH JAMES P. KARIDES, BRETT J. ROME, LWFVEST LLC, NORTH HILL VENTURES II, LP**

David W. Carickhoff, solely in his capacity as the chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Live Well Financial, Inc. ("Live Well"), files this motion ("Motion") seeking entry of an Order authorizing and approving (1) the *Settlement and Release Agreement* (the "Agreement")[1] by and among the Trustee, on behalf of the Debtor's estate, and Defendants James P. Karides ("Karides"), Brett J. Rome ("Rome"), LWFVEST, LLC

[1] Capitalized terms used but not defined in the Motion have the meanings ascribed to such terms in the Agreement.

("LWFVEST" and collectively with Karides, the "Karides Settling Defendants") and North Hill Ventures II, L.P. ("North Hill" and collectively with Rome, the "Rome Settling Defendants") (collectively, the "Settling Defendants"). A copy of the Agreement is annexed as Exhibit 1 to the proposed order attached hereto. In support of the Motion, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1. By the Agreement, the Trustee has reached settlements with the Settling Defendants that resolve this adversary proceeding with respect to the causes of action pleaded against the Settling Defendants. The Trustee submits the Agreement with the Settling Defendants is well within the range of reasonableness, is in the interest of creditors, and should be approved by the Court.

## JURISDICTION

2. The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).[2] Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief requested in this Motion are pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. On June 10, 2019 (the "Filing Date"), an involuntary bankruptcy petition under chapter 7 of the Bankruptcy Code was filed against Live Well in the United States Bankruptcy Court for the District of Delaware. Prior to ceasing operations, the Debtor was a financial services

[2] The Trustee confirms his consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by this Court in connection with this Motion to the extent it is later determined this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

company that provided reverse mortgages and forward mortgages to customers, serviced mortgages, and traded in mortgage-backed securities.

4. On July 1, 2019, the Court entered the Order for Relief. (D.I. 49). On the same day, the Trustee was appointed by the Office of the United States Trustee for Region 3 as chapter 7 trustee of the Estate pursuant to Bankruptcy Code section 701(a). The meeting of creditors in Live Well's chapter 7 case has been finally concluded.

**The Parties' Relationship, the Amended Complaint, and Procedural Posture**

5. Prior to the Filing Date, Rome and Karides served as members of the Debtor's board of directors as the board designees of North Hill and LWFVEST, respectively, which were preferred stockholders of the Debtor. North Hill and LWFVEST disposed of their preferred stock in the Debtor, and Rome and Karides resigned from the Debtor's board, on or about September 30, 2016, in connection with a stock repurchase (the "Preferred Stock Repurchase"). Rome and Karides negotiated the terms of the Preferred Stock Repurchase, including their resignations from the Debtor's board, with Live Well's former CEO, Michael Hild. As alleged by the Trustee, the Preferred Stock Repurchase directly and proximately resulted in the Debtor suffering significant harm, including the amounts paid to the preferred stockholders. For their parts, in connection with the Preferred Stock Repurchase (i) North Hill received $3,864,349.78 in cash consideration, a $2,361,547.09 note, and $354,232.10 in interest payments on the note; and (ii) LWFVEST received $9,000,000.00 in cash consideration, a $5,500,000.00 note, and $825,000.00 in interest payments on the note.

6. On June 29, 2021, the Trustee initiated this adversary proceeding ("Subject Adv. Pro.") by filing his original complaint against the Settling Defendants, among others, that asserted certain claims against the Settling Defendants related to both the Preferred Stock Repurchase and

the massive bond fraud perpetrated by the now criminally convicted former officers of the Debtor. (Subject Adv. Pro., D.I. 1). Specifically, the Trustee brought claims against the Settling Defendants sounding in: (i) breach of fiduciary duty, (ii) unlawful stock repurchase pursuant to 8 Del. C. § 174; (iii) aiding and abetting breach of fiduciary duty; (iv) fraudulent transfer (actual and constructive as to certain transfers, payments, and releases) under applicable law, including Va. Code Ann. § 55.1-400, *et seq.*, 6 Del. Code § 1301, *et seq.*, and 11 U.S.C. §§ 544 and 550, and 11 U.S.C. §§ 548 and 550, (v) unjust enrichment under applicable law (as to certain transfers, payments, and releases); and (vi) objections to, and equitable subordination of, claims filed in the bankruptcy case.

7. On September 9, 2021, the Settling Defendants moved to dismiss the claims alleged against them. (Subject Adv. Pro., D.I. 13). On June 13, 2023, the Court issued an order granting in part, and denying in part, the Settling Defendants' motion, and further granted the Trustee leave to amend. (Subject Adv. Pro., D.I. 41). The Trustee filed an amended complaint (the "Amended Complaint") on August 11, 2023. (Subject Adv. Pro., D.I. 45). On September 23, 2023, the Settling Defendants filed a motion to dismiss certain claims alleged in the Trustee's Amended Complaint. (Subject Adv. Pro., D.I. 54). The Court issued an order denying the Settling Defendants' subsequent motion to dismiss on July 23, 2025. (Subject Adv. Pro., D.I. 85). After the resolution of the Settling Defendants' motions, the following claims alleged against the Settling Defendants in the Amended Complaint remain in the case: (i) Count 1 (breach of fiduciary duty against Rome and Karides); (ii) Count 3 (unlawful stock repurchase against Rome and Karides); (iii) Count 4 (aiding and abetting breach of fiduciary duty against North Hill and LWFVEST); (iv) Counts 5 and 6 (avoidance of a release agreement against all Settling Defendants); (v) Count 9 (avoidance and recovery of certain transfers against North Hill and LWFVEST); (vi) Count 10 (unjust

enrichment against North Hill and LWFVEST); and (vii) Counts 11 and 12 (objections to, and equitable subordination of, North Hill's and LWFVEST's claims) (collectively, the "Subject Causes of Action").

8. On August 6, 2025, the Settling Defendants filed an answer to the Amended Complaint. (Subject Adv. Pro., D.I. 86). The Settling Defendants' Answer asserted complete defenses to the causes of action asserted against them in the Amended Complaint.

**SUMMARY OF PROPOSED SETTLEMENT**

9. Rather than further engage in costly and protracted litigation, the Trustee and the Settling Defendants participated in a full-day mediation with the honorable former bankruptcy judge Kevin Gross. Although the parties were unable to reach an agreement to resolve the Dispute during the mediation session, the Trustee and the Settling Defendants continued to engage in extensive good faith and arm's-length negotiations regarding the Subject Causes of Action. The result of the mediation and such further negotiations is the settlement embodied in the Agreement.

10. In addition to usual and customary settlement terms, a summary of the material terms[3] of the Agreement is listed below:

a. Effective Date. This Settlement Agreement shall become effective on the date (the "Effective Date") on which all of the following conditions have been satisfied or waived in a written document signed by each of the Parties: (a) the Bankruptcy Court has entered the Approval Order; and (b) the Approval Order has become a final order because (i) no motion for reconsideration regarding the Approval Order has been timely filed within fourteen (14) calendar days after the date of the entry of the Approval Order, as required by Federal Rule of Bankruptcy Procedure 9023; (ii) no notice of appeal regarding the Approval Order has been timely filed within fourteen (14) calendar days after the date of the entry of the Approval Order, as required by Federal Rule of Bankruptcy Procedure 8002(a); and (iii) if a notice of appeal or motion for reconsideration of the Approval Order has been timely filed, as required by Federal Rule of Bankruptcy Procedure 9023 or Federal Rule of Bankruptcy Procedure 8002(a), then such appeal or

[3] In the event of any inconsistency between the description of the Agreement contained in this Motion and the terms of the Agreement, the terms of the Agreement shall govern and control.

motion has been denied with prejudice and the Approval Order is not subject to further timely appellate review.

b. Settlement Payment. Within ten (10) business days of the Effective Date, the Rome Settling Defendants shall collectively pay to the Trustee, or cause the Trustee to be paid, the amount of two million five hundred thousand United States dollars (US$2,500,000.00) in total via wire transfers and/or via checks delivered to the attention of David Carickhoff, Chapter 7 Trustee, Chipman Brown Cicero & Cole LLP, 1313 North Market Street, Suite 5400, Wilmington, DE 19801 (the "Rome Settlement Payment"), and the Karides Settling Defendants shall collectively pay to the Trustee, or cause the Trustee to be paid, the amount of three million five hundred thousand United States dollars (US$3,500,000.00) in total via wire transfer (the "Karides Settlement Payment" and collectively with the Rome Settlement Payment, the "Settlement Payments"). The Trustee shall provide wire instructions to the Settling Defendants upon execution of this Settlement Agreement.

c. Trustee's Releases.

1. The Trustee's Release of the Rome Settling Defendants. In consideration of the Rome Settling Defendants' obligations and releases under this Settlement Agreement, upon the Trustee's receipt of the Rome Settlement Payment, the Trustee, for the Live Well bankruptcy estate, its creditors, agents, attorneys, employees, officers, directors, shareholders, assigns, and affiliates, hereby irrevocably and unconditionally releases and discharges the Rome Settling Defendants, their past and present officers, directors, partners, general partners, managers, members, shareholders, agents, insurers and reinsurers, attorneys, predecessors, affiliates and employees, and each of their respective successors, assigns, heirs and representatives (collectively, the "Rome Settling Defendants Released Persons"), from any and all claims, rights, demands, injuries, debts, liabilities, omissions, accounts, contracts, agreements, causes of action, suits and damages whatsoever, in law or equity, and whether based on contract, tort, or otherwise, known or unknown, suspected or unsuspected, of every kind and nature, which the Live Well bankruptcy estate, or its, affiliates, successors, assigns, heirs, and representatives at any time had, now have, or hereafter can or may have against the Rome Settling Defendants Released Persons for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this release, concerning, related to, arising out of, or arising from the Dispute or the Rome Settling Defendants' relationship with Live Well. Notwithstanding the foregoing, this release does not release the Rome Settling Defendants from its representations and obligations under this Settlement Agreement or apply to the Karides Settling Defendants, any named defendant in any adversary proceeding brought by the Trustee

on behalf of the Debtor's estate not specifically identified herein, or any person that entered into a separate settlement agreement with the Trustee.

2. The Trustee's Release of the Karides Settling Defendants. In consideration of the Karides Settling Defendants' obligations and releases under this Settlement Agreement, upon the Trustee's receipt of the Karides Settlement Payment, the Trustee, for the Live Well bankruptcy estate, its creditors, agents, attorneys, employees, officers, directors, shareholders, assigns, and affiliates, hereby irrevocably and unconditionally releases and discharges the Karides Settling Defendants, their past and present officers, directors, partners, general partners, managers, members, shareholders, agents, insurers and reinsurers, attorneys, predecessors, affiliates and employees, and each of their respective successors, assigns, heirs and representatives (collectively, the "Karides Settling Defendants Released Persons"), from any and all claims, rights, demands, injuries, debts, liabilities, omissions, accounts, contracts, agreements, causes of action, suits and damages whatsoever, in law or equity, and whether based on contract, tort, or otherwise, known or unknown, suspected or unsuspected, of every kind and nature, which the Live Well bankruptcy estate, or its, affiliates, successors, assigns, heirs, and representatives at any time had, now have, or hereafter can or may have against the Karides Settling Defendants Released Persons for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this release, concerning, related to, arising out of, or arising from the Dispute or the Karides Settling Defendants' relationship with Live Well. Notwithstanding the foregoing, this release does not release the Karides Settling Defendants from its representations and obligations under this Settlement Agreement or apply to the Rome Settling Defendants, any named defendant in any adversary proceeding brought by the Trustee on behalf of the Debtor's estate not specifically identified herein, or any person that entered into a separate settlement agreement with the Trustee.

d. Settling Defendants' Releases.

1. The Rome Settling Defendants' Release. In consideration of the Trustee's obligations and releases under this Settlement Agreement, upon the Trustee's receipt of the Rome Settlement Payment, the Rome Settling Defendants, for themselves, and each of the Rome Settling Defendants Released Persons, hereby irrevocably and unconditionally release and discharge the Trustee, the Live Well bankruptcy estate, and each of their respective past and present officers, directors, shareholders, agents, insurers and reinsurers, attorneys, predecessors, affiliates and employees, and their respective successors, assigns, heirs and representatives, from any and all claims, rights, demands, injuries,

debts, liabilities, omissions, accounts, contracts, agreements, causes of action, suits and damages whatsoever, in law or equity, and whether based on contract, tort, or otherwise, known or unknown, suspected or unsuspected, of every kind and nature, which the Rome Settling Defendants and Rome Settling Defendants Released Persons at any time had, now have, or hereafter can or may have against the Trustee or the Live Well Estate for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this release, concerning, arising out of, or arising from the Dispute or the Rome Settling Defendants relationship with Live Well, including (i) any claims by the Rome Settling Defendants under 11 U.S.C. § 502(h) relating to the Rome Settlement Payment, and (ii) any claims filed by or scheduled on behalf of the Rome Settling Defendants, as well as the right to receive any distributions on any such claims, in the Bankruptcy Case. Notwithstanding the foregoing, this release does not release the Trustee or the Live Well bankruptcy estate from its representations and obligations under this Settlement Agreement.

2. The Karides Settling Defendants' Release. In consideration of the Trustee's obligations and releases under this Settlement Agreement, upon the Trustee's receipt of the Karides Settlement Payment, the Karides Settling Defendants, for themselves, and each of the Karides Settling Defendants Released Persons, hereby irrevocably and unconditionally release and discharge the Trustee, the Live Well bankruptcy estate, and each of their respective past and present officers, directors, shareholders, agents, insurers and reinsurers, attorneys, predecessors, affiliates and employees, and their respective successors, assigns, heirs and representatives, from any and all claims, rights, demands, injuries, debts, liabilities, omissions, accounts, contracts, agreements, causes of action, suits and damages whatsoever, in law or equity, and whether based on contract, tort, or otherwise, known or unknown, suspected or unsuspected, of every kind and nature, which the Karides Settling Defendants and Karides Settling Defendants Released Persons at any time had, now have, or hereafter can or may have against the Trustee or the Live Well Estate for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this release, concerning, arising out of, or arising from the Dispute or the Karides Settling Defendants relationship with Live Well, including (i) any claims by the Karides Settling Defendants under 11 U.S.C. § 502(h) relating to the Karides Settlement Payment, and (ii) any claims filed by or scheduled on behalf of the Karides Settling Defendants, as well as the right to receive any distributions on any such claims, in the Bankruptcy Case. Notwithstanding the foregoing, this release does not release the Trustee or the Live Well bankruptcy estate from its representations and obligations under this Settlement Agreement.

e. Exclusion from Releases. In addition to the exclusions specifically set forth above, nothing in this Settlement Agreement shall constitute a release for any claims of breach of this Settlement Agreement. Moreover, nothing in this Settlement Agreement shall limit the Trustee's right to receive additional funds in connection with the Bankruptcy Case. For the avoidance of doubt, no release in this section 3 is deemed to impair any claim or cause of action of the Live Well bankruptcy estate against any former Live Well director, officer, shareholder, equity interest holder, employee, affiliate, agent, representative, professional, predecessor or successor (except to the extent any Settling Defendant Released Person is such a person or entity).

f. Dismissal Matters. Within five (5) business days of receipt of the Rome Settlement Payment, the Trustee will cause to be filed in the Adversary Proceeding a Stipulation of Dismissal (subject to approval by the Rome Settling Defendants), dismissing the Rome Settling Defendants from the Adversary Proceeding with prejudice (and with each party to bear its own costs and fees) pursuant to Federal Rules of Civil Procedure 41(a)(1)(A)(ii) and Federal Rule of Bankruptcy Procedure 7041. Likewise, within five (5) business days of receipt of the Karides Settlement Payment, the Trustee will cause to be filed in the Adversary Proceeding a Stipulation of Dismissal (subject to approval by the Karides Settling Defendants), dismissing the Karides Settling Defendants from the Adversary Proceeding with prejudice (and with each party to bear its own costs and fees) pursuant to Federal Rules of Civil Procedure 41(a)(1)(A)(ii) and Federal Rule of Bankruptcy Procedure 7041.

**RELIEF REQUESTED AND BASES THEREFOR**

11. By this Motion, the Trustee respectfully requests entry of an order, substantially in the form annexed hereto as Exhibit A, authorizing and approving the Agreements, a copy of which is annexed as Exhibit 1 to the proposed order.

12. Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estates, and providing for the efficient resolution of bankruptcy cases. *See In re Martin*, 91 F.3d 389, 393 (3rd Cir. 1996); *accord Will v. Next Proteins, Inc. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006). To achieve these results, Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve a settlement or compromise by the trustee after notice and a hearing. *See* Fed. R. Bankr. P. 9019(a); *see also* 11 U.S.C. § 105(a)

(empowering the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code).

13. In applying this rule, a bankruptcy court should approve a settlement if it is "fair and equitable" and "in the best interest of the estates." *In re Capmark Fin. Group Inc.*, 438 B.R. 471, 514 (Bankr. D. Del. 2010); *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Grp., Inc.)*, 336 B.R. 87, 93 (Bankr. D. Del. 2005), *aff'd*, No. 05-828-SRL, 2006 WL 2842462 (D. Del. 2005). To properly make this determination, the court "must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate." *Key3Media*, 336 B.R. at 92 (quoting *Martin*, 91 F.3d at 393).

14. The United States Court of Appeals for the Third Circuit has provided four criteria a bankruptcy court should consider in approving a settlement: (i) the probability of success in litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of creditors. *See Martin*, 91 F.3d at 393. When applying these four criteria to the facts of a particular case, a court "is not supposed to have a mini-trial on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Key3Media Group*, 336 B.R. at 93; *In re Nortel Networks, Inc.*, 522 B.R. 491, 509 (Bankr. D. Del. 2014) (approving settlement under the *Martin* factors); *In re Capmark Fin. Group Inc.*, 438 B.R. 471, 514 (Bankr. D. Del. 2010) (same). The court does not have to be convinced the settlement is the best possible compromise. Rather, the court must conclude the settlement is "within the reasonable range of litigation possibilities." *See In re World Health Alt., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (internal citation omitted).

15. The Trustee submits the terms of the Agreement fall well within this range of reasonableness and, accordingly, the Agreement should be approved.

16. The *Martin* factors weigh strongly in favor of approval of the Agreement. But for the Agreement, the Trustee and the Settling Defendants would need to engage in costly and time-consuming litigation to resolve the Estate's claims with respect to the Dispute and the Subject Causes of Action. Although the Trustee anticipates the Estate would prevail in any such litigation, there is a substantial downside risk. The Settling Defendants have asserted multiple defenses to the Subject Causes of Action, that if successful, might significantly limit the Trustee's potential recoveries or completely bar the Trustee from obtaining any recoveries from the Settling Defendants.

17. Moreover, even if the Trustee were to succeed on his claims and win a judgment in the amount pleaded in the Amended Complaint, there is little likelihood that the Trustee would be able to collect on such judgment. The Debtor's director and officer insurance coverage has already been exhausted and the remaining coverage on other potentially applicable policies would only cover a small percentage of any meaningful judgment amount.

18. The Agreement also avoids the substantial risks and costs of litigation while bringing substantial value into the Estate. The claims alleged by the Trustee involve complex and nuanced issues of fiduciary and statutory law and complex factual issues, including the Debtor's solvency and the true market value of the Debtor's legitimate business assets as well as its portfolio of fraudulently overvalued esoteric bond strips. As such, litigating these claims through judgment will require the retention of numerous experts whose reports and testimony will come at a great expense to the Estate. Furthermore, obtaining a judgment in this matter will likely take multiple additional years and, even if the judgment is favorable to the Trustee, many additional years to

collect on any such judgment given the likelihood of appeals and the Settling Defendants' ability to pay a judgment in the amount of the damages pleaded in the Amended Complaint.

19. The Agreement provides for the Settling Defendants to pay a total of $6,000,000 in cash to the Trustee for the benefit of the Estate, subject to the terms of special litigation counsel's retention and that certain *Litigation Support and Alignment Agreement between the Trustee and Mirae Asset Securities (USA), Inc.*, dated August 10, 2020, and approved by order of this Court, dated September 23, 2020 (D.I. 256), for the dismissal of the claims alleged against them in this adversary proceeding. The Trustee has consulted with Mirae Asset Securities (USA), Inc. ("Mirae") as to the settlement embodied in the Agreement and understands that Mirae, one of the Estate's largest creditors, has no objection to the settlement. Further, the Agreement contains releases that are appropriately tailored to the facts and circumstances of this case. The settlement with the Settling Defendants embodied in the Agreement is, therefore, in the paramount interests of the Estate's creditors.

20. The Trustee respectfully submits the Agreement is fair, reasonable, and in the best interest of the Estate and its creditors and the Agreement should be authorized and approved.

## RESERVATION OF RIGHTS

21. Except as expressly set forth in this Motion or in the Agreement, each of the Trustee, on behalf of himself and the Estate, and each Settling Defendant reserves all rights, claims, counterclaims, defenses, and arguments.

## NOTICE

22. Notice of this Motion has been provided to the following parties or their respective counsel, if any: (i) the Debtor; (ii) the Office of the United States Trustee; (iii) each Settling Defendant; (iv) Mirae; and (v) all parties that have requested pursuant to Bankruptcy Rule 2002 to

receive notice in this case. The Trustee submits, in light of the nature of the relief requested, no further notice is necessary or required.

23. No prior request for the relief requested in this Motion has been made to this Court or to any other court.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter the proposed order annexed as Exhibit A to this Motion (i) authorizing and approving the Agreement annexed as Exhibit 1 to the Proposed Order, and (ii) granting the Trustee such other and further relief as the Court deems appropriate under the circumstances.

Dated: August 28, 2026
Wilmington, Delaware

**BLANK ROME LLP**

*/s/ Lawrence R. Thomas III*
Stanley B. Tarr (DE No. 5535)
Lawrence R. Thomas III (DE No. 6935)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Email: Stanley.Tarr@BlankRome.com
Lorenzo.Thomas@BlankRome.com

-and-

**REID COLLINS & TSAI LLP**

Gregory S. Schwegmann (admitted *pro hac vice*)
1301 S. Capital of Texas Hwy., Suite 300
Austin, Texas 78746
Telephone: (512) 647 6100
Email: gschwegmann@reidcollins.com

*Counsel for David W. Carickhoff, the Chapter 7 Trustee*