**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

RECEIVED
2026 SEP 16 A 10: 38
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:

LIVE WELL FINANCIAL, INC.,

Debtor.

Chapter 7
Case No. 19-11317 (LSS)

---

**NOTICE OF MOTION OF MICHAEL C. HILD FOR AN ORDER REQUIRING THE CHAPTER 7 TRUSTEE TO FURNISH INFORMATION CONCERNING THE ADMINISTRATION AND PRESERVATION OF POTENTIAL ESTATE CLAIMS PURSUANT TO 11 U.S.C. §§ 105(a) AND 704(a)(7)**

---

**HEARING DATE AND TIME: September 30, 2026 AT 3:30 P.M. (ET)**

**OBJECTION DEADLINE: September 23, 2026 AT 4:00 P.M. (ET)**

PLEASE TAKE NOTICE that Michael C. Hild ("Hild"), appearing pro se and as a party in interest, has filed the accompanying **Motion of Michael C. Hild for an Order Requiring the Chapter 7 Trustee to Furnish Information Concerning the Administration and Preservation of Potential Estate Claims Pursuant to 11 U.S.C. §§ 105(a) and 704(a)(7)** (the "Motion").

PLEASE TAKE FURTHER NOTICE that the Motion seeks limited information concerning the investigation, evaluation, preservation, disposition, or determination not to pursue potential causes of action belonging to the Estate arising from evidence concerning Daniel Foster, Bloomberg Finance L.P., Robert W. Baird & Co., Interactive Data Corporation/Intercontinental Exchange, and related persons or entities concerning the pricing of Live Well Financial, Inc.'s HECM interest-only securities.

PLEASE TAKE FURTHER NOTICE that any objection or response to the Motion must be filed with the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, on or before:

**September 23, 2026 AT 4:00 PM PREVAILING EASTERN TIME**

and served so as to be received by:

Michael C. Hild: Register No. 93692-083
FCI Petersburg Low
Federal Correctional Institution
Satellite Camp
P.O. BOX 1000
PETERSBURG, VIRGINIA 23804
Pro Se Movant

michaelchristopherhild@gmail.com

PLEASE TAKE FURTHER NOTICE that a hearing to consider the Motion will be held on:

**September 30, 2026 AT 3:30 PM ET**

before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801.

**IF NO OBJECTION OR RESPONSE TO THE MOTION IS TIMELY FILED AND SERVED, THE COURT MAY GRANT THE MOTION AND ENTER THE PROPOSED ORDER WITHOUT FURTHER NOTICE OR HEARING.**

Dated: September 15, 2026

RECEIVED
2026 SEP 16 A 10:38
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

In re:

LIVE WELL FINANCIAL, INC.,

Debtor.

Chapter 7
Case No. 19-11317 (LSS)

---

**MOTION OF MICHAEL C. HILD FOR AN ORDER REQUIRING THE CHAPTER 7 TRUSTEE TO FURNISH INFORMATION CONCERNING THE ADMINISTRATION AND PRESERVATION OF POTENTIAL ESTATE CLAIMS PURSUANT TO 11 U.S.C. §§ 105(a) AND 704(a)(7)**

---

**HEARING DATE AND TIME: September 30, 2026 AT 3:30 P.M. (ET)**

**OBJECTION DEADLINE: September 23, 2026 AT 4:00 P.M. (ET)**

Michael C. Hild ("Hild")[1], appearing pro se and as a party in interest, respectfully moves this Court pursuant to 11 U.S.C. §§ 105(a) and 704(a)(7) for entry of an Order requiring David W. Carickhoff, Chapter 7 Trustee of Live Well Financial, Inc. ("Live Well" or the "Debtor") (the "Trustee"), to furnish limited information concerning the Trustee's investigation, evaluation, preservation, disposition, or determination not to pursue potential causes of action belonging to the Estate arising from evidence concerning Daniel Foster ("Foster"), Bloomberg Finance L.P. ("Bloomberg"), Robert W. Baird & Co. ("Baird"), Interactive Data Corporation/Intercontinental Exchange ("IDC/ICE"), and related persons or entities concerning the pricing of Live Well's HECM interest-only securities.

[1] Mr. Hild is presently incarcerated in federal custody. He has reviewed and approved this submission and executed the signature page; the original executed signature page is being submitted with this filing.

In support of this Motion, Hild respectfully states as follows:

**PRELIMINARY STATEMENT**

1. This Motion presents a narrow Estate-administration question: **what, if anything, did the Trustee do to investigate, evaluate and preserve potential Estate causes of action after evidence emerged concerning Foster's provision of HECM-IO pricing information to Bloomberg and the alleged resulting effects upon Live Well and its repo lenders?**
2. Hild does not ask the Court through this Motion to determine whether Foster, Bloomberg, Baird, IDC/ICE, or any other person or entity is liable to the Estate.
3. Hild likewise does not ask the Court presently to determine whether the Trustee breached a fiduciary duty, improperly administered an Estate asset, or permitted a viable cause of action to expire.
4. Nor does Hild seek through this Motion discovery concerning the merits of the Trustee's claims against Hild or the other defendants in *Carickhoff v. Hild*, Adv. Pro. No. 21-50966 (LSS).
5. The requested relief is considerably narrower. Hild seeks information identifying **whether and to what extent the Trustee acted** to investigate, evaluate and preserve potential Estate claims involving the pricing and disposition of what Live Well's audited financial statements reflected as its largest asset.
6. Section 704(a)(7) provides that, unless the Court orders otherwise, a Chapter 7 trustee "shall" furnish information concerning the Estate and its administration requested by a party in interest.

7. On September 6, 2026, at Hild's direction and on his behalf, an email was transmitted to Stanley B. Tarr and Michael D. Silberfarb, counsel for the Trustee, attaching written correspondence from Hild specifically requesting information concerning what actions the Trustee had taken to investigate and preserve potential Estate claims arising from the Foster/Bloomberg evidence.
8. The attached correspondence requested a substantive response no later than September 10, 2026 at 5:00 p.m. A true and correct copy of the September 6 transmitting email and attached correspondence is attached as **Exhibit A.**
9. No substantive response was received by that deadline.
10. On September 11, 2026, at Hild's direction and on his behalf, follow-up correspondence was transmitted to Trustee's counsel noting that the September 10 deadline had passed and requesting that counsel advise whether the Trustee intended to respond. A true and correct copy is attached as **Exhibit B.**
11. **As of the filing of this Motion, no substantive response furnishing the requested information has been received.**

## JURISDICTION AND AUTHORITY

12. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.
13. This Motion concerns administration of the bankruptcy Estate and the statutory duties of the Chapter 7 Trustee and is a core matter under 28 U.S.C. § 157(b)(2)(A).
14. Section 704(a)(1) requires a Chapter 7 trustee to collect and reduce to money property of the Estate and close the Estate as expeditiously as compatible with the best interests of parties in interest.

15. Section 704(a)(4) requires the Trustee to investigate the financial affairs of the Debtor.
16. Section 704(a)(7) provides that, unless the Court orders otherwise, the Trustee shall "furnish such information concerning the estate and the estate's administration as is requested by a party in interest."
17. Section 105(a) authorizes the Court to enter orders necessary or appropriate to carry out the provisions of title 11. Hild invokes § 105(a) only as authority to enforce the Trustee's duty under § 704(a)(7), not as an independent source of substantive rights.
18. Hild is a shareholder of Live Well and a party in interest in this bankruptcy case.
19. Hild consents to entry of final orders or judgments by this Court if it is determined that the Court, absent consent, could not enter final orders or judgments consistent with Article III of the United States Constitution.

## THE BOND PORTFOLIO WAS LIVE WELL'S LARGEST REPORTED ASSET

20. Live Well's audited financial statements for the years ending December 31, 2017 and 2016 were audited by Keiter.
21. As of December 31, 2017, those audited financial statements reported approximately **$483.2 million in government bonds available for sale** against approximately **$818.5 million in total assets.**
22. Thus, the bond portfolio constituted more than half of Live Well's reported assets and was, by a substantial margin, its largest reported asset.
23. The valuation, disposition and alleged impairment of that portfolio therefore concerned an asset of extraordinary significance to Live Well and, depending upon the nature and

timing of any causes of action arising from those matters, potentially to the bankruptcy Estate.

24. Hild cites those audited figures solely to establish the scale and significance of the bond portfolio to Live Well.

## THE TRUSTEE'S JANUARY 2024 TESTIMONY

25. On January 23, 2024, the Trustee was deposed under oath in Adv. Pro. No. 21-50966 concerning, among other matters, the Live Well bond portfolio.

26. When asked whether he had performed any valuation of the Live Well bonds after becoming Trustee, the Trustee testified:

"No formal valuation."

27. The Trustee further testified that, to his understanding, the repo counterparties controlled the bonds when the bankruptcy case was filed.

28. The Trustee testified that he had a discussion with one lender concerning whether liquidation of the bonds was necessary for purposes of filing a proof of claim, but otherwise did not identify negotiations with lenders concerning how the bonds should be sold.

29. He further testified that he did not recall discussions or negotiations concerning whether lenders should retain rather than liquidate the bonds and had no discussions concerning selection of an investment banker or auctioneer in connection with their sale.

30. Relevant excerpts of the Trustee's January 23, 2024 deposition are attached as **Exhibit C**.

31. Hild does not contend through this Motion that the foregoing testimony itself establishes any violation of duty.

32. It does, however, demonstrate why subsequent evidence concerning the pricing mechanisms affecting the bond portfolio presents a legitimate Estate-administration question deserving a substantive response under § 704(a)(7).

## THE TRUSTEE PREVIOUSLY ASSERTED ESTATE CLAIMS AGAINST IDC

33. The same January 23, 2024 deposition also establishes that the Trustee had previously pursued claims involving IDC, the pricing entity used in connection with the Live Well bond portfolio.
34. The Trustee testified that he did not believe a complaint against IDC had been filed, but that claims were asserted and resolved through payment of money.
35. When asked the amount, the Trustee testified that he believed the payment was "north of 20 million," while making clear that he did not recall the precise amount.
36. The Trustee further testified that the claims against IDC had been asserted on behalf of the bankruptcy Estate and Mirae.
37. Hild does not assert that the Estate itself received the entirety of any amount referenced by the Trustee.
38. The prior assertion and resolution of Estate claims involving IDC nevertheless makes directly relevant the question whether any settlement, release or disposition concerning IDC affected later-discovered potential Estate claims involving IDC, Foster, Bloomberg, Baird or related conduct.

## DEVELOPMENT OF THE FOSTER/BLOOMBERG EVIDENCE

39. The Foster/Bloomberg issue did not originate in Hild's subsequent petition under 28 U.S.C. § 2255.

40. Evidence concerning Foster, Bloomberg and the pricing of Live Well's HECM-IO securities was developed through discovery and motion practice connected to Adv. Pro. No. 21-50966 during 2024 and 2025.

41. In March 2024, Bloomberg produced documents in connection with that litigation concerning Live Well and the HECM-IO securities.

42. Hild's then-counsel subsequently raised with Bloomberg the issue whether Foster—who had previously been involved in Live Well's HECM-IO pricing—later supplied HECM-IO pricing information to Bloomberg after leaving Live Well.

43. The subsequently developed record included evidence that Bloomberg received quotes concerning identified securities from Foster and another contributor and evidence concerning a Bloomberg-Baird data-acquisition relationship under which HECM pricing information was supplied to Bloomberg.

44. The record further identified Foster among Baird personnel involved in the generation or provision of such pricing information.

45. On February 25, 2025, while represented by Delaware counsel, Hild and the other Hild defendants filed D.I. 177 in Adv. Pro. No. 21-50966.

46. D.I. 177 expressly presented the contention that Foster supplied pricing information to Bloomberg after leaving Live Well; that Bloomberg's resulting values differed materially from Live Well/IDC values; and that Live Well's lenders relied upon Bloomberg pricing in events that contributed to Live Well's insolvency and failure.

47. On June 23, 2025, D.I. 214 was filed in the adversary proceeding. That filing substantially expanded the evidentiary chronology concerning Foster, Bloomberg, IDC/ICE, the SEC, and Live Well's repo lenders.

48. Trustee counsel was served with those filings.

49. Thus, without asking the Court presently to determine the truth of the underlying allegations, the record demonstrates that by 2024–2025 evidence was being developed in litigation involving the Trustee that raised the possible existence of claims belonging to Live Well or its Estate.

**SUBSEQUENT CORROBORATING DEVELOPMENT**

50. The significance of the Foster/Bloomberg evidence has since been reinforced by an independent counseled filing.

51. On September 10, 2026, Darren Stumberger, a former Live Well employee and the Government's principal cooperating witness at Hild's criminal trial, filed a counseled motion under 28 U.S.C. § 2255 in the Southern District of New York.

52. That filing identifies, among other matters, Foster's role as a Bloomberg pricing contributor following his departure from Live Well, the IDC-to-Bloomberg pricing transition, and the reliability of the pricing benchmark as evidence material to Stumberger's own prosecution and plea.

53. Hild does not rely upon Stumberger's filing to establish liability against any third party in this Motion. It is identified only because it further demonstrates that the Foster/Bloomberg issue is a concrete factual matter being addressed independently in federal proceedings, rather than a hypothetical theory manufactured for this Motion.

## POTENTIAL LIMITATIONS ISSUES MAKE THE TRUSTEE'S ACTIONS MATERIAL

54. Potential Estate causes of action arising from conduct affecting Live Well during 2018–2019 may implicate statutes of limitation depending upon the cause of action, governing law, accrual date and availability of tolling.
55. Hild does not ask this Court through this Motion to decide which jurisdiction's law governs, when any claim accrued or whether any claim was timely.
56. Those questions are identified because they make the Trustee's administration of the potential asset consequential.
57. If the Trustee investigated the potential claims and concluded that they were untimely, Hild seeks the basic nonprivileged information identifying **when that determination was made, what category of claim was considered, what governing jurisdiction was used, what accrual date was applied, and what expiration date resulted.**
58. If the Trustee concluded that claims remained potentially viable, Hild seeks information identifying whether any tolling, standstill, claim notice, demand, insurance notice, preservation effort, or protective action was undertaken.
59. If no investigation occurred, Hild seeks a statement saying so.

## SECTION 704(a)(7) REQUIRES INFORMATION ABOUT ESTATE ADMINISTRATION

60. Section 704(a)(7) imposes an affirmative information obligation upon the Chapter 7 Trustee unless the Court orders otherwise.
61. The distinction between information concerning **what the Trustee did to administer an Estate asset** and discovery of the Trustee's underlying litigation or investigative files is well established.

62. In *In re Sports Accessories, Inc.*, 34 B.R. 80, 81–82 (Bankr. D. Md. 1983), a creditor sought information concerning what a Chapter 7 trustee had done to collect substantial accounts receivable. The court required the trustee to identify, among other things, what receivables remained outstanding, what had been collected, what litigation had been filed, what matters had been turned over for collection, and what accounts the trustee had elected not to pursue.

63. *In re Walters*, 136 B.R. 256, 258–59 (Bankr. C.D. Cal. 1992), distinguished between such Estate-administration information and underlying "audit materials" developed by professionals in connection with litigation. In discussing *Sports Accessories*, *Walters* agreed that "whether and to what extent" a Chapter 7 trustee acted to collect considerable accounts receivable for distribution to creditors constitutes information concerning the Estate and its administration. Id. at 259.

64. A recent decision applying § 704(a)(7) reaffirmed the same distinction. See *In re Newport 222 Mitchell Street, L.P.*, Case No. 24-54060-SMS, D.I. 68 at 7–8 (Bankr. N.D. Ga. May 27, 2026). In denying a creditor access to most materials gathered during a trustee's investigation, the court distinguished those investigative materials from the Estate-administration information at issue in *Sports Accessories* concerning "what, if anything, a trustee had done to collect a large account receivable after months of inactivity." *Id.* at 7.

65. Hild has structured his request to remain on the Estate-administration side of that line.

66. Hild does **not** seek Blank Rome's legal memoranda, attorney mental impressions, internal litigation analyses, witness interview materials, privileged communications, or the entirety of the Trustee's investigative file.

67. Instead, Hild seeks basic information comparable to that ordered in *Sports Accessories*: what potential claims were investigated, when they were investigated, whether they were preserved or pursued, whether they were settled or released, and whether the Trustee affirmatively elected not to pursue them.

68. That information concerns the administration of a potential Estate asset within the ordinary meaning of § 704(a)(7).

## THE PENDING ADVERSARY PROCEEDING DOES NOT DEFEAT THIS LIMITED REQUEST

69. The Trustee may contend that because Hild is a defendant in Adv. Pro. No. 21-50966, the requested information constitutes an attempt to circumvent ordinary adversary discovery.

70. It does not.

71. The Motion does not request discovery concerning the Trustee's affirmative fraudulent-transfer or other claims against Hild.

72. It concerns separate potential causes of action **belonging to the Estate against third parties** and asks only whether and to what extent the Trustee administered those potential assets.

73. *Sports Accessories* is instructive because the requesting creditor and trustee there were themselves opposing parties in separate federal litigation, yet the court still required the trustee to provide information concerning Estate administration.

74. The existence of adversarial litigation therefore does not extinguish § 704(a)(7)'s information obligation where the requested information concerns administration rather than merits discovery.

## THE SEPTEMBER 6 REQUEST REMAINS UNANSWERED

75. The September 6 correspondence asked the Trustee to identify whether he or his professionals:

a. investigated potential claims involving Foster, Bloomberg, IDC/ICE or related parties;

b. analyzed statutes of limitation and accrual dates applicable to such claims;

c. sought or obtained tolling or standstill agreements;

d. issued preservation notices or demand letters;

e. presented any claim to responsible parties or insurers;

f. filed or considered filing a protective action; or

g. made a determination not to pursue claims and, if so, when and on what nonprivileged factual basis.

76. It further requested that, if the Trustee contended any claims were already time-barred when the relevant evidence emerged, he identify the accrual date, governing law and limitations period upon which that position was based.

77. Those questions did not require the Trustee to undertake a new investigation by September 10. They asked what had already occurred in the administration of the Estate.

78. The Trustee did not provide a substantive response by the stated deadline.

79. **Nor has the Trustee furnished that information since.**

## RELIEF REQUESTED

80. Hild respectfully requests an Order requiring the Trustee, within fourteen (14) days after entry of the Order, to furnish in writing the information identified in **Schedule 1** to the proposed Order.

81. The requested relief deliberately does **not** require production of the Trustee's investigative files or privileged attorney communications.

82. The Trustee may answer a Schedule 1 item by stating that the identified action did not occur.

83. If responsive information cannot be provided without disclosing privileged attorney-client communications or protected attorney work product, the Trustee may identify the existence of that limitation without disclosing privileged substance.

84. Hild expressly reserves the right, after reviewing the Trustee's response, to seek appropriate relief under Fed. R. Bankr. P. 2004 or other applicable authority if further factual inquiry is warranted.

## NO DETERMINATION OF LIABILITY IS REQUESTED

85. This Motion does not ask the Court to determine that the Estate presently owns a viable claim against Foster, Bloomberg, Baird, IDC/ICE or anyone else.

86. It does not ask the Court to determine the monetary value of any potential claim.

87. It does not ask the Court presently to decide whether any limitations period expired.

88. And it does not ask the Court to determine whether the Trustee exercised appropriate business judgment or breached any legal or fiduciary duty.

89. Those questions cannot responsibly be evaluated until the basic Estate-administration information requested from the Trustee is known.

**CONCLUSION**

WHEREFORE, Michael C. Hild respectfully requests entry of the proposed Order:

A. requiring the Trustee, within fourteen (14) days after entry of the Order, to furnish in writing the information described in Schedule 1;

B. confirming that the Trustee need not disclose privileged attorney-client communications or protected attorney work product;

C. preserving all parties' claims, defenses, privileges, protections and positions concerning the existence, viability, ownership, value, limitations periods or disposition of any potential Estate cause of action; and

D. granting such other and further relief as the Court deems just and appropriate.

Dated: September 15, 2026

**Respectfully submitted,**

Michael C. Hild

Michael C. Hild
Pro Se

RECEIVED
2026 SEP 16 A 10:38
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

In re:

LIVE WELL FINANCIAL, INC.,

Debtor.

Chapter 7
Case No. 19-11317 (LSS)

---

**DECLARATION OF MICHAEL C. HILD IN SUPPORT OF MOTION FOR AN ORDER REQUIRING THE CHAPTER 7 TRUSTEE TO FURNISH INFORMATION CONCERNING THE ADMINISTRATION AND PRESERVATION OF POTENTIAL ESTATE CLAIMS**

---

**HEARING DATE AND TIME: September 30, 2026 AT 3:30 P.M. (ET)**

**OBJECTION DEADLINE: September 23, 2026 AT 4:00 P.M. (ET)**

I, Michael C. Hild, declare as follows:

1. I am a shareholder of Live Well Financial, Inc., a party in interest in the above-captioned bankruptcy case, and a defendant in *Carickhoff v. Hild*, Adv. Pro. No. 21-50966 (LSS). I submit this Declaration based upon my personal knowledge in support of the accompanying Motion.

2. On September 6, 2026, at my direction and on my behalf, an email was transmitted to Stanley B. Tarr and Michael D. Silberfarb, counsel for Chapter 7 Trustee David W. Carickhoff, attaching written correspondence from me concerning the Trustee's investigation and preservation of potential Estate claims involving Daniel Foster, Bloomberg and related persons and entities.

3. A true and correct copy of the September 6 transmitting email and attached correspondence is attached to the Motion as **Exhibit A.**

4. The September 6 correspondence requested a substantive response no later than September 10, 2026 at 5:00 p.m.

5. The correspondence requested information concerning, among other matters, whether the Trustee or his professionals investigated potential claims; analyzed limitations periods and accrual dates; sought tolling or standstill agreements; issued preservation or demand letters; presented claims to potentially responsible parties or insurers; considered protective litigation; or determined not to pursue potential claims.

6. I received no substantive response furnishing that information by September 10, 2026 at 5:00 p.m.

7. On September 11, 2026, at my direction and on my behalf, follow-up correspondence was transmitted to Mr. Tarr and Mr. Silberfarb advising that the September 10 deadline had passed without a substantive response and requesting that they advise whether the Trustee intended to respond.

8. A true and correct copy of that follow-up correspondence is attached as **Exhibit B**.

9. **As of the date of this Declaration, I have received no substantive response furnishing the requested information.**

10. I was personally present at the January 23, 2024 deposition of David W. Carickhoff in Adv. Pro. No. 21-50966.

11. Attached as **Exhibit C** are true and correct excerpts from the transcript of that deposition.

12. During that deposition, Mr. Carickhoff testified, among other things, that he had performed "no formal valuation" of the Live Well bonds after becoming Trustee.

13. Mr. Carickhoff also testified concerning claims asserted against IDC on behalf of the Estate and Mirae and stated that those claims had been resolved through payment of money.
14. I do not possess information establishing what investigation, limitations analysis, tolling efforts, claim-preservation measures, insurance presentation, protective litigation analysis, or decision-making the Trustee or his professionals undertook concerning potential Estate claims arising from the Foster/Bloomberg evidence.
15. That Estate-administration information is within the knowledge of the Trustee and/or his professionals.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on: September 15, 2026

Respectfully submitted,

Michael C. Hild

Michael C. Hild
Pro Se

**EXHIBIT A**

**Michael C. Hild's September 6, 2026 Correspondence to Counsel for the Chapter 7 Trustee**

Gmail **Michael Hild <michaelchristopherhild@gmail.com>**

## Live Well Financial – Potential Estate Claims Relating to Foster/Bloomberg

**Michael Hild** <michaelchristopherhild@gmail.com> Sun, Sep 6 at 12:21 PM
To: Michael D. Silberfarb <michael.silberfarb@blankrome.com>, Stanley B. Tarr <stanley.tarr@blankrome.com>

Mr. Silberfarb and Mr. Tarr,

Please see the attached correspondence concerning the Trustee's investigation and preservation of potential Estate claims relating to Dan Foster, Bloomberg, and related parties.

Please confirm receipt.

Thank you,

Michael C. Hild

Potential Estate Claims Relating to Foster_Bloomberg.pdf

September 6, 2026

Mr. Michael D. Silberfarb
BLANK ROME
1271 Avenue of the Americas
New York, NY 10020

Mr. Stanley Tarr
BLANK ROME
1201 N. Market Street, Suite 800
Wilmington, DE 19801

Re: In re Live Well Financial, Inc., Case No. 19-11317 (LSS) Carickhoff v. Hild, Adv. No. 21-50966 (LSS) Potential Estate Claims Relating to Foster/Bloomberg

Dear Mr. Silberfarb and Mr. Tarr:

The record in Carickhoff v. Hild, Adv. No. 21-50966, placed the Trustee on notice no later than 2024–2025 of evidence suggesting that Live Well Financial may possess substantial claims arising from conduct involving Dan Foster, Bloomberg, IDC/ICE and related parties concerning the pricing of Live Well's HECM IO securities and the resulting impact on Live Well and its repo lenders.

This issue was not first raised in Mr. Hild's subsequent §2255 petition. The Foster/Bloomberg theory and supporting evidence were previously presented in the Delaware adversary proceeding, including D.I. 177 and the substantially expanded evidentiary presentation in D.I. 214 and its incorporated Exhibits A–R.

Because any viable causes of action belonging to Live Well constitute potential property of the Estate, and because the Chapter 7 Trustee is charged with investigating and administering Estate assets, please provide the factual basis demonstrating what actions the Trustee has taken to investigate and preserve the Estate's potential claims arising from this conduct.

Specifically, please identify whether the Trustee or his professionals:

- investigated potential claims against Foster, Bloomberg, IDC/ICE or related parties;
- analyzed the statutes of limitation and accrual dates applicable to those claims;
- sought or obtained any tolling or standstill agreements;
- issued preservation or demand letters;
- presented any claim to any potentially responsible party or insurer;
- filed or considered filing any protective action; or
- made a determination not to pursue such claims and, if so, when that determination was made and on what legal and factual basis.

Given the potentially substantial value of these claims to the Estate, Mr. Hild requests a substantive response **by September 10, 2026, 5:00 pm.**

If the Trustee contends those claims were already time-barred when the relevant evidence was developed in the adversary proceeding, please identify the accrual date, governing law and limitations period upon which that position is based.

Mr. Hild remains willing to provide and explain the complete evidentiary record developed concerning Foster/Bloomberg and to cooperate with the Trustee in evaluating or pursuing any viable Estate recovery. Nothing in this communication constitutes an admission or waiver of any claim, defense, privilege or position held by Mr. Hild or the Hild parties.

Given the Trustee's pending claims against Mr. Hild and the Hild parties, Mr. Hild also remains willing to discuss whether his cooperation in obtaining a substantial additional recovery for the Estate can form part of a broader negotiated resolution.

**Respectfully submitted,**

Michael C. Hild

Michael C. Hild
Pro Se

# EXHIBIT B

**Michael C. Hild's September 11, 2026 Follow-Up Correspondence to Counsel for the Chapter 7 Trustee**

Gmail **Michael Hild <michaelchristopherhild@gmail.com>**

---

**Re: Live Well Financial – Potential Estate Claims Relating to Foster/Bloomberg**

---

**Michael Hild** <michaelchristopherhild@gmail.com> Fri, Sep 11 at 7:32 AM
To: Michael D. Silberfarb <michael.silberfarb@blankrome.com>, Stanley B. Tarr <stanley.tarr@blankrome.com>

Mr. Silberfarb and Mr. Tarr,

The September 10, 2026 at 5:00 p.m. deadline set forth in my September 6 correspondence has passed, and I have received no substantive response.

Please advise promptly whether the Trustee intends to respond to the matters raised in that correspondence.

All rights are reserved.

Michael C. Hild

> On Sep 6, 2026, at 12:21PM, Michael Hild <michaelchristopherhild@gmail.com> wrote:
>
> Mr. Silberfarb and Mr. Tarr,
>
> Please see the attached correspondence concerning the Trustee's investigation and preservation of potential Estate claims relating to Dan Foster, Bloomberg, and related parties.
>
> Please confirm receipt.
>
> Thank you,
>
> Michael C. Hild
>
> <Potential Estate Claims Relating to Foster_Bloomberg.pdf>

# EXHIBIT C

**Excerpts from January 23, 2024 Deposition of David W. Carickhoff *Carickhoff v. Hild*, Adv. Pro. No. 21-50966 (LSS)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

\- - -

IN RE: : Chapter 7
:
LIVE WELL FINANCIAL, INC. :
:
Debtor.:
:
DAVID W. CARICKHOFF, : Case No.: 19-11317(LSS)
solely in his capacity as :
chapter 7 trustee of LIVE :
WELL FINANCIAL, INC., :
:
v. :
:
MICHAEL C. HILD, LAURA D. : Adv Pro No. 21-50966(LSS)
HILD, CHURCH HILL VENTURES:
et al, :

\- - -

January 23, 2024

\- - -

Oral deposition of DAVID CARICKHOFF, taken pursuant to Notice, held at Blank Rome, 1201 N. Market Street, Suite 800, Wilmington, Delaware 19801, beginning at approximately 12:00 p.m., before Mary Hammond, a Registered Professional Reporter and Notary Public in the state of Pennsylvania.

\- - -

A-P-P-E-A-R-A-N-C-E-S

GELLERT SCALI BUSENKELL & BROWN, LLC
BY: CHARLES J. BROWN, III, ESQUIRE
1201 N. Orange Street
3rd Floor
Wilmington, Delaware 19801
cbrown@gsbblaw.com
Counsel for Plaintiff

BLANK ROME LLP
BY: MICHAEL SILBERFARB, ESQUIRE
1271 Avenue of the Americas
New York, New York 10020
msilberfarb@blankrome.com
Counsel for Defendant

CHIPMAN BROWN CICERO & COLE, LLP
BY: BRYAN HALL, ESQUIRE
1313 N. Market Street
Suite 5400
Wilmington, Delaware 19801
Hall@chipmanbrown.com
Counsel for Defendant

Also Present: Michael Hild
Laura Hild

\- - -

I-N-D-E-X

\- - -

WITNESS:

DAVID CARICKHOFF


| | PAGE |
|---|---|
| BY MR. BROWN | 4 |
| BY MR. SILBERFARB | -- |
| BY MR. HALL | -- |


\- - -

E-X-H-I-B-I-T-S

\- - -

| NAME | DESCRIPTION | PAGE |
|---|---|---|

(Whereupon, there were no exhibits marked at this time.)

a fluctuation, that -- that would be a risk.
BY MR. BROWN:
Q. Okay. Do you know whether the coupon payments were guaranteed by the Government?
A. I have no idea.
Q. Okay. Do you know whether the bonds were adjustable rate or fixed rate?
A. The bonds?
Q. Yeah.
A. I don't know that.
Q. Okay. Have you done any valuation of the Live Well bonds since becoming trustee?
MR. SILBERFARB: Objection to form.
You can answer.
THE WITNESS: No formal valuation.
BY MR. BROWN:
Q. Okay. To your knowledge, did any of the Live Well lenders do any valuation of any of the bonds, the Live Well bonds?

A. Yeah. I -- I think we say in the Complaint that -- that there were folks that had pricing done on the bonds, so, yes.
Q. Who -- who did the pricing?
A. I -- I think Nomura may have done it independently. I'm not sure. I believe there was -- Bloomberg may have priced them.
So when you say "valuation," I'm just talking about a -- a pricing.
Q. Right.
A. So I don't -- I don't know if we're talking the same speak, but that's what I'm talking.
Q. Okay. So -- all right.
Bloomberg's not a lender, but Nom- -- Nomura was a lender is your understanding?
A. At one point it was, yeah.
Q. Okay. Did you as the trustee possess or control any of the Live Well bonds during the pendency of the case?
A. I don't believe so, no.
Q. Okay. So what's your understanding, as far as what happened with

the bonds and who had control over the bonds when the case was filed?

MR. SILBERFARB: Objection. Calls for a legal conclusion.

But you can answer.

THE WITNESS: Sure.

My understanding was that the bonds were subject to repurchase agreements, and that the various repo counter-parties had control over the bonds at that point in time.

BY MR. BROWN:

Q. Okay. When you became trustee, did you have any discussions with any of the Live Well lenders that took possession of the Live Well bonds regarding the sale of those bonds?

A. Yes.

Q. Okay. And what were those discussions?

A. I -- one of the lenders, I think, in connection with filing a proof of claim, wasn't sure whether they had to liquidate the bonds in order to be able to file a proof of claim, so the discussion was in connection

with that aspect.
Q. Okay. Do you know what lender that was?
A. I don't recall, off the top of my head.
Q. Okay. Were there any discussions or negotiations with any of the Live Well lenders as to how any sale of the bonds should take place?
A. No.
Q. Okay. Other than the discussion with the one lender about filing the proof of claim, were there any discussions or negotiations as to whether the lender should hold on to the bonds, as opposed to liquidating them?
A. Not that I recall.
Q. Okay. Did you have any discussions or negotiations with any of the Live Well lenders as to who should be hired as an investment banker or auctioneer in connection with the sale or auction of any of the Live Well bonds?
A. No.

Q. Okay. Do you have any kind of Joint Defense Agreement or Joint Prosecution Agreement with any of the Live Well lenders?
A. Yes.
Q. Okay. And what can you tell me about that agreement?
A. Sure. I think it's filed with the Court. It's the agreement with Mirae. It's on the docket.
We had a settlement with them where we would basically pool our claims together, and prosecute those collectively when it was applicable.
Q. Okay. And did you file a claim against IDC in connection with that agreement?
A. I don't know if we filed a claim against IDC. We certainly asserted a claim against IDC, and I -- I --
Are you talking about the pricing entity, IDC?
Q. Yes. Yes, I am.
A. Sure. Yeah.
So I don't -- I don't believe a

Complaint was ever filed, but that -- this was a couple years ago, but claims were asserted, and claims were resolved.

Q. Okay. How -- how much was -- how -- how was the claim against IDC resolved?

A. By pay- --

Q. That particular one.

A. Yeah. Payment of money.

Q. Okay. How much money?

A. I think it was north of 20 million, but I don't have an exact recollection.

Q. Okay. Did you do this -- did -- did you assert claims against IDC in connection with any other lender?

A. The claims asserted against IDC were on behalf of the bankruptcy Estate --

Q. Okay.

A. -- and on behalf of Mirae.

Q. Okay. Were there any claims asserted against IDC on behalf of the bankruptcy Estate and Flagstar Bank?

A. I don't -- I don't understand your question.

Q. Okay. The Settlement Agreement that was reached with -- between, I guess, the Estate, Mirae, and IDC, was there something similar with respect to Flagstar Bank?

MR. SILBERFARB: Objection.
You can answer, if you understand.

THE WITNESS: If -- if -- if -- if -- if Flagstar had their own agreements, I don't -- I've never seen it, so I don't...

BY MR. BROWN:

Q. Okay. So you were not involved with any agreement that Flagstar may have reached with IDC?

A. I was not involved with that. That's correct.

Q. Okay. Other -- other than that agreement with Mirae, were there any other similar agreements with any of the Live Well lenders?

MR. SILBERFARB: Objection. Vague.

But you can answer if you understand.

THE WITNESS: Okay.

I don't -- so we had a number of settlements earlier on in the case dealing with a -- a number of different banks with collateral, so there were other lenders.

But in terms of similar to this nature of settlement, are you talking with -- with IDC in particular, like, the --

BY MR. BROWN:

Q. Well, I'm talking really about any kind of, like, Joint Defense, Joint Prosecution Agreement, that you would have formally entered into or informally entered into with any of the lenders.

A. No.

MR. SILBERFARB: Same objection.

THE WITNESS: Yeah. I'm -- I'm not aware of --

BY MR. BROWN:

Q. Okay.

- - -

C-E-R-T-I-F-I-C-A-T-I-O-N

- - -

I hereby certify that the witness was duly sworn in for this deposition matter by the Court Reporter.

Mary Hammond
Mary Hammond
January 23, 2024

(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the direct control and/or supervision of the Registered Professional Reporter.)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

In re:

LIVE WELL FINANCIAL, INC.,

Debtor.

Chapter 7
Case No. 19-11317 (LSS)

---

**ORDER GRANTING MOTION OF MICHAEL C. HILD FOR AN ORDER REQUIRING THE CHAPTER 7 TRUSTEE TO FURNISH INFORMATION CONCERNING THE ADMINISTRATION AND PRESERVATION OF POTENTIAL ESTATE CLAIMS PURSUANT TO 11 U.S.C. §§ 105(a) AND 704(a)(7)**

---

**Related Docket No. ____**

**Upon consideration of the Motion of Michael C. Hild for an Order Requiring the Chapter 7 Trustee to Furnish Information Concerning the Administration and Preservation of Potential Estate Claims Pursuant to 11 U.S.C. §§ 105(a) and 704(a)(7) (the "Motion"); and due and sufficient notice of the Motion having been given; and after due deliberation and sufficient cause appearing therefor;**

**IT IS HEREBY ORDERED THAT:**

1. **The Motion is GRANTED as set forth herein.**
2. **Within fourteen (14) days after entry of this Order, David W. Carickhoff, Chapter 7 Trustee of Live Well Financial, Inc. (the "Trustee"), shall furnish to Michael C. Hild in writing the Estate-administration information identified in Schedule 1 attached hereto.**

3. **Nothing in this Order requires the Trustee or his professionals to disclose attorney-client privileged communications, attorney mental impressions, protected attorney work product, or other information protected by applicable law.**
4. **If the Trustee contends that a particular item in Schedule 1 cannot be answered without disclosure of privileged or protected information, the Trustee may so state and shall provide any responsive nonprivileged factual information that can reasonably be separated from privileged or protected matter.**
5. **Nothing in this Order requires production of the Trustee's or his professionals' litigation files, internal legal memoranda, witness interview materials, or other underlying investigative materials.**
6. **Nothing in this Order constitutes a determination that any cause of action identified in the Motion exists or existed; that any such cause of action is or was timely; that any person is liable to the Estate; or that the Trustee or any professional satisfied or breached any legal or fiduciary duty.**
7. **All parties' claims, defenses, privileges, protections and positions concerning those matters are expressly preserved.**
8. **This Court retains jurisdiction to interpret and enforce this Order.**

---

**SCHEDULE 1**

**INFORMATION TO BE FURNISHED BY THE TRUSTEE**

**For purposes of this Schedule, "Potential Estate Claims" means potential causes of action belonging to Live Well Financial, Inc. or its bankruptcy Estate arising from or relating to Daniel Foster's provision of HECM-IO pricing, quotes, valuations or related information to Bloomberg; Bloomberg's receipt, use, incorporation or publication of such information; related conduct involving Robert W. Baird & Co., IDC/ICE or other participants; or alleged resulting injury to Live Well or its business relationships.**

**The Trustee shall furnish the following information:**

**1. Initial Knowledge.**

**Identify the approximate date upon which the Trustee or professionals acting on his behalf first became aware that Daniel Foster had supplied HECM-IO pricing, quotes, valuations or related information to Bloomberg.**

**2. Bloomberg Use.**

**Identify the approximate date upon which the Trustee or his professionals first became aware of evidence that Bloomberg had received, used, considered or incorporated pricing information supplied by Foster concerning securities owned or financed by Live Well.**

**3. Baird Relationship.**

**Identify the approximate date upon which the Trustee or his professionals first became aware of the Bloomberg-Baird data-acquisition relationship and evidence that Foster participated in generating or supplying HECM pricing information through Baird.**

**4. Investigation.**

**State whether the Trustee or his professionals conducted any investigation into Potential Estate Claims and, if so:**

**a. approximately when that investigation began;**

**b. approximately when it concluded, if concluded;**

**c. which persons or entities were evaluated as potentially responsible; and**

**d. the general categories of claims considered.**

**No privileged legal analysis is requested.**

**5. Limitations Analysis.**

**State whether the Trustee or his professionals evaluated statutes of limitation or accrual dates applicable to Potential Estate Claims.**

**If so, identify, for each category of claim evaluated:**

**a. the governing jurisdiction considered;**

**b. the accrual date used or considered;**

**c. the applicable limitations period; and**

**d. the resulting expiration date used or considered.**

**No privileged reasoning or attorney communications are requested.**

**6. Tolling or Standstill.**

**State whether the Trustee or his professionals sought, requested, negotiated or obtained any tolling or standstill agreement concerning a Potential Estate Claim and, if so, identify:**

**a. the counterparty;**

**b. the approximate date; and**

**c. the period during which the agreement operated, if one was obtained.**

**7. Preservation or Demand Measures.**

**State whether the Trustee or his professionals sent any preservation notice, demand letter, notice of claim, or similar communication asserting or preserving a Potential Estate Claim and, if so, identify:**

**a. the recipient;**

**b. the approximate date; and**

**c. the general nature of the communication.**

**8. Insurance.**

**State whether any Potential Estate Claim was presented to an insurer or identified by the Trustee as potentially covered by insurance and, if so, identify the insurer and approximate date of presentation.**

**9. Protective Litigation.**

**State whether the Trustee considered commencement of a protective action to preserve any Potential Estate Claim before expiration of a limitations period and, if so, identify the approximate date upon which a decision was made to file or not file such an action.**

**No privileged legal reasoning is requested.**

**10. Determination That Claim Was Time-Barred.**

**If the Trustee determined that any Potential Estate Claim was barred by limitations, identify:**

**a. the general category of cause of action;**

**b. the approximate date the determination was made;**

**c. the jurisdiction whose law was applied or considered;**

**d. the accrual date used; and**

**e. the resulting expiration date.**

**11. Determination Not to Pursue.**

**If the Trustee made an affirmative determination not to investigate further or not to pursue a Potential Estate Claim for reasons other than limitations, identify:**

**a. the approximate date of that determination; and**

**b. the nonprivileged factual basis for the determination.**

**No privileged legal advice or attorney mental impressions are requested.**

**12. IDC Claim and Resolution.**

**With respect to the IDC claim referenced in the Trustee's January 23, 2024 deposition, identify:**

**a. the date on which the Estate first asserted the claim against IDC;**

**b. the parties to the resolution or settlement;**

**c. the approximate date of resolution;**

**d. whether Court approval was obtained and, if so, the docket number of the**

**approval order;**

**e. the amount, if any, received specifically for the benefit of the Live Well Estate; and**

**f. whether the Trustee contends that the resolution or release extinguished, released or otherwise affected any Potential Estate Claim later arising from or discovered concerning Foster, Bloomberg, Baird or IDC/ICE pricing conduct.**

**13. Other Settlement, Release or Disposition.**

**State whether the Trustee has assigned, settled, released, abandoned, waived or otherwise disposed of any Potential Estate Claim and, if so, identify:**

**a. the claim;**

**b. the date and manner of disposition; and**

**c. any Court order authorizing the disposition.**

**14. No Investigation.**

**If the Trustee or his professionals conducted no investigation of Potential Estate Claims, state that fact.**

**15. No Responsive Action.**

**For any item above as to which the identified action did not occur, the Trustee may answer simply that no such action occurred.**

RECEIVED
2026 SEP 16 A 10:38
CLERK
US BANKRUPTCY COURT

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2026, I caused the foregoing **Michael C. Hild's Motion for an Order Requiring the Chapter 7 Trustee to Furnish Information Concerning the Administration and Preservation of Potential Estate Claims Pursuant to 11 U.S.C. §§ 105(a) and 704(a)(7)**, together with the Notice of Motion, Declaration of Michael C. Hild, Exhibits A–C, and Proposed Order, to be transmitted to the United States Bankruptcy Court for the District of Delaware by FedEx Priority Overnight for delivery on September 16, 2026 and served by electronic mail upon the following counsel for the Chapter 7 Trustee:

- Stanley B. Tarr — stanley.tarr@blankrome.com
- Lorenzo R. Thomas III — lorenzo.thomas@blankrome.com
- Michael B. Schaedle — mike.schaedle@blankrome.com
- Michael D. Silberfarb — michael.silberfarb@blankrome.com

________________________

**Laura D. Hild**
Solely for purposes of certifying service