**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| LIVE WELL FINANCIAL, INC., | Case No. 19-11317 (LSS) |
| Debtor. | Re: D.I. 646, 650 |
| | Hearing: September 30, 2026 at 3:30 p.m. (ET) |

**REPLY OF MICHAEL C. HILD IN SUPPORT OF HIS MOTION FOR AN ORDER REQUIRING THE CHAPTER 7 TRUSTEE TO FURNISH INFORMATION CONCERNING THE ADMINISTRATION AND PRESERVATION OF POTENTIAL ESTATE CLAIMS PURSUANT TO 11 U.S.C. §§ 105(a) AND 704(a)(7)**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. THE TRUSTEE BEARS THE BURDEN OF JUSTIFYING NONDISCLOSURE, AND § 704(a)(7) IS NOT LIMITED TO "FINANCIAL INFORMATION" ........ 2

A. Section 704(a)(7) imposes a mandatory, broadly construed duty. ........ 2

B. The Trustee has neither answered the request nor sought a protective order. ........ 4

II. THE MOTION SEEKS ESTATE-ADMINISTRATION FACTS, NOT THE TRUSTEE'S FILES OR MENTAL IMPRESSIONS ........ 4

A. The decisions on which both sides rely draw a line that the Motion respects. ........ 4

B. Facts are not privileged, and the Proposed Order protects what is. ........ 6

C. The Trustee's remaining authorities do not help him. ........ 6

III. NEITHER THE ADVERSARY PROCEEDING NOR THE § 2255 PETITION DISPLACES § 704(a)(7) ........ 7

IV. THE IDC AND FOSTER SETTLEMENTS DO NOT MOOT THE MOTION ........ 9

V. THE TRUSTEE'S UNSWORN CONCLUSION THAT NO "COLORABLE" CLAIM EXISTS IS A REASON TO ANSWER, NOT TO WITHHOLD ........ 10

VI. IF THE COURT FINDS ANY ITEM TOO BROAD, IT SHOULD NARROW THE ITEM RATHER THAN DENY THE MOTION ........ 13

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Asbestos Prods. Liab. Litig. (No. VI)*, 256 F.R.D. 151 (E.D. Pa. 2009) ............ 13

*Bayer AG v. Betachem, Inc.*, 173 F.3d 188 (3d Cir. 1999) ............ 13

*In re Cahill*, 642 B.R. 813 (Bankr. N.D. Ill. 2022) ............ 2, 3

*In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014) ............ 3

*In re Hardwood P-G, Inc.*, 403 B.R. 445 (Bankr. W.D. Tex. 2009) ............ 6

*In re Lee Way Holding Co.*, 120 B.R. 881 (Bankr. S.D. Ohio 1990) ............ 6

*In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261 (3d Cir. 1991) ............ 13

*Miller v. Mott (In re Team Sys. Int'l, LLC)*, Adv. Pro. No. 23-50004-CTG, Hr'g Tr. (Bankr. D. Del. Feb. 11, 2026) ............ 8

*In re Munce*, No. 13-45569, 2017 WL 4564706 (Bankr. W.D. Wash. Oct. 11, 2017) ............ 7

*In re Newport 222 Mitchell St., L.P.*, No. 24-54060-SMS, 2026 WL 1488930 (Bankr. N.D. Ga. May 27, 2026) ............ passim

*In re NWFX, Inc.*, 267 B.R. 118 (Bankr. W.D. Ark. 2001) ............ 3

*In re Pearlstein*, No. 17-32770-THP7, 2022 WL 1492236 (Bankr. D. Or. May 11, 2022) ............ passim

*Pineiro v. Pension Benefit Guar. Corp.*, 318 F. Supp. 2d 67 (S.D.N.Y. 2003) ............ 3

*In re Refco Inc.*, 336 B.R. 187 (Bankr. S.D.N.Y. 2006) ............ 2

*Speleos v. McCarthy*, 201 B.R. 325 (D.D.C. 1996) ............ 7

*In re Sports Accessories, Inc.*, 34 B.R. 80 (Bankr. D. Md. 1983) ............ passim

*In re Travelstead*, 212 B.R. 505 (Bankr. D. Md. 1997) ............ 6

*United States v. Hild*, No. 19-cr-602 (RA), Dkt. 245 (S.D.N.Y. July 10, 2024) ............ 11

*United States v. Hild*, No. 23-6136-CR, 2025 WL 2924205 (2d Cir. Oct. 15, 2025) ............ 12

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ............ 6

*In re Walters*, 136 B.R. 256 (Bankr. C.D. Cal. 1992) ............ 3, 4, 5, 7

*In re Wash. Mut., Inc.*, 408 B.R. 45 (Bankr. D. Del. 2009) ............ 8

**Statutes and Rules**

11 U.S.C. § 105(a) ............ 13

11 U.S.C. § 704(a)(7) ............ passim

28 U.S.C. § 2255 ............ 1, 7, 8, 12

Fed. R. Bankr. P. 2004 ............ 8, 11

Fed. R. Bankr. P. 9019 .......... 10

**PRELIMINARY STATEMENT**

1. Michael C. Hild, a shareholder and party in interest, submits this reply in support of his Motion [D.I. 646] (the "Motion") and in response to the Chapter 7 Trustee's Objection [D.I. 650] (the "Objection" or "Obj.").[1]

2. The Motion asks a narrow question of Estate administration: after evidence surfaced that Daniel Foster supplied HECM-IO pricing to Bloomberg after leaving Live Well, what did the Trustee do to investigate, evaluate, and preserve any resulting Estate claims? D.I. 646 ¶¶ 1–5. The relief is a written statement of dates and yes-or-no facts (Schedule 1), with express carve-outs for privileged communications, work product, and the Trustee's files, memoranda, and interview materials. *Id.* ¶¶ 66, 80–83; Proposed Order ¶¶ 3–5 (D.I. 646 at 42–43).

3. Section 704(a)(7) makes furnishing that information the Trustee's duty "unless the court orders otherwise," and the burden of obtaining such an order is the Trustee's. *In re Pearlstein*, No. 17-32770-THP7, 2022 WL 1492236, at *3 (Bankr. D. Or. May 11, 2022). The Objection, which is unsupported by any declaration, does not carry that burden. It does not dispute that Hild is a party in interest or that the Trustee never answered the September 6 and 11 requests. D.I. 646 ¶¶ 7–11, 18. Instead, it (i) recasts a request for facts as a demand for "mental impressions" and "work product" (Obj. ¶¶ 3, 7); (ii) asserts that § 704(a)(7) reaches only "financial information" (*id.* ¶¶ 4, 9), a limit found neither in the statute nor in the cases; (iii) attacks Hild's motives and conviction (*id.* ¶¶ 1–4), although the "threshold issue" is "the nature

[1]Exhibits to this Reply are cited as "Ex. A" and "Ex. B"; the exhibits to the Motion are cited as "D.I. 646, Ex. A," "D.I. 646, Ex. B," and "D.I. 646, Ex. C." Exhibit A is the Memorandum of Law in Support of Petitioner Darren Stumberger's Motion Pursuant to 28 U.S.C. § 2255, *United States v. Stumberger*, No. 19-cr-608 (RA) (S.D.N.Y. Sept. 10, 2026), ECF No. 49 ("Stumberger Mem."). Exhibit B is the Declaration of Darren Stumberger, *id.*, ECF No. 50 ("Stumberger Decl."). Page citations to both are to the ECF-stamped pagination.

of the information sought," not "why the creditor wants it," *In re Newport 222 Mitchell St., L.P.*, No. 24-54060-SMS, 2026 WL 1488930, at *3 (Bankr. N.D. Ga. May 27, 2026)—the decision on which the Trustee himself relies[2]; and (iv) says that a 2021 settlement with the ICE pricing entity and a 2022 settlement with Foster moot the Motion (*id.* ¶ 7), although neither mentions Bloomberg or Baird and both predate by years the evidence at issue.

4. At a minimum, the clause "unless the court orders otherwise" lets the Court tailor relief rather than deny it. Proposed Order ¶ 4 already provides a mechanism for privilege, and Part VI below identifies the core items the Court should order if it trims Schedule 1.

## ARGUMENT

## I. THE TRUSTEE BEARS THE BURDEN OF JUSTIFYING NONDISCLOSURE, AND § 704(a)(7) IS NOT LIMITED TO "FINANCIAL INFORMATION"

### A. Section 704(a)(7) imposes a mandatory, broadly construed duty.

5. The trustee "shall . . . unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest." 11 U.S.C. § 704(a)(7). Congress replaced the earlier qualifier "reasonably requested" with "requested," a change that "tends to make a request for information difficult for the trustee to avoid" and was intended "to shift to the court the determination of the reasonableness of a request." *In re Sports Accessories, Inc.*, 34 B.R. 80, 81 (Bankr. D. Md. 1983). Courts accordingly describe the duty as "a broad and extensive one," reflecting a "policy of open inspection" that "is fundamental to the operation of the bankruptcy system." *In re Cahill*, 642 B.R. 813, 821 (Bankr. N.D. Ill. 2022) (quoting *Pearlstein*, 2022 WL 1492236, at *2); *accord In re Refco Inc.*, 336 B.R. 187, 193 (Bankr. S.D.N.Y. 2006) (applying § 704(7) case law by analogy; the duty "is fairly

---

[2]The Objection cites *Newport* as "75 B.R. 170." Obj. ¶ 5. The decision is reported at 2026 WL 1488930 and 75 Bankr. Ct. Dec. 170. Page references here are to the Westlaw star pages.

extensive, as § 704(7) places the burden of providing requested information on the trustee, and reflects the overriding duty to keep parties in interest informed") (citing *Pineiro v. Pension Benefit Guar. Corp.*, 318 F. Supp. 2d 67, 102 (S.D.N.Y. 2003)); *see also In re NWFX, Inc.*, 267 B.R. 118, 209 (Bankr. W.D. Ark. 2001) (trustee who failed to furnish requested information "breached the fiduciary duty owed to [the requester] as a party in interest").

6. The Objection's premise that § 704(a)(7) reaches only "financial information" (Obj. ¶¶ 4, 9) has no footing in the text, which covers "information concerning the estate and the estate's administration," and the Trustee cites no decision so holding. The decisions apply the statute to what a trustee has done with Estate assets and claims. *Sports Accessories* directed the trustee to state what receivables remained outstanding, what litigation had been filed to collect them, what cases had been turned over to counsel, and "[w]hat accounts . . . the trustee . . . elected not to pursue further." 34 B.R. at 82. *Cahill* ordered a trustee, who did not resist, to provide "information regarding his decision to voluntarily dismiss" a complaint against a third party. 642 B.R. at 821. And the Trustee's own authority, *In re Walters*, 136 B.R. 256, 258 (Bankr. C.D. Cal. 1992), treats as disclosable the information that lets creditors "determine whether the trustee . . . is protecting their interests in the property of the estate," including "[w]hether and to what extent a Chapter 7 trustee has acted to collect" an asset. *Id.* at 258–59.

7. A potential cause of action is property of the Estate, and creditors lack standing to pursue it. *See In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) (after a bankruptcy filing, "creditors lack standing to assert claims that are 'property of the estate'") (quotation omitted). Whether, when, and how the Trustee acted to investigate and preserve such claims is therefore "information concerning the estate and the estate's administration" in the plainest sense.

### B. The Trustee has neither answered the request nor sought a protective order.

8. If a trustee does not wish to comply with a request, the Code gives him two choices: "to provide the information anyway" or "seek entry of an appropriate protective order." *Pearlstein*, 2022 WL 1492236, at *3. "[T]he burden is on the trustee to obtain a court order excusing the trustee from the duty of providing the information, and not on the party in interest to compel production of the information." *Id.* That is "a burden that Congress placed on trustees when Congress enacted section 704(a)(7)." *Id.*

9. The Trustee did not answer the September 6 and 11 requests and has not moved for protection. D.I. 646 ¶¶ 7–11, 78–79. His Objection rests on characterization rather than evidence: it attaches no declaration, and it never addresses a single item of Schedule 1.

## II. THE MOTION SEEKS ESTATE-ADMINISTRATION FACTS, NOT THE TRUSTEE'S FILES OR MENTAL IMPRESSIONS

### A. The decisions on which both sides rely draw a line that the Motion respects.

10. *Sports Accessories*, *Walters*, and *Newport* draw the same line. On one side is information about what the trustee has done to administer an estate asset. In *Sports Accessories*, the creditor sought "to find out what the trustee has done with respect to administration of the estate and particularly with regard to the collection of the accounts receivable," and the court ordered disclosure "[c]onsidering the overriding duty of the trustee to keep creditors informed." 34 B.R. at 81–82. On the other side is "information developed by the trustee's professionals for the prosecution of an adversary proceeding," which *Walters* held outside the statute. 136 B.R. at 258. *Walters* explained that audit materials "prepared to assist Trustee in determining the extent of the facts underlying his causes of action" differ from a request for "what steps Trustee was taking to prosecute that action diligently," which would be information the trustee must furnish. *Id. Newport* applied the same distinction, describing *Sports Accessories* as a case in which a

creditor sought information "to determine what, if anything, a trustee had done to collect a large account receivable after months of inactivity." 2026 WL 1488930, at *4.

11. The Motion sits on the disclosable side of that line. Schedule 1 asks when the Trustee learned of the Foster/Bloomberg/Baird evidence (Items 1–3); whether he investigated and, if so, when and as to which persons (Item 4); whether limitations, tolling, preservation, insurance, or protective action was considered or taken (Items 5–9); whether he determined that any claim was time-barred or not worth pursuing, and when (Items 10–11); and whether any claim was settled, released, or otherwise disposed of (Items 12–13). D.I. 646 at 44–48. These are the modern counterparts of "[w]hat accounts . . . the trustee . . . elected not to pursue," not "the facts underlying" any cause of action. Each can be answered with a date or a yes-or-no response, and Item 15 allows the Trustee to answer simply that an action did not occur. *Id.* at 48. The Proposed Order excludes "litigation files, internal legal memoranda, witness interview materials, or other underlying investigative materials" (¶ 5)—the very materials *Walters* and *Newport* shielded.

12. *Newport* is not to the contrary. There, a creditor with "an extensive history" of disputes with a third party sought "all documents" that party had given the trustee during his investigation, "including a slide deck and other documents created by [the third party] and its counsel." 2026 WL 1488930, at *2–*3. The court denied those documents, which "belong[ed] to a third party and w[ere] collected by the Trustee solely for the purpose of determining whether to pursue claims," *id.* at *4, but ordered production of bank statements as "clearly information concerning the estate and the estate's administration," *id.* at *2–*3. Its observation that a "desire to investigate the prudence of a trustee's decision not to pursue claims against a third party" was not a basis "to require a trustee to produce his files," *id.* at *3, answered a demand for files. Hild

seeks no files, no third-party documents, and no review of the Trustee's business judgment. D.I. 646 ¶¶ 3, 66, 88. He asks whether and when the Trustee acted—the question *Newport* recognized *Sports Accessories* to permit. 2026 WL 1488930, at *4.

**B. Facts are not privileged, and the Proposed Order protects what is.**

13. "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Work product likewise "does not extend to the underlying facts relevant to the litigation." *In re Hardwood P-G, Inc.*, 403 B.R. 445, 470 (Bankr. W.D. Tex. 2009) (quotation omitted); *see also In re Travelstead*, 212 B.R. 505, 508 (Bankr. D. Md. 1997) (although some testimony might be privileged, the U.S. Trustee "may not evade discovery of nonprivileged facts"). The date on which the Trustee learned of a fact, whether he asked a third party for a tolling agreement, whether he presented a claim to an insurer, and whether a claim was released are facts, not attorney-client communications.

14. Where a particular item cannot be answered without revealing privileged content, Proposed Order ¶ 4 lets the Trustee say so and answer the rest. The party asserting privilege bears the burden of establishing it, and "[a] privilege log is an appropriate means to meet that burden." *Pearlstein*, 2022 WL 1492236, at *3. The Objection's assertion that the requested information "undoubtedly consists of" the Trustee's "mental impressions, conclusions, opinions, legal theories, documents, and tangible things" (Obj. ¶ 3) is unsupported; Schedule 1 calls for none of them.

**C. The Trustee's remaining authorities do not help him.**

15. *In re Lee Way Holding Co.*, 120 B.R. 881, 907 (Bankr. S.D. Ohio 1990), rejected a defendant's theory that § 704(7) overrode the trustee's attorney-client privilege over settlement

negotiations in adversary proceedings that were "closely intertwined," because the theory "would enable [the defendant] to compel the Trustee to divulge his entire case in the adversary proceeding against [it]." The Motion seeks neither settlement negotiations nor the Trustee's case against Hild; it concerns potential claims against non-parties. As quoted in the Objection, *In re Munce*, No. 13-45569, 2017 WL 4564706, at *6 (Bankr. W.D. Wash. Oct. 11, 2017), holds only that § 704(a)(7) "does not require the Trustee to disclose all information to every creditor." Obj. ¶ 6. Hild asks for a defined set of facts. And *Speleos v. McCarthy*, 201 B.R. 325, 328 (D.D.C. 1996), as the Objection describes it, affirmed a bankruptcy court's discretion to deny a request. Obj. ¶ 5. No one disputes that the Court has discretion; the statute says so. Hild asks the Court to exercise it as Proposed Order ¶ 4 provides.

## III. NEITHER THE ADVERSARY PROCEEDING NOR THE § 2255 PETITION DISPLACES § 704(a)(7)

16. Adversity does not diminish the trustee's duty. In *Sports Accessories*, the trustee argued that the request "ought to be delayed pending full discovery in the District Court action" between the trustee and the creditor. 34 B.R. at 81. "The court disagree[d]." *Id. Walters*, on which the Trustee relies, reads *Sports Accessories* the same way: "[t]he existence of an adversarial relationship between the trustee and a creditor . . . did not diminish the trustee's duties under § 704(7) to provide the creditor with information concerning the estate and the estate's administration." 136 B.R. at 259.

17. The Trustee's remaining authority addresses a different problem: use of § 704(a)(7) to obtain merits discovery in a pending contested matter. As quoted in the Objection, Judge Goldblatt observed that "once we are in a contested matter or an adversary proceeding, those parties have access to [the federal] rules, and Section 704 doesn't override the limitations that are otherwise imposed by discovery." Obj. ¶ 5 (quoting *Miller v. Mott (In re Team Sys. Int'l,*

*LLC)*, Adv. Pro. No. 23-50004-CTG, Hr'g Tr. (Feb. 11, 2026) [D.I. 489]. That principle guards against circumventing the discovery rules for information obtainable in the pending case. The Motion disclaims any discovery on the Trustee's claims against Hild, D.I. 646 ¶¶ 4, 71–72, and concerns potential Estate claims against non-parties. The same distinction governs the analogous "pending proceeding" rule under Rule 2004, which asks whether the examination "will lead to discovery of evidence related to the pending proceeding or whether the requested examination seeks to discover evidence unrelated to the pending proceeding." *In re Wash. Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009). The Objection identifies no discovery request in the adversary proceeding, and no order limiting discovery there, that reaches the Trustee's administration of claims against Foster, Bloomberg, or Baird – none of whom is a party to it.

18. The Objection's principal theme is that Hild's real aim is to support his § 2255 petition. Obj. ¶¶ 1, 3–4. *Newport* answers it: the "threshold issue" under § 704(a)(7) "is the nature of the information sought," not "why the creditor wants it," and the court "may need to evaluate why" a requester wants information only if the information falls within the statute. 2026 WL 1488930, at *3–*4. The chronology also refutes the charge that the Motion is a habeas-discovery vehicle. The Foster/Bloomberg evidence developed through discovery and motion practice in the adversary proceeding in 2024 and 2025: Bloomberg produced documents in March 2024, and Hild's then-Delaware counsel presented the issue to this Court on February 25, 2025 (D.I. 177), before Hild filed his § 2255 petition. D.I. 646 ¶¶ 39–49. The Trustee's point that the New York court "has not authorized any such discovery" (Obj. ¶ 4) confuses discovery in that case with the Trustee's statutory duty here to furnish information about the Estate's own administration to a party in interest. Nor do Hild's conviction and sentence (Obj. ¶¶ 2, 4) bear on whether he is a party in interest—the Objection does not contend otherwise—or on what §

704(a)(7) requires. Finally, any recovery on an Estate claim against a non-settling third party would benefit the Estate's creditors, the constituency for whom the Objection professes concern. Obj. ¶ 4.

## IV. THE IDC AND FOSTER SETTLEMENTS DO NOT MOOT THE MOTION

19. The Trustee says he "investigated and settled all of the estate's claims against Foster [D.I. 404, 406] and IDC [D.I. 304, 314]," that Hild's counsel of record was served, and that the requests are therefore "moot." Obj. ¶ 7. The Trustee's own exhibits refute that argument for four reasons.

20. *First*, the chronology. The IDC settlement was presented on March 3, 2021 and approved on March 24, 2021. D.I. 304, 314. The Foster settlement was presented on June 10, 2022 and approved on June 28, 2022. D.I. 404, 406. Bloomberg did not produce documents in the adversary proceeding until March 2024, Hild's then-counsel raised the Foster/Bloomberg question afterward, and it was presented to this Court on February 25, 2025. D.I. 646 ¶¶ 41–46. Hild could not have objected in 2021 or 2022 on a ground that had not yet been developed, and the absence of an objection says nothing about what the Trustee knew then or has done since.

21. *Second*, scope. The Foster agreement releases claims "against Foster." D.I. 404-2 ¶ 5 (at 3–4). The IDC agreement releases ICE Data Pricing & Reference Data, LLC ("together with its principals, successors, affiliates and assigns") and the "PRD Released Persons." D.I. 304 at 1; D.I. 304-2 § 3.1 (at 7). Neither agreement, motion, or order mentions Bloomberg or Baird. And as to "Bloomberg and the various other parties identified in the Motion," the Trustee's response is not mootness but his assertion that no colorable claim exists. Obj. ¶ 7.

22. *Third*, what the Trustee knew when he settled is precisely what the Motion asks. Schedule 1 asks when the Trustee first learned of Foster's Bloomberg activity (Items 1–3),

whether the Trustee contends the IDC resolution "extinguished, released or otherwise affected" later-discovered claims (Item 12(f)), and whether any claim has been settled or released (Item 13). D.I. 646 at 44, 48. A settlement is a disposition of Estate claims; whether it was made with or without knowledge of evidence later developed is information concerning the Estate's administration. If the Trustee's position is that the releases foreclose every claim, Item 12(f) permits a one-line answer. Nor does the Motion seek "investigative materials," as the Objection recasts it (Obj. ¶ 7); it seeks answers, and the Proposed Order excludes materials (¶ 5).

23. *Fourth*, at most the argument reaches Foster and IDC. The Motion also concerns Bloomberg, Baird, and others, as to which the Objection offers no mootness argument. And the Trustee's catalogue of other adversary proceedings and Rule 9019 settlements (Obj. ¶ 8) shows only that he can describe his administration when he chooses to; it says nothing about the claims at issue.

## V. THE TRUSTEE'S UNSWORN CONCLUSION THAT NO "COLORABLE" CLAIM EXISTS IS A REASON TO ANSWER, NOT TO WITHHOLD

24. The Trustee asserts that Hild "has not identified any even potentially colorable estate claims" and that the Trustee's "extensive investigation" "has revealed no facts that support the counterfactual theories espoused by Hild." Obj. ¶ 7. That argument fails for three reasons.

25. *First*, § 704(a)(7) contains no colorable-claim threshold, and the Trustee cites none. The Motion expressly does not ask the Court to decide whether any claim is viable, timely, or valuable, or whether the Trustee exercised sound business judgment; those questions cannot responsibly be answered until the basic administration facts are known. D.I. 646 ¶¶ 2–3, 85–89. The Trustee's conclusion is also unsworn.

26. *Second*, the Trustee's position is self-sealing. He asserts a conclusion while refusing to say whether, when, or how he considered the Foster/Bloomberg evidence that

surfaced in 2024 and 2025. The Objection lists categories of work—review of business records, witness interviews, Rule 2004 and adversary-proceeding discovery, the "work-product and analysis" of advisors, and "the record produced in Hild's criminal trial" (Obj. ¶ 7)—but never says that any of it addressed Foster's post-Live Well pricing activity, Bloomberg's use of it, or Baird's role. Disclosing the general character of an investigation while withholding the facts that would let anyone test it is not a privilege. If the Trustee investigated and concluded there was no claim, he can say when; if he did not investigate, that too is responsive. D.I. 646 at 45, 47–48 (Items 4, 11, 14). A trustee's judgment that requested information "would not add any substantive value" may be sincere, but "it is a matter that Creditor should be able to evaluate for itself." *Pearlstein*, 2022 WL 1492236, at *3.

27. *Third*, the Trustee observes that the underlying events occurred "approximately 10 years ago." Obj. at 4 n.1. That is a reason for the Motion, not against it. The older the events, the more pressing the questions of accrual, tolling, and limitations, which Schedule 1 addresses (Items 5, 6, 9, 10) by asking only for dates and jurisdiction, not legal reasoning. If a claim lapsed after the evidence surfaced in 2024 and 2025 without any protective step, the Estate's creditors and shareholders are entitled to know it.

28. The record also does not support the Trustee's label of "conspiracy theories." Hild does not ask the Court to find the truth of any allegation here, but the following show that the issue is concrete and not manufactured for this Motion:

(a) Judge Abrams found that the Government's Foster Notes "indicate that Foster may well have influenced Bloomberg's pricing" and that "it would be nonsensical to infer that Bloomberg did not somehow rely on those quotes." *United States v. Hild*, No. 19-cr-602 (RA), Dkt. 245 at 8 (S.D.N.Y. July 10, 2024).

(b) The Second Circuit, in affirming the denial of Hild's Rule 33 motion, stated that his related ineffective-assistance argument was "best raised on collateral

review." *United States v. Hild*, No. 23-6136-CR, 2025 WL 2924205, at *4 (2d Cir. Oct. 15, 2025).

(c) On September 10, 2026, Darren Stumberger—the Government's principal cooperating witness at Hild's trial, D.I. 646 ¶ 51—through counsel at Steptoe LLP, filed a § 2255 motion presenting as newly discovered evidence that "the very benchmark used to characterize Live Well's bond valuations as 'inflated,' a set of pricing data supplied to Bloomberg, had itself been compromised: it was supplied in material part by Daniel Foster." Ex. A at 4–5. His counsel's memorandum recites that Foster, after leaving Live Well, "became a recurring pricing contributor to Bloomberg for the same HECM IO securities, proposing a paid data-acquisition arrangement with Bloomberg at a time Bloomberg has acknowledged being 'starved for data' in this sector," *id.* at 5, and that Stumberger first learned of this evidence on September 10, 2025 "through a channel entirely independent of his prior counsel or any government disclosure," *id.* at 4. Stumberger declared under penalty of perjury that the factual statements in his motion "that concern [his] personal knowledge, actions, communications, understanding, and beliefs are true and correct to the best of [his] knowledge." Ex. B at 1.

29. Hild offers Exhibits A and B as he cited the filing in the Motion: not to prove any third party's liability, but to show that the Foster/Bloomberg issue is being raised independently by another counseled party. D.I. 646 ¶¶ 50–53. Stumberger's memorandum is itself a preliminary filing to be supplemented, Ex. A at 2, and Hild does not suggest that it adjudicates anything. It suffices that the Trustee cannot dismiss as a "conspiracy theor[y]" an issue that a federal district judge found the Government's own notes to support, that the Court of Appeals left for collateral review, and that a second § 2255 petitioner, through counsel, has now raised.

## VI. IF THE COURT FINDS ANY ITEM TOO BROAD, IT SHOULD NARROW THE ITEM RATHER THAN DENY THE MOTION

30. The clause "unless the court orders otherwise" commits the reasonableness of a request to the Court, *Sports Accessories*, 34 B.R. at 81, and § 105(a) authorizes "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 266 (3d Cir. 1991) (quoting 11 U.S.C. § 105(a)).

Courts in this posture tailor relief. *Newport* granted the motion in part and denied it in part. 2026 WL 1488930, at *2–*4. *Pearlstein* required the trustee to furnish her records subject to a protective order, a privilege log, and an exclusion for communications with law enforcement. 2022 WL 1492236, at *3–*4. And courts applying the discovery rules likewise "limit and circumscribe" the scope of discovery rather than deny it. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009) (citing *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999)).

31. At a minimum, the Court should order the Trustee to furnish the following core facts, each of which can be answered with a date or a yes-or-no response:

(a) the approximate dates on which the Trustee or his professionals first learned that Foster supplied HECM-IO pricing to Bloomberg, that Bloomberg used it, and of the Bloomberg–Baird data relationship (Items 1–3);

(b) whether they investigated potential Estate claims arising from that evidence and, if so, when and as to which persons (Items 4, 14);

(c) whether limitations was evaluated, tolling or standstill agreements were sought, preservation, demand, or insurance notices were sent, or protective litigation was considered, stated by date and jurisdiction without legal reasoning (Items 5–9);

(d) whether any such claim was determined to be time-barred or not worth pursuing, and when (Items 10, 11(a)); and

(e) whether any potential Estate claim has been settled, released, or otherwise disposed of, including whether the Trustee contends that the IDC or Foster settlements reach the later-discovered claims (Items 12(a)–(d), 12(f), 13).

32. If the Court considers a remaining sub-item (for example, Item 11(b)) too close to the Trustee's reasoning, it may be deferred or narrowed without affecting the rest.

## CONCLUSION

33. For these reasons and those stated in the Motion, Hild respectfully requests that the Court overrule the Objection, grant the Motion, and enter the Proposed Order [D.I. 646 at 42–48] or, in the alternative, an order limited to the core items identified in Part VI, together with such other relief as the Court deems just and proper.

Dated: September 28, 2026

Respectfully submitted,

**CIARDI CIARDI & ASTIN**

/s/ John D. McLaughlin, Jr.
John D. McLaughlin, Jr.
DE Bar ID No. 4123
1204 N. King Street
Wilmington, DE 19801
Telephone: 484-437-2676
Email: jmclaughlin@ciardilaw.com
-and-

J. Andrew Baxter, Esquire
(admitted pro hac vice)
**SCALE LLP**
215 N. Payne St., Ste. 33044
Alexandria, VA 22314
Telephone: (202) 758-5778
Email: abaxter@scalefirm.com
-and-

Albert A. Ciardi, III, Esquire
(admitted pro hac vice)
**CIARDI CIARDI & ASTIN**
1905 Spruce Street
Philadelphia, PA 19103
Telephone: 215-557-3550
Email: aciardi@ciardilaw.com
*Counsel for Michael C. Hild*